# <u>Trade Show Services, Ltd. dba Pro-Tect Security Services v. Integrated Systems Improvement Services, Inc.</u>

# Appendix 1 to Plaintiff's Motion to Disqualify Defendant's Attorneys

Exhibit 1, Affidavit of Leslie Bruno.......................................................Pg. 1

Exhibit 2, State of Arizona Annual Report & Certificate of Disclosure.......................Pg. 14

Exhibit 3, Nevada Secretary of State Print-Outs for All Net Development.................... Pg. 18

Exhibit 4, Commissioner's Green Light News Article...........................................Pg. 22

Exhibit 5, Nevada Secretary of State Printouts of Pro-Tect and Trade Show.................Pg. 25

Exhibit 6, Retainer Agreement...............................................................Pg. 41

Exhibit 7, Declaration of Trust of Trust #2 and First Amendment to Trust #2...............Pg. 62

Exhibit 8, Chart of Leslie Bruno Entities...................................................Pg. 92

Exhibit 9, DJP Invoices.....................................................................Pg. 95

Exhibit 10, 10/7/10 DJP Correspondence......................................................Pg. 148

Exhibit 11, Nevada Secretary of State Printouts for Harmony and WEZI ................... Pg. 161

Exhibit 12, Articles of Organization and Operating Agreement of WEZI....................Pg. 166

Exhibit 13, Operating Agreement of Pro-Tect Security, LLC...............................Pg. 185

Exhibit 14, Membership Certificate of Pro-Tect Security, LLC..............................Pg. 201

Exhibit 15, Meeting Minutes of Pro-Tect Security and Annual Meeting of Members......Pg. 203

Exhibit 16, Last Will and Testament of Leslie Bonlie-Bruno.................................Pg. 212

Exhibit 17, First Codicil to the Will of Leslie Bonlie-Bruno...................................Pg. 219

Exhibit 18, Declaration/"Living Will".......................................................Pg. 222

Exhibit 19, Durable Power of Attorney for Health Care Decisions...........................Pg. 224

Exhibit 20, Statutory Form Power of Attorney for Assets......................................Pg. 233

# EXHIBIT 1

**Affidavit of Leslie Bruno**

# EXHIBIT 1

GARY E. SCHNITZER, ESQ.
Nevada Bar No. 395
ADAM J. WAX, ESQ.
Nevada Bar No. 12126
KRAVITZ, SCHNITZER, & JOHNSON, CHTD.
8985 So. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Telephone:  (702) 352-6666
Facsimile:  (702) 362-2203
Email: gschnitzer@ksjattorneys.com
            awax@ksjattorneys.com
*Attorneys for Plaintiff,*
*Trade Show Services, LTD.*
*d/b/a Pro-Tect Security*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| TRADE SHOW SERVICES, LTD., a Nevada Corporation, d/b/a PRO-TECT SECURITY SERVICES, | Case No.:  2:17-cv-01685-JAD-NJK |
| Plaintiff, | **AFFIDAVIT OF LESLIE BRUNO IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT'S ATTORNEYS** |
| vs. | |
| INTEGRATED SYSTEMS IMPROVEMENT SERVICES, INC., an Arizona Corporation; INTEGRATED SYSTEMS IMPROVEMENT SERVICES, INC., d/b/a SPECIAL INTELLIGENCE SERVICE, an Arizona Corporation;  DOE INDIVIDUALS I through X, inclusive; and ROE BUSINESS ENTITIES I through X, inclusive, | |
| Defendants. | |

STATE OF NEVADA            }
                                          }  ss.
COUNTY OF CLARK         }

I, LESLIE BRUNO, being duly sworn upon oath, deposes and says:

1.      That I am the sole owner of Plaintiff, TRADE SHOW SERVICES, LTD., d/b/a

PRO-TECT SECURITY (the "Plaintiff"), in the subject matter currently pending in the United

States District Court for the District of Nevada, Case Number 2:17-cv-01685-JAD-NJK. I am a

United States Citizen over 18 years of age and I am competent to testify as to the truth of the

*KRAVITZ, SCHNITZER & JOHNSON, CHTD.*
*8985 S. Eastern Ave., Ste. 200*
*Las Vegas, Nevada 89123*
*(702) 362-66666*

1

matters set forth in this Affidavit, and will do so if called upon;

2.     That I make this Affidavit on behalf of myself and in support of Plaintiff's Motion to Disqualify Defendant, INTEGRATED SYSTEMS IMPROVEMENT SERVICES, INC., d/b/a SPECIAL INTELLIGENCE SERVICE (the "Defendant")'s, Attorneys, the law firm of Durham Jones & Pinegar ("DJP"). I have personal knowledge of the following facts:

3.     That I will not waive any conflict that arises if DJP is allowed to continue to represent Defendant in this matter;

4.     That my maiden name is "Bonlie" and my legal name has been Leslie Bruno, Leslie Bonlie-Bruno, and Leslie Bonlie (prior to being married). My current legal name is Leslie Bonlie-Bruno, but generally, I refer to myself as and go by "Leslie Bruno";

5.     That my family has owned and operated Plaintiff Trade Show Services, Ltd. under the d/b/a "Pro-Tect Security" since on or about August 14, 1992. I am the current shareholder;

6.     That sometime in 2010, I was looking for an attorney and law firm that would represent: a) me individually, b) my entities, c) my businesses, d) my properties, and e) my other assets, and that would protect my assets, protect my businesses, and protect me individually, through the creation of a trust or trusts, and through other estate planning matters;

7.     That I was referred to Robert Bolick, Esq., of DJP by Jack Mischel, the Senior Vice President of Meadows Bank, for Mr. Bolick and DJP to handle my estate planning matters, and possibly other legal matters;

8.     That  I also was referred to the law firm of Lewis & Roca (now Lewis Roca Rothgerber Christie, LLP) to possibly handle my estate planning matters;

9.     That after meeting with attorneys from Lewis & Roca and after meeting with Mr. Bolick of DJP, I retained Mr. Bolick and DJP on August 23, 2010. Based upon my extensive

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-66666

2

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-66666

conversations with Mr. Bolick, we decided to create my trust(s) and other trust related entities, as well as to represent: a) me individually, b) my entities, c) my businesses, d) my properties, and e) my other assets;

10. That I had several in-person meetings with Mr. Bolick at DJP regarding representation of myself, my entities, my businesses, my properties, and my other assets, including several in-person meetings regarding DJP creating trust(s) to protect me and my assets and regarding Mr. Bolick drafting a Last Will and Testament and the First Codicil to my Will (collectively, the "Will"), which were drafted by DJP;

11. That I had numerous and frequent telephone conversations with Mr. Bolick and DJP regarding the creation of trust(s) and my Will to protect me and my assets;

12. That in addition to speaking with Mr. Bolick regarding Mr. Bolick's plan for asset protection and estate planning, I also had numerous and frequent conversations with Mr. Bolick's assistants and/or paralegals, including but not limited to, a Sandy Yamashiro, Dena R. Logan, Summer Cordero, and Summer Owens;

13. That these discussions with Mr. Bolick and/or his assistants and/or paralegals were concerning my assets, my Will, and how to structure my trust(s) to best protect my assets based upon my full and complete disclosure of them of my assets and liabilities;

14. That after about a full year of meetings and discussions with Mr. Bolick and other legal representatives from DJP, DJP finalized the creation at least two (2) trusts for me to protect my assets: 1) the Trust #1 Asset Protection Trust[1] (the "Trust #1"); and 2) the Trust #2 (the "Trust #2") (collectively, Trust #1 and Trust #2 shall be referred to herein as the "Trusts"). These Trusts were dated October 7, 2010. However, it took about a full year of meetings and

___

[1] The true names of the Trusts are being withheld as Plaintiff's Motion to Disqualify and the Exhibits thereto are _not_ being filed under seal. If the Court desires an _in camera_ inspection of unredacted documents, Plaintiff will supplement accordingly.

3

discussions with Mr. Bolick and other DJP legal representatives for the Trusts to be funded and for all of my assets to be properly placed into the Trusts (some of my properties were deeded incorrectly, causing delay in all of my assets being placed into the Trusts, as these deeds had to be re-done and re-recorded by DJP);

15. That during my initial discussions with Mr. Bolick, I was told by Mr. Bolick I could use the resources of the entire DJP law firm, including, but not limited to, all of DJP's attorneys both in Nevada and in other jurisdictions where DJP is licensed;

16. That I was never told, at any time between 2010 and the present, that if my interests were adverse to the interests of a different client represented by DJP in adversarial litigation, Mr. Bolick was not considered an attorney in DJP or that Mr. Bolick was in any way considered separate from the rest of the DJP firm for purposes of establishing a conflict;

17. That I was billed $10,090.00 for the creation of my Trusts by DJP; *See Invoices, Ex. "9."*

18. That the invoices for the legal services provided by DJP regarding Harmony Asset Management, L.P. (invoice #224091), and regarding Wezi Holdings, LLC (invoice #224092 and #235524), two (2) entities created specifically for my Trusts, were paid for by Plaintiff; *Oct. 17, 2017, Ltr. from Steven McCardell, Esq., at 4, Ex. "22."*

19. That in addition to the DJP legal services rendered as noted above regarding my Will and Trusts, I also engaged DJP to prepare a prenuptial agreement in late 2010. Specifically, I met with a DJP attorney, Tracy Rau, Esq., in-person in late 2010 on at least 2-3 separate occasions at DJP. These discussions were centered around my assets and full financial disclosure of my assets to make the prenuptial agreement enforceable and defensible. Additionally, Ms. Rau and I had numerous telephone discussions regarding the terms of the prenuptial agreement. I was advised by Ms. Rau that it was necessary to make full financial disclosure of all of my assets.

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-66666

4

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-66666

20.     That Ms. Rau prepared a draft prenuptial agreement on my behalf. Kelleher & Kelleher law firm reviewed the agreement on behalf of my potential husband. Ms. Rau and DJP continued to speak with me about the prenuptial agreement and finalizing the terms of the agreement thereafter. Although I am unable to locate a copy of the prenuptial agreement, I believe that it was about 19 pages in length, excluding exhibits. I was billed $2,800.00 for the drafting of the prenuptial agreement by DJP; *See Invoices, Ex. "9."*

21.     That Ms. Rau also continued to contact me regarding the prenuptial agreement even after the wedding related to the prenuptial agreement was cancelled;

22.     That as a result of my meetings with Mr. Bolick, Ms. Rau, and other legal representatives at DJP to form and establish my Trusts, to draft my Will, and draft a prenuptial agreement, I provided DJP with full financial disclosure of my financial confidential information and other confidential information that I believed would be protected by the attorney-client privilege, including but not limited to:

a.   Information regarding the corporate structure and ownership structure of Plaintiff, Trade Show Services, Ltd., d/b/a Pro-Tect Security, including its assets and any asset-protection through my Trusts;

b.   My net worth, including money held in cash accounts, money held in stocks, my motor vehicles, and all of my assets;

c.   All of my stock holdings;

d.   All of my insurance policies;

e.   Information regarding my retirement based accounts such as 401(k)s, pension, IRAs, and other retirement savings;

f.   All of my ownership interests in limited liability companies;

g.   Information regarding my personal residence located in Clark County in

5

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-66666

Henderson, Nevada;

h.   Information regarding four (4) other properties I owned at the time, one (1) of which I have since sold;

i.   Information regarding ownership of the property located at 3511 South Eastern Avenue, Las Vegas, Nevada 89160 which serves as the principal place of business of my company Trade Show Services, Ltd., d/b/a Pro-Tect Security, the Plaintiff in this matter;

j.   Information regarding the corporate structure and ownership structure of Pro-Tect Security Services, LLC, a Nevada limited liability company, that is <u>not</u> a party to this matter, including its assets and any asset-protection through my Trusts;

k.   Information regarding which of the above-referenced assets would be held in trust, and to which of my Trusts each asset was held;

l.   My asset protection plans, which were created by DJP through the formation and creation of my Trusts;

m.   Information regarding the funding of my Trusts;

n.   Information regarding my personal and corporate taxes;

o.   Information regarding to whom I want to bequeath my assets/Trusts upon my death regarding the Last Will and Testament and the First Codicil to my Will;

p.   Full financial disclosure in anticipation of a prenuptial agreement drafted by DJP;

q.   My Power of Attorney for my assets; and

r.   My durable power of attorney for health care and living will.

23.   That based upon my discussions with Mr. Bolick and other legal representatives of DJP, I understood that once I retained DJP in 2010, my Trusts, my entities, my businesses, my properties, and other assets of mine would all be represented by the entire DJP law firm.

6

Moreover, I understood I would all be able to use all of the resources of the entire DJP law firm, including but not limited to, all of DJP's attorneys both in Nevada and in other jurisdictions where DJP is licensed;

24.     That based upon my conversations with Mr. Bolick, Ms. Rau, and other legal representatives of DJP, it was my expectation that DJP would not be adversarial against me, or of my interests, in a litigation matter;

25.     That I never would have retained Mr. Bolick, Ms. Rau, and DJP if DJP would be adverse to me individually, my Trusts, my entities, my businesses, my properties, and my other assets in which DJP did substantial work on my behalf;

26.     That I never would have retained Mr. Bolick, Ms. Rau, and DJP if it would be adversarial in future litigation against me individually, my Trusts, my entities, my businesses, my properties, and/or my other assets in which DJP did substantial work on my behalf;

27.     That I never was informed by Mr. Bolick, Ms. Rau, or anyone from DJP that if one of my companies was being sued or was suing someone else (or some other company), that DJP would represent the adverse party. I will not agree to allow DJP to represent the adverse party given all of the confidential and privileged information I told to various members of DJP and given the full financial disclosure of my assets I was encouraged by DJP to provide to DJP;

28.     That I never was informed by Mr. Bolick, Ms. Rau, or anyone from DJP that if I divulged my personal and confidential information to DJP, Ms. Rau, and/or Mr. Bolick, then DJP could use my personal and confidential information given to DJP against my interests;

29.     That based upon: a) DJP drafting my Trusts; b) organizing and forming several businesses and other corporate entities for me, my Trusts, and my assets; c) drafting my Will; d) drafting a prenuptial agreement; and e) doing other legal work on my behalf, on the behalf of my Trusts, and on behalf of my companies, DJP has confidential knowledge of **all** of my assets and

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-66666

7

the corporate structures and ownership structures of all of my businesses, including any asset protections from the Trusts;

30.     That I was shocked when I was told by my litigation counsel in this matter from Kravitz, Schnitzer & Johnson, CHTD. ("KSJ"), that DJP was representing Defendant in this matter, with Defendant being adverse to me and my company in this matter;

31.     That I was shocked that DJP was representing Defendant in this matter, and my other assets could be exposed and/or be liable to Defendant in the event of Defendant prevailing in this matter. In addition, DJP could use my confidential financial information to form a strategy or defense in this matter; which would be  used to frustrate or defeat my claims;

32.     That once my current litigation counsel from KSJ indicated to DJP that there was a conflict, I was shocked that DJP stated that to my present counsel it has not done any estate planning for me "since 2011" and that DJP believes that they do not have any "information relating to the representation of Ms. Bruno that could be used to her disadvantage in the [instant] litigation;" *Aug. 21, 2017, Ltr. from Michael Rawlins of DJP at 3, Ex. "23."*

33.     That Mr. Rawlins is either unaware of his firm's representations of me or has misrepresented the extent nature of DJP's representations. Mr. Bolick and DJP still handle my Trusts, providing legal services and legal advice to me regarding my Trusts. Generally, I speak with Mr. Bolick around the beginning of each year to confirm whether there are any changes needed to my Trusts. Mr. Bolick and I speak at least annually regarding my Trusts, and sometimes more frequently, should there be any potential changes to my assets, businesses, and/or Trust holdings, and to ensure that any changes in State and Federal Wills, Trusts, and Estates law will not affect my Trusts and/or my Will;

34.     That since 2010 and continuing through the present, I was acting under the belief that Mr. Bolick, Ms. Rau, and the entire DJP law firm represented me and all of my companies,

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-6666

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-66666

including representing the Plaintiff in this matter;

35.     That since 2010 and through the present, I have had extensive conversations with Mr. Bolick, Ms. Rau, and DJP and have provided DJP with full financial disclosure regarding my Trusts and businesses, properties, and/or other assets;

36.     That I was shocked that DJP represented that it "has never provided legal services to Pro-Tect[2], has no information about Pro-Tect that could be relevant to the present litigation. Likewise I cannot accept DJP's offer, that [DJP] would be happy to erect a 'Chinese Wall' within the firm to ensure that any information [DJP has] about Ms. Bruno's estate planning would be kept from those involved in the present litigation;"

37.     That it is absolutely false when Mr. Rawlins represents that DJP "has never provided legal services to Pro-Tect" and that DJP "has no information about Pro-Tect that could be relevant to the present litigation." That misrepresentation leads me to seriously question DJP's record keeping, as the information regarding myself, my Trusts, my asset management limited partnership (Harmony Asset Management, L.P.), my holding entity (Wezi Holdings, LLC), my company Pro-Tect Security Services, LLC, and/or my company Trade Show Services, Ltd., d/b/a Pro-Tect Security, Plaintiff, should have "raised a red flag" regarding an absolute actual conflict when DJP performed a conflict check to represent Defendant and following being told of the conflict by Plaintiff's litigation counsel;

38.     That DJP, through Mr. Rawlins, refused to withdraw from its representation of Defendant in the instant matter even after KSJ provided DJP with an analysis of the current conflict and with additional information regarding DJP's past and current representation of myself, my Trusts, my businesses, my companies, my entities, my properties, and my other assets via correspondence from KSJ to DJP dated September 12, 2017;

---

[2] Pro-Tect Security Services, LLC, was improperly named as the Plaintiff in this matter. The proper Plaintiff has since been corrected to the proper entity of Trade Show Services, Ltd., d/b/a/ Pro-Tect Security.

9

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-66666

39.     That as a result of DJP refusing to withdraw from representing Defendant in the instant matter in light of the absolute current conflict, DJP placed the burden upon me to prove that DJP has been representing me, my Trusts, my businesses, my companies, my entities, my properties, and my other assets in excess of seven (7) years, and that DJP knows full financial disclosure of all of my personal assets/information, all of my corporate assets/information, and all of my asset protection as DJP established and formed my Trusts;

40.     That I have spent thousands of dollars litigating whether a conflict exists, despite DJP knowing a current conflict exists and that DJP should withdraw from representing Defendant in this matter;

41.     That I was never told by anyone at DJP that DJP's representation of me, my Trusts, businesses, properties, and/or other assets, has concluded, ended, was terminated, or that DJP has withdrawn from its representation of me individually and/or my Trusts, businesses, properties, and/or other assets;

42.     That at all times relevant to this Affidavit, any services provided by DJP regarding me, my Trusts, my assets, and my businesses, were all known to me to be "legal services," and no one from DJP ever indicated that there was some sort of a distinction between "legal services" and  alleged "corporate services" provided by DJP;

43.      That at all times relevant to this Affidavit, I believed that any services provided by DJP to me, my Trusts, my assets, and my businesses, were legal services of DJP;

44.     That DJP is the resident agent of Harmony Asset Management, L.P., and DJP also served as the Resident Agent for WEZI Holdings, LLC, until about June 2016;

45.     That in 2012, I met with Mr. Bolick in person to discuss a strategic short sale of one of my properties. Mr. Bolick and I discussed the legal ramifications of the short sale and whether it would negatively affect any of my Trusts, holdings, assets, and/or entities. Mr. Bolick

10

indicated to me that he reviewed the matter with the Schwartz law firm and Mr. Bolick advised and assured me that the short sale was legally fine to proceed. Mr. Bolick also assured me that the short sale was legally fine to proceed as he indicated he had recently done a short sale of a property himself.

46.     That in June 2013, I emailed Mr. Bolick asking for updated schedules that matched the diagrams of my Trusts. Mr. Bolick did not respond to this email;

47.     That in April 2017, I sought legal advice from Mr. Bolick and DJP regarding Trust Certificates;

48.     That in April 2017, I sought legal advice from Mr. Bolick regarding purchasing real property in another state;

49.     That I sought legal advice from Mr. Bolick and DJP in July 2017 regarding the sale of certain real property located in Clark County, Nevada, which is owned by a Trust established by Mr. Bolick;

50.     That earlier this year, I contacted Mr. Bolick by telephone about my Trusts. During this conversation, Mr. Bolick stated to me that due to the increase in size of my estate and Trusts, I should come in for a meeting with Mr. Bolick at DJP to possibly update certain Trust information and assets. However, this meeting has not occurred due to DJP representing Defendant in this matter;

*51.*     That as recently as September 1, 2017, I received correspondence regarding annual renewal with the Nevada Secretary of State for my asset management entity incorporated by DJP and placed into the Trusts created by DJP, the Harmony Asset Management, L.P.; *See, Harmony Asset Management, L.P., Annual Renewal Ltr. of Sept. 1, 2017, Ex. "26."*

52.     That since 2010, I have been billed approximately over $3,485.00 by DJP for legal services related to Plaintiff, Harmony Asset Management, L.P., and Wezi Holdings, LLC;

11

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-66666

*See Invoices, Ex. "9."*

53.     That a majority of the bills from DJP were mailed to me 3511 South Eastern Avenue, Las Vegas, Nevada 89160 which serves as the principal place of business of my company, Plaintiff;

54.     That my current email address is "Leslie@pro-tectsecurity.com" and Mr. Bolick corresponds with me by emailing my "Leslie@pro-tectsecurity.com" email address;

55.     That I believe that I am still a current client of Mr. Bolick and the DJP law firm;

56.     That I believe that my Trusts, trust related entities including, Wezi Holdings, LLC, and Harmony Asset Management, L.P., have all been clients of the DJP law firm since their creation and/or formations;

57.     That I believe that my Trusts, trust related entities including, Wezi Holdings, LLC, and Harmony Asset Management, L.P., and my businesses including Pro-Tect Security, LLC, and Plaintiff, are all current clients of the DJP law firm;

58.     That I declare under penalty under the laws of the State of Nevada that the foregoing is true and correct.

FURTHER, YOUR AFFIANT SAYETH NAUGHT.

**LESLIE BRUNO**

SUBSCRIBED and SWORN to before me this 30 day of November, 2017.

NOTARY PUBLIC in and for said County and State.



MERANDA ESPINOSA
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 14-13852-1
My Appt. Expires May 16, 2018

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-66666

12

# EXHIBIT 2

**State of Arizona Corporation Annual Report & Certificate of Disclosure for Integrated Systems Improvement Services, Inc.**

# EXHIBIT 2

 

E-FILED

**STATE OF ARIZONA**
**CORPORATION COMMISSION**
**CORPORATION ANNUAL REPORT**
**& CERTIFICATE OF DISCLOSURE**

05881831

**DUE ON OR BEFORE** 5/17/2017                          **FILING FEE** 45.00

PLEASE READ ALL INSTRUCTIONS. The following information is required by A.R.S. §§10-1622 & 10-11622 for all corporations organized pursuant to Arizona Revised Statutes, Title 10. The Commission's authority to prescribe this form is A.R.S. §§ 10-121(A) & 10-3121(A). YOUR REPORT MUST BE SUBMITTED ON THIS ORIGINAL FORM. Make changes or corrections where necessary. Information for the report should reflect the current status of the corporation.

08757171

1. INTEGRATED SYSTEMS IMPROVEMENT SERVICES, INC.

   2338 W ROYAL PALM RD

   SUITE J

   PHOENIX, ARIZONA  85021

   **Business Phone:**                         (Business phone is optional.)

   **State of Domicile:** AZ                    **Type of Corporation:** BUSINESS

2.         Statutory Agent: CORPORATION SERVICE COMPANY         Statutory Agent's Street or Physical Address:

           Mailing Address: 2338 W ROYAL PALM RD STE J           Physical Address:

           City, State, Zip: PHOENIX, ARIZONA  85021             City, State, Zip:

| ACC USE ONLY | |
|---|---|
| Fee: | 45.00 |
| Penalty: | |
| Reinstate: | |
| Expedite: | |
| Resubmit: | |

*If appointing a new statutory agent, the new agent MUST consent to that appointment by signing below. Note that the agent address must be in Arizona.*

I, (individual) or We, (corporation or limited liability company) having been designated the new Statutory Agent, do hereby consent to this appointment until my removal or resignation pursuant to law.

_____
Signature of *new* Statutory Agent

_____
Printed Name of *new* Statutory Agent

3. **Secondary Address:**

   (Foreign Corporations are **REQUIRED**
   to complete this section).

4. **Character of Business:**

   CONTRACTOR

Received: 3/23/2017 10:11:55 AM

AR:0046
Rev. 8/2016

Arizona Corporation Commission
Corporations Division

Page 2

**5.    CAPITALIZATION:**    (For-profit Corporations and Business Trusts are **REQUIRED** to complete this section.)

Business trusts must indicate the number of transferable certificates held by trustees evidencing their beneficial interest in the trust estate.

**5a.** Please examine the corporation's original Articles of Incorporation for the amount of **shares authorized**.

| Number of Shares/Certificates **Authorized** | Class | Series Within Class (if any) |
|---|---|---|
| 7500.00 | Common | |
| 0.00 | | |

**5b.** Review all corporation amendments to determine if the original number of shares has changed.  Examine the corporation's minutes for the number of shares issued.

| Number of Shares/Certificates **Issued** | Class | Series Within Class (if any) |
|---|---|---|
| 1000.00 | Common | |
| 0.00 | | |

**6.    SHAREHOLDERS:**    (For-profit Corporations and Business Trusts are **REQUIRED** to complete this section.)

List shareholders holding more than 20% of any class of shares issued by the corporation, or having more than a 20% beneficial interest in the corporation.

**Name:**  ISIS HOLDING, LLC          **Name:**

**Name:**                              **Name:**

**7.    OFFICERS:**

| Name | Title | Date Taking Office |
|---|---|---|
| DON A WRIGHT | PRESIDENT/CEO | 12/29/2009 |
| 1205 CRAFTMAN WAY SUITE 102, EVERETT, WASHINGTON 98201 | | |
| Charles Miracle | SECRETARY | 7/1/2015 |
| 1205 Craftman Way Suite 102, Everett, WASHINGTON 98201 | | |
| CHARLES MIRACLE | TREASURER | 2/10/2013 |
| 1205 CRAFTMAN WAY SUITE 102, EVERETT, WASHINGTON 98201 | | |
| LUIS VEGA | VICE-PRESIDENT | 12/29/2009 |
| 1300 PENNSYLVANIA AVENUE SUITE 700, WASHINGTON, DISTRICT OF COLUMBIA 20004 | | |

**8.    DIRECTORS:**

| Name | Date Taking Office |
|---|---|
| LUIS VEGA | 12/29/2009 |
| 1300 PENNSYLVANIA AVENUE  SUITE 700, WASHINGTON, DISTRICT OF COLUMBIA 20004 | |
| ROBERT T BLAIR | 12/29/2009 |
| 117 E COLORADO BLVD  STE 400, PASADENA, CALIFORNIA 91105 | |
| LORIN KNELL | 12/29/2009 |
| 117 E COLORADO BLVD  STE 400, PASADENA, CALIFORNIA 91105 | |
| DON A WRIGHT | 12/29/2009 |
| 1205 CRAFTSMAN WAY SUITE 102, EVERETT, WASHINGTON 98201 | |

Page 3

**9.    FINANCIAL DISCLOSURE (A.R.S.§10-11622(A)(9))**

**Nonprofits** – financial disclosure is no longer required.  **Cooperative marketing associations** – must submit a financial statement.  All other types of corporations are not required to file a financial statement.

**ONLY NONPROFIT CORPORATIONS MUST ANSWER THIS QUESTION:**

**9A.  MEMBERS (A.R.S. §10-11622(A)(6))**        This corporation DOES ☐  DOES NOT ☐  have members.

**10.  CERTIFICATE OF DISCLOSURE (A.R.S. §§10-202(D), 10-3202(D),10-1622(A)(8) & 10-11622(A)(7))**

A.  Has any person who is currently an officer, director, trustee, incorporator, or who, in a For-profit corporation, controls or holds more than 10% of the issued and outstanding common shares or 10% of any other proprietary, beneficial or membership interest in the corporation been:

1.   Convicted of a felony involving a transaction in securities, consumer fraud or antitrust in any state or federal jurisdiction within the five year          period immediately preceding the execution of this certificate?

2.   Convicted of a felony, the essential elements of which consisted of fraud, misrepresentation, theft by false pretenses or restraint of trade or monopoly in any state or federal jurisdiction within the five year period immediately preceding execution of this certificate?

3.   Subject to an injunction, judgment, decree or permanent order of any state or federal court entered within the five year period immediately preceding execution of this certificate where such injunction, judgment, decree or permanent order involved the violation of:
(a) fraud or registration provisions of the securities laws of that jurisdiction, or
(b) the consumer fraud laws of that jurisdiction, or
(c) the antitrust or restraint of trade laws of that jurisdiction?

### One box must be marked: YES ☐  NO ☒

**If "YES" to A, the following information must be submitted** as an attachment to this report for each person subject to one or more of the actions stated in Items 1 through 3 above.

1.   Full birth name.                                       5.    Date and location of birth.
2.   Full present name and prior names used.    6.    The nature and description of each conviction
3.   Present home address.                                 or judicial action; the date and location; the court
4.   All prior addresses for immediately preceding 5 year         and public agency involved; and the file or
      period.                                                        cause number of the case.

B.    Has any person who is currently an officer, director, trustee, incorporator, or who, in a For-profit corporation, controls or holds over 20% of the issued and outstanding common shares, or 20% of any other proprietary, beneficial or membership interest in the corporation, served in any such capacity or held a 20% interest in any other corporation on the bankruptcy or receivership of that other corporation?

### One box must be marked: YES ☐  NO ☒

**If "YES" to B, the following information must be submitted** as an attachment to this report for each corporation subject to the statement above.
(a) Name and address of each corporation and the persons involved.
(b) State(s) in which it:  (i) was incorporated and      (ii) transacted business.
(c) Dates of corporate operation.

**11. STATEMENT OF BANKRUPTCY OR RECEIVERSHIP (A.R.S. §§ 10-1623 & 10-11623)**

A.  Has the corporation filed a petition for bankruptcy or appointed a receiver?    **One box must be marked:**  YES ☐  NO ☒

**If "Yes" to A, the following information must be submitted** as an attachment to this report:

1.    All officers, directors, trustees and major stockholders of the corporation within one year of filing the petition for bankruptcy or the appointment of a receiver. If a major stockholder is a corporation, the statement shall list the current president, chairman of the board of directors and major stockholders of such corporate stockholder. "Major stockholder" means a shareholder possessing or controlling twenty per cent of the issued and outstanding shares or twenty per cent of any proprietary, beneficial or membership interest in the corporation.

2.    Whether any such person has been an officer, director, trustee or major stockholder of any other corporation within one year of the bankruptcy or receivership of the other corporation. If so, for each such corporation give:
(a) Name and address of each corporation:
(b) States in which it:  (i) was incorporated and        (ii) transacted business.
(c) Dates of operation.

**12.   SIGNATURES:** | Annual Reports must be signed and dated by at least one duly authorized officer or they will be rejected.

I declare, under penalty of perjury, that all corporate income tax returns required by Title 43 of the Arizona Revised Statutes have been filed with the **Arizona Department of Revenue.  I further declare under penalty of perjury that I (we) have examined this report and the certificate, including any attachments, and to the best of my (our) knowledge and belief they are true, correct and complete.**

**Name:**     Charles Miracle                Date:3/23/2017

**Signature:**     Charles Miracle

**Title:**     TREASURER

              **(Signator(s) must be duly authorized corporate officer(s) listed in section 7 of this report.)**

Arizona Corporation Commission
Corporations Division

# EXHIBIT 3

**Nevada Secretary of State Prints for All Net Development, Inc. and All Net, LLC**

# EXHIBIT 3

Home | Forms | Announcements | FAQ | Contact Us

# NEVADA SECRETARY OF STATE
### Barbara K. Cegavske

Search nvsos.gov... | GO

| SOS INFORMATION | ELECTIONS | BUSINESSES | LICENSING | INVESTOR INFORMATION | ONLINE SERVICES |

My Data Reports | Commercial Recordings | Licensing

*S1S file*

# ALL NET DEVELOPMENT, INC.

🔍 Search | 🖶 Printer Friendly | $ Calculate List Fees

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 1/17/2014 |
| Type: | Domestic Corporation | Entity Number: | E0031342014-7 |
| Qualifying State: | NV | List of Officers Due: | 1/31/2018 |
| Managed By: | | Expiration Date: | |
| NV Business ID: | NV20141042203 | Business License Exp: | 1/31/2018 |

## Additional Information

| | |
|---|---|
| Central Index Key: | |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | JOEL FERGUSON | Address 1: | 1980 FESTIVAL PLAZA DR #300 |
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89135 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | NV |
| Mailing Zip Code: | | | |
| Agent Type: | Noncommercial Registered Agent | | |

View all business entities under this registered agent

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 1,000.00 | Capital Amount: | $ 0 |

No stock records found for this company

| ☐ **Officers** | ☐ Include Inactive Officers |

| Secretary - THENNIE N JORDAN | | | |
|---|---|---|---|
| Address 1: | 2300 W. SAHARA AVE. STE. 800 | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89102 | Country: | USA |
| Status: | Active | Email: | |

| Director - STEPHEN MILLEDGE | | | |
|---|---|---|---|
| Address 1: | 2300 W. SAHARA AVE. STE. 800 | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89102 | Country: | USA |
| Status: | Active | Email: | |

| President - JACKIE L ROBINSON | | | |
|---|---|---|---|
| Address 1: | 2300 W. SAHARA AVE. STE. 800 | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89102 | Country: | USA |
| Status: | Active | Email: | |

| Treasurer - DONALD WRIGHT | | | |
|---|---|---|---|
| Address 1: | 2300 W. SAHARA AVE. STE. 800 | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89102 | Country: | USA |
| Status: | Active | Email: | |

---

[ − ] **Actions\Amendments**

Click here to view 8 actions\amendments associated with this company

5/24/2017                                   Entity Details - Secretary of State, Nevada

# ALL NET LLC

New Search                    Printer Friendly                    Calculate List Fees

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 11/8/2013 |
| Type: | Domestic Limited-Liability Company | Entity Number: | E0540662013-0 |
| Qualifying State: | NV | List of Officers Due: | 11/30/2017 |
| Managed By: | Managing Members | Expiration Date: | |
| NV Business ID: | NV20131655764 | Business License Exp: | 11/30/2017 |

## Additional Information

| | |
|---|---|
| Central Index Key: | |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | JOEL FERGUSON | Address 1: | 1980 FESTIVAL PLAZA DR #30 |
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89135 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | NV |
| Mailing Zip Code: | | | |
| Agent Type: | Noncommercial Registered Agent | | |

View all business entities under this registered agent

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 0 |

No stock records found for this company

## Officers                                                                    ☐ Include Inactive Office

**Managing Member - JACKIE L ROBINSON**

| | | | |
|---|---|---|---|
| Address 1: | 2300 W SAHARA AVE STE 800 | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89102 | Country: | USA |
| Status: | Active | Email: | |

## Actions\Amendments

Click here to view 7 actions\amendments associated with this company

# EXHIBIT 4

**Commissioner's Green Light New All Net Arena Plans
News Article**

# EXHIBIT 4



# Commissioners green light new All Net Arena plans

**Posted:** Oct 18, 2017 04:49 PM PDT
**Updated:** Oct 18, 2017 06:26 PM PDT

**(Interactive Media Not Supported by Print)**

LAS VEGAS - The All Net Arena was supposed to be ready by December of last year, but the site at the north end of the Strip is still empty.

On Wednesday, the Clark County Commission voted to allow the new plans for the project to move forward.

The man behind the project, Jackie Robinson, attended the meeting.

"You want to do it right. You only have one bite at the apple. Now, we're ready to go and get started. There won't be any stoppages," Robinson said.

Commissioners briefly discussed the $2.7 billion plan. There was little to add to what Robinson unveiled three years ago about bringing an NBA team and resort to Las Vegas.

Officials broke ground on the arena site in 2014. Almost nothing happened after that.

Back in September, 8 News NOW reported on the revised plans for the project.

The updated plan included a larger retail and convention space and another hotel tower standing at 63 stories tall.

**READ MORE: All Net Arena revisits plans to expand for basketball arena, hotel**

Robinson said the difference between now and a few years ago comes down to one thing.

"We have 100% of the money," Robinson said.

Now, Robinson says work can begin. The money comes from financing.

"He had to be very prudent where we didn't have a problem like the Fontainebleau, where they didn't have enough money to finish the construction.  He's got the money in the bank," said Chris Giunchigliani, Clark County Commissioner.

Robinson has the support of neighbors at Turnberry Place, who are pleased with shopping options and dedicated access.

"We hope the commission is diligent so that if the project does stall, it'll be taken care of," said Paul Buller, Turnberry Place Community Association.

Robinson said even with T-Mobile Arena, the north side of the Strip needs an arena with or without the NBA.

He says his project doesn't need pro basketball. Now, it just needs time.

"We're a resort, we're not just an arena," said Robinson.

Crews are expected to start digging at the All Net site before the end of the year 2017.

A few more agreements need to be finished with the county. Construction is expected to take three years.

*Copyright 2017 Nexstar Broadcasting, Inc. All rights reserved. This material may not be published, broadcast, rewritten, or ...*

# EXHIBIT 5

**Nevada Secretary of State Printout of Pro-Tect Security Services, LLC and Trade Show Services, Ltd.**

# EXHIBIT 5

# TRADE SHOW SERVICES, LTD.

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 8/14/1992 |
| Type: | Domestic Corporation | Entity Number: | C8850-1992 |
| Qualifying State: | NV | List of Officers Due: | 8/31/2018 |
| Managed By: | | Expiration Date: | |
| NV Business ID: | NV19921053450 | Business License Exp: | 8/31/2018 |

## Additional Information

| | |
|---|---|
| Central Index Key: | |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | GARY E. SCHNITZER, ESQ. | Address 1: | 8985 S EASTERN AVE STE 200 |
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89123 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | NV |
| Mailing Zip Code: | | | |
| Agent Type: | Commercial Registered Agent | | |
| Status: | Active | | |

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 5,000.00 |
| Par Share Count: | 2,500.00 | Par Share Value: | $ 2.00 |

## − Officers                                          Include Inactive Officers

### President - LESLIE BRUNO

| | | | |
|---|---|---|---|
| Address 1: | 3511 S EASTERN AVE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89169 | Country: | |
| Status: | Active | Email: | |

### Secretary - LESLIE BRUNO

| | | | |
|---|---|---|---|
| Address 1: | 3511 S EASTERN AVE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89169 | Country: | |
| Status: | Active | Email: | |

### Treasurer - LESLIE BRUNO

| | | | |
|---|---|---|---|
| Address 1: | 3511 S EASTERN AVE | Address 2: | |
| City: | LAS VEGAS | State: | NV |

| Status: | Active | Email: | |
|---|---|---|---|

**Director - LESLIE BRUNO**

| Address 1: | 3511 S EASTERN AVE | Address 2: | |
|---|---|---|---|
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89169 | Country: | |
| Status: | Active | Email: | |

## Actions\Amendments

| Action Type: | Articles of Incorporation | | |
|---|---|---|---|
| Document Number: | C8850-1992-001 | # of Pages: | 1 |
| File Date: | 8/14/1992 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | C8850-1992-005 | # of Pages: | 1 |
| File Date: | 8/3/1998 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | C8850-1992-007 | # of Pages: | 1 |
| File Date: | 7/31/1999 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | C8850-1992-008 | # of Pages: | 1 |
| File Date: | 7/17/2000 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | C8850-1992-006 | # of Pages: | 1 |
| File Date: | 7/20/2001 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | C8850-1992-004 | # of Pages: | 1 |
| File Date: | 7/29/2002 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | C8850-1992-003 | # of Pages: | 1 |
| File Date: | 7/18/2003 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | C8850-1992-002 | # of Pages: | 1 |
| File Date: | 8/10/2004 | Effective Date: | |

List of Officers for 2004 to 2005

| Document Number: | 20050270997-71 | # of Pages: | 1 |
|---|---|---|---|
| File Date: | 6/30/2005 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | 20060425237-91 | # of Pages: | 1 |
| File Date: | 6/30/2006 | Effective Date: | |

06-07

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | 20070454816-37 | # of Pages: | 1 |
| File Date: | 6/29/2007 | Effective Date: | |

(No notes for this action)

| Action Type: | Registered Agent Address Change | | |
|---|---|---|---|
| Document Number: | 20080455242-32 | # of Pages: | 1 |
| File Date: | 7/3/2008 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | 20080455243-43 | # of Pages: | 1 |
| File Date: | 7/3/2008 | Effective Date: | |

08-09

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | 20090722926-99 | # of Pages: | 1 |
| File Date: | 10/2/2009 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | 20100470181-64 | # of Pages: | 1 |
| File Date: | 6/28/2010 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | 20110567736-48 | # of Pages: | 1 |
| File Date: | 8/1/2011 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | 20120534510-53 | # of Pages: | 1 |
| File Date: | 8/1/2012 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | 20130508981-17 | # of Pages: | 1 |
| File Date: | 8/1/2013 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | 20140492847-51 | # of Pages: | 1 |

| (No notes for this action) | | | |
|---|---|---|---|
| Action Type: | Annual List | | |
| Document Number: | 20150297310-50 | # of Pages: | 1 |
| File Date: | 6/29/2015 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Annual List | | |
| Document Number: | 20160300369-50 | # of Pages: | 1 |
| File Date: | 7/5/2016 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Annual List | | |
| Document Number: | 20170285981-53 | # of Pages: | 1 |
| File Date: | 7/3/2017 | Effective Date: | |
| (No notes for this action) | | | |



**ROSS MILLER**
Secretary of State
206 North Carson Street
Carson City, Nevada 89701-4299
(775) 684 5708
Website: www.nvsos.gov

| Filed in the office of | Document Number |
|---|---|
| *[signature]* Ross Miller Secretary of State State of Nevada | 20090189971-26 |
| | Filing Date and Time 02/25/2009 11:28 AM |
| | Entity Number E0109102009-5 |

## Articles of Organization
## Limited-Liability Company
### (PURSUANT TO NRS CHAPTER 86)

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

| | |
|---|---|
| **1. Name of Limited-Liability Company:** (must contain approved limited-liability company wording; see instructions) | PRO-TECT SECURITY SERVICES, LLC        Check box if a Series Limited-Liability Company ☐ |
| **2. Registered Agent for Service of Process:** (check only one box) | ☐ Commercial Registered Agent: Name ☐ Noncommercial Registered Agent (name and address below)   **OR**   ☒ Office or Position with Entity (name and address below) <br> LESLIE BRUNO <br> Name of Noncommercial Registered Agent **OR** Name of Title of Office or Other Position with Entity <br> 3511 S. EASTERN     LAS VEGAS     Nevada   89169 <br> Street Address      City      Zip Code <br>       Nevada <br> Mailing Address (if different from street address)    City     Zip Code |
| **3. Dissolution Date:** (optional) | Latest date upon which the company is to dissolve (if existence is not perpetual): |
| **4. Management:** (required) | Company shall be managed by: ☒ Manager(s)  **OR**  ☐ Member(s) (check only one box) |
| **5. Name and Address of each Manager or Managing Member:** (attach additional page if more than 3) | 1) LESLIE BRUNO <br> Name <br> 3511 S. EASTERN    LAS VEGAS    NV   89169 <br> Street Address    City    State   Zip Code <br> 2) <br> Name <br> Street Address    City    State   Zip Code <br> 3) <br> Name <br> Street Address    City    State   Zip Code |
| **6. Name, Address and Signature of Organizer:** (attach additional page if more than 1 organizer) | LESLIE BRUNO     X *[signature]* Leslie Bruno <br> Name     Organizer Signature <br> 3511 S. EASTERN    LAS VEGAS    NV   89169 <br> Address    City    State   Zip Code |
| **7. Certificate of Acceptance of Appointment of Registered Agent:** | *I hereby accept appointment as Registered Agent for the above named Entity.* <br> X *[signature]* Leslie Bruno President      2/23/09 <br> Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity    Date |

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State NRS 86 DLLC Articles
Revised on 7-1-08

**INITIAL LIST OF MANAGERS OR MANAGING MEMBERS AND REGISTERED AGENT OF**   FILE NUMBER

PRO-TECT SECURITY SERVICES, LLC
NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF  FEBRUARY 2009   TO   FEBRUARY 2010

The entity's duly appointed registered agent in the State of Nevada upon whom process can be served is:

LESLIE BRUNO
3511 S. EASTERN
LAS VEGAS, NV 89169

A FORM TO CHANGE REGISTERED AGENT INFORMATION CAN BE FOUND ON OUR WEBSITE:
www.nvsos.gov

| Filed in the office of | Document Number |
| --- | --- |
| *Ross Miller* signature | 20090189972-37 |
| | Filing Date and Time |
| Ross Miller | 02/25/2009 11:28 AM |
| Secretary of State | Entity Number |
| State of Nevada | E0109102009-5 |

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

[ ]  Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

**\*\*YOU MAY NOW FILE YOUR INITIAL LIST ONLINE AT www.nvsos.gov\*\***

*IMPORTANT:* Read instructions before completing and returning this form.

1. Print or type names and addresses, either residence or business, for all manager or managing members. A Manager, or if none, a Managing Member of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*
2. If there are additional managers or managing members, attach a list of them to this form.
3. Return the completed form with the $125.00 filing fee. A $75.00 penalty must be added for failure to file this form by the last day of the first month following organization date.
4. Make your check payable to the Secretary of State. Your canceled check will constitute a certificate to transact business.
5. *Ordering Copies:* If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A copy fee of $2.00 per page is required for each additional copy generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.
6. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 86701-4201, (775) 684-5708.
7. Form must be in the possession of the Secretary of State on or before the last day of the first month following the initial registration date. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties.

FILING FEE: $125.00    LATE PENALTY: $75.00

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
| --- | --- | --- | --- |
| LESLIE BRUNO | [X] MANAGER | [ ] MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 3511 S. EASTERN | LAS VEGAS | NV | 89169 |
| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
| | [ ] MANAGER | [ ] MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
| | [ ] MANAGER | [ ] MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
| | [ ] MANAGER | [ ] MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
| | [ ] MANAGER | [ ] MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of NRS 360.780 and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X *Leslie Bruno, President*        Title  |President|       Date  2/23/09

**Signature of Manager or Managing Member**                      Nevada Secretary of State Initial List ManorMem
Revised: 7-1-08

**ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND REGISTERED AGENT AND STATE BUSINESS LICENSE APPLICATION OF:**

FILE NUMBER

PRO-TECT SECURITY SERVICES, LLC

E0109102009-5

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF     2/2010     TO     2/2011

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsos.gov\*\***

The entity's duly appointed registered agent in the State of Nevada upon whom process can be served is:

LESLIE BRUNO
3511 S. EASTERN
LAS VEGAS, NV 89169  USA

A FORM TO CHANGE REGISTERED AGENT INFORMATION IS FOUND AT: www.nvsos.gov

USE BLACK INK ONLY - DO NOT HIGHLIGHT

| | Filed in the office of | Document Number |
|---|---|---|
| | *[signature]* Ross Miller Secretary of State State of Nevada | 20100013803-18 |
| | | Filing Date and Time 01/12/2010 9:21 AM |
| | | Entity Number E0109102009-5 |

\*110401\*

(This document was filed electronically.)
ABOVE SPACE IS FOR OFFICE USE ONLY

☐  Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:* Read instructions before completing and returning this form.

1. Print or type name and addresses, either residence or business, for all manager or managing members. A Manager, or if none, a Managing Member of the LLC must sign the form. **FORM WILL BE RETURNED IF UNSIGNED.**
2. If there are additional managers or managing members, attach a list of them to this form.
3. Annual list fee is $125.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.
5. Make your check payable to the Secretary of State.
6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge.  To receive a certified copy, enclose an additional $30.00 per certification. **A copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies.  Appropriate instructions must accompany your order.
7. Return the completed form to:  Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due.  (Postmark date is not accepted as receipt date.)  Forms received after due date will be returned for additional fees and penalties.  Failure to include annual list and business license fees will result in rejection of filing.

ANNUAL LIST FILING FEE: $125.00     LATE PENALTY: $75.00     BUSINESS LICENSE FEE: $200.00     LATE PENALTY: $100.00

| Complete only if applicable | Section 7(2) Exemption Codes |
|---|---|
| ☐  Pursuant to NRS, this corporation is exempt from the business license fee.  Exemption code: _____ | 001 - Governmental Entity 002 - 501(c) Nonprofit Entity 003 - Home-based Business 004 - Natural Person with 4 or less rental dwelling units |
| ☑  Month and year your State Business License expires:  0 2  20 1 0 | 005 - Motion Picture Company 006 - NRS 680B.020 Insurance Co. |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| LESLIE BRUNO | ☑ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 3511 S. EASTERN | LAS VEGAS | NV | 89169 |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| | ☐ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| | ☐ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| | ☐ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of sections 6 to 16 of AB 146 of the 2009 session of the Nevada Legislature and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X  LESLIE BRUNO

**Signature of Manager or Managing Member**

| Title | Date |
|---|---|
| PRESIDENT | 1/12/2010 9:18:51 AM |

Nevada Secretary of State Annual List ManorMem
Revised: 8-5-09

# ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND REGISTERED AGENT AND STATE BUSINESS LICENSE APPLICATION OF:

FILE NUMBER
E0109102009-5

PRO-TECT SECURITY SERVICES, LLC

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF    2/2011    TO    2/2012

## **YOU MAY FILE THIS FORM ONLINE AT www.nvsos.gov**

*110401*

The entity's duly appointed registered agent in the State of Nevada upon whom process can be served is:

LESLIE BRUNO
3511 S. EASTERN
LAS VEGAS, NV 89169 USA

Filed in the office of

Ross Miller
Secretary of State
State of Nevada

Document Number
20110146942-20
Filing Date and Time
02/28/2011 7:59 AM
Entity Number
E0109102009-5

A FORM TO CHANGE REGISTERED AGENT INFORMATION IS FOUND AT: www.nvsos.gov

(This document was filed electronically.)
ABOVE SPACE IS FOR OFFICE USE ONLY

USE BLACK INK ONLY - DO NOT HIGHLIGHT

☐  Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:* Read instructions before completing and returning this form.

1. Print or type name and addresses, either residence or business, for all manager or managing members. A Manager, or if none, a Managing Member of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*
2. If there are additional managers or managing members, attach a list of them to this form.
3. Annual list fee is $125.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.
5. Make your check payable to the Secretary of State.
6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A copy fee of $2.00 per page is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.
7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

ANNUAL LIST FILING FEE: $125.00    LATE PENALTY: $75.00    BUSINESS LICENSE FEE: $200.00    LATE PENALTY: $100.00

| Complete only if applicable | Section 7(2) Exemption Codes |
|---|---|
| | 001 - Governmental Entity |
| ☐  Pursuant to NRS, this corporation is exempt from the business license fee.  Exemption code: ☐ | 002 - 501(c) Nonprofit Entity |
| | 003 - Home-based Business |
| | 004 - Natural Person with 4 or less rental dwelling units |
| ☐  Month and year your State Business License expires: ☐  20 ☐ | 005 - Motion Picture Company |
| | 006 - NRS 680B.020 Insurance Co. |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| LESLIE BRUNO | ☑ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 3511 S. EASTERN | LAS VEGAS | NV | 89169 |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| | ☐ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| | ☐ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| | ☐ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of sections 6 to 15 of AB 146 of the 2009 session of the Nevada Legislature and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X BEN DOUGLAS

**Signature of Manager or Managing Member**

Title
GENERAL MANAGER

Date
2/28/2011 7:57:34 AM

Nevada Secretary of State Annual List ManorMem
Revised: 8-5-09

**ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND REGISTERED AGENT AND STATE BUSINESS LICENSE APPLICATION OF:**

FILE NUMBER

E0109102009-5

PRO-TECT SECURITY SERVICES, LLC
NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF   2/2012   TO   2/2013

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsos.gov\*\***

The entity's duly appointed registered agent in the State of Nevada upon whom process can be served is:

LESLIE BRUNO
3511 S. EASTERN
LAS VEGAS, NV 89169  USA

A FORM TO CHANGE REGISTERED AGENT INFORMATION IS FOUND AT: www.nvsos.gov

*110401*

Filed in the office of

Ross Miller
Secretary of State
State of Nevada

| | |
|---|---|
| Document Number | 20120203482-94 |
| Filing Date and Time | 03/23/2012 1:35 PM |
| Entity Number | E0109102009-5 |

(This document was filed electronically.)
ABOVE SPACE IS FOR OFFICE USE ONLY

**USE BLACK INK ONLY - DO NOT HIGHLIGHT**

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

**IMPORTANT:** *Read instructions before completing and returning this form.*

1. Print or type names and addresses, either residence or business, for all manager or managing members. A Manager, or if none, a Managing Member of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*
2. If there are additional managers or managing members, attach a list of them to this form.
3. Annual list fee is $125.00. A $75.00 penalty must be added for failure to file by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.
5. Make your check payable to the Secretary of State.
6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A **copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.
7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

ANNUAL LIST FILING FEE: $125.00   LATE PENALTY: $75.00   BUSINESS LICENSE FEE: $200.00   LATE PENALTY: $100.00

| Complete only if applicable | Section 7(2) Exemption Codes |
|---|---|
| | 001 - Governmental Entity |
| ☐ Pursuant to NRS, this corporation is exempt from the business license fee. Exemption code: [ ] | 002 - 501(c) Nonprofit Entity |
| | 003 - Home-based Business |
| | 004 - Natural Person with 4 or less rental dwelling units |
| ☐ Month and year your State Business License expires: [ ] 20 [ ] | 005 - Motion Picture Company |
| | 006 - NRS 680B.020 Insurance Co. |

NAME
LESLIE BRUNO

(DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED)
☑ MANAGER   ☐ MANAGING MEMBER

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 3511 S. EASTERN | LAS VEGAS | NV | 89169 |

NAME

(DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED)
☐ MANAGER   ☐ MANAGING MEMBER

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

NAME

(DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED)
☐ MANAGER   ☐ MANAGING MEMBER

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

NAME

(DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED)
☐ MANAGER   ☐ MANAGING MEMBER

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of sections 6 to 16 of AB 146 of the 2009 session of the Nevada Legislature and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X LESLIE L BRUNO

**Signature of Manager or Managing Member**

| Title | Date |
|---|---|
| PRESIDENT | 3/23/2012 1:33:09 PM |

Nevada Secretary of State Annual List ManorMem
Revised: 8-5-09

**ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND REGISTERED AGENT AND STATE BUSINESS LICENSE APPLICATION OF:**

FILE NUMBER

| PRO-TECT SECURITY SERVICES, LLC | E0109102009-5 |

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF    2/2012    TO    2/2013

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsos.gov\*\***

The entity's duly appointed registered agent in the State of Nevada upon whom process can be served is:

LESLIE BRUNO
3511 S. EASTERN
LAS VEGAS, NV 89169  USA

A FORM TO CHANGE REGISTERED AGENT INFORMATION IS FOUND AT: www.nvsos.gov

*\*110401\**

Filed in the office of

Ross Miller
Secretary of State
State of Nevada

Document Number
**20120263075-28**
Filing Date and Time
**04/16/2012 11:15 AM**
Entity Number
**E0109102009-5**

(This document was filed electronically.)

ABOVE SPACE IS FOR OFFICE USE ONLY

USE BLACK INK ONLY - DO NOT HIGHLIGHT

☐    Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

**IMPORTANT:** Read instructions before completing and returning this form.

1. Print or type names and addresses, either residence or business, for all manager or managing members.  A Manager, or if none, a Managing Member of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*
2. If there are additional managers or managing members, attach a list of them to this form.
3. Annual list fee is $125.00.  A $75.00 penalty must be added for failure to file this form by the deadline  An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. State business license fee is $200.00.  Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.
5. Make your check payable to the Secretary of State.
6. **Ordering Copies:**  If requested above, one file stamped copy will be returned at no additional charge.  To receive a certified copy, enclose an additional $30.00 per certification. A **copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies.  Appropriate instructions must accompany your order.
7. Return the completed form to:  Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due.  (Postmark date is not accepted as receipt date.)  Forms received after due date will be returned for additional fees and penalties.  Failure to include annual list and business license fees will result in rejection of filing.

ANNUAL LIST FILING FEE: $125.00    LATE PENALTY: $75.00    BUSINESS LICENSE  FEE:$200.00    LATE PENALTY: $100.00

| Complete only if applicable | Section 7(2) Exemption Codes |
|---|---|
| ☐   Pursuant to NRS, this corporation is exempt from the business license fee.  Exemption code: _____ | 001 - Governmental Entity<br>002 - 501(c) Nonprofit Entity<br>003 - Home-based Business<br>004 - Natural Person with 4 or less rental dwelling units<br>005 - Motion Picture Company<br>006 - NRS 680B.020 Insurance Co. |
| ☐   Month and year your State Business License expires: ___ 20 ___ | |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| LESLIE  BRUNO | ☑ MANAGER      ☐ MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 3511 S. EASTERN | LAS VEGAS | NV | 89169 |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| LESLIE L BRUNO | ☐ MANAGER      ☑ MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 3511 S. EASTERN AVE. | LAS VEGAS | NV | 89169 |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| | ☐ MANAGER      ☐ MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| | ☐ MANAGER      ☐ MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of sections 6 to 18 of AB 146 of the 2009 session of the Nevada Legislature and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

LESLIE L BRUNO

**X**

**Signature of Manager or Managing Member**

| Title | Date |
|---|---|
| MANAGING MEMBER | 4/16/2012 11:12:53 AM |

Nevada Secretary of State Annual List ManorMem
Revised: 8-5-09

**ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND REGISTERED AGENT
AND STATE BUSINESS LICENSE APPLICATION OF:**

FILE NUMBER

PRO-TECT SECURITY SERVICES, LLC

E0109102009-5

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF   FEB, 2013   TO   FEB, 2014.  Due by Feb 28, 2013

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsos.gov\*\***

The entity's duly appointed registered agent in the State of Nevada upon whom process can be served is:

LESLIE BRUNO
3511 S. EASTERN
LAS VEGAS NV 89169

A FORM TO CHANGE REGISTERED AGENT INFORMATION IS FOUND AT: www.nvsos.gov

| Filed in the office of | Document Number |
| --- | --- |
| *Ross Miller* signature | 20130226288-34 |
| Ross Miller | Filing Date and Time |
| Secretary of State | 04/04/2013 8:46 AM |
| State of Nevada | Entity Number |
| | E0109102009-5 |

ABOVE SPACE IS FOR OFFICE USE ONLY

USE BLACK INK ONLY - DO NOT HIGHLIGHT

☐  Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

**IMPORTANT:** Read instructions before completing and returning this form.

1. Print or type names and addresses, either residence or business, for all manager or managing members. A Manager, or if none, a Managing Member of the LLC must sign the form. FORM WILL BE RETURNED IF UNSIGNED.
2. If there are additional managers or managing members, attach a list of them to this form.
3. Return completed form with the filing fee of $125.00. A $75.00 penalty must be added for failure to file this form by the deadline.
4. State business license fee is $200.00. Effective 2/1/2010, $100 must be added for failure to file form by deadline.
5. Make your check payable to the Secretary of State.
6. Ordering Copies: If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A copy fee of $2.00 per page is required for each additional copy generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.
7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include initial list and business license fees will result in rejection of filing.

FILING FEE: $125.00      LATE PENALTY: $75.00          BUSINESS LICENSE FEE: $200.00      LATE PENALTY: $100.00

| CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW | NRS 76.020 Exemption Codes |
| --- | --- |

☐  Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: [ ]

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

NOTE: If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility will result in rejection, which could result in late fees.

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | |
| --- | --- | --- |
| LESLIE BRUNO | X   MANAGER | MANAGING MEMBER |

| ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| 3511 S. EASTERN | LAS VEGAS | NV | 89169 |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | |
| --- | --- | --- |
| LESLIE L BRUNO | MANAGER   X   MANAGING MEMBER | |

| ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| 3511 S. EASTERN AVE. | LAS VEGAS | NV | 89169 |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | |
| --- | --- | --- |
| | MANAGER | MANAGING MEMBER |

| ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| | | | |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | |
| --- | --- | --- |
| | MANAGER | MANAGING MEMBER |

| ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| | | | |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of NRS Chapter 76 and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X  *Leslie Bruno* (signature)
Signature of Manager or Managing Member

Title  *Mgr Member*      Date  *4-1-13*

Nevada Secretary of State Annual List ManorMem
Revised: 3-9-12

**INITIAL/ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE BUSINESS LICENSE APPLICATION OF:**

ENTITY NUMBER
E0109102009-5

PRO-TECTSECURITY SERVICES, LLC
NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF        3/1/2014        TO        2/28/2015

USE BLACK INK ONLY - DO NOT HIGHLIGHT

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

*100401*

[X] Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT: Read instructions before completing and returning this form.*

1. Print or type names and addresses, either residence or business, for all manager or managing members. A Manager, or if none, a Managing Member of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*

2. If there are additional managers or managing members, attach a list of them to this form.

3. Return completed form with the fee of $125.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.

4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. *Ordering Copies:* If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A copy fee of $2.00 per page is required for each additional copy generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.

7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

Filed in the office of

/s/ Ross Miller

Ross Miller
Secretary of State
State of Nevada

Document Number
20140121982-40

Filing Date and Time
02/20/2014 7:47 AM

Entity Number
E0109102009-5

ABOVE SPACE IS FOR OFFICE USE ONLY

**ANNUAL LIST FILING FEE: $125.00    LATE PENALTY: $75.00 (if filing late)        BUSINESS LICENSE FEE: $200.00    LATE PENALTY: $100.00 (if filing late)**

CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW

[ ] Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code:

NOTE: If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.

NRS 76.020 Exemption Codes

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

| NAME | | | |
|---|---|---|---|
| LESLIE L BRUNO | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 3511 S EASTERN AVE | LAS VEGAS | NV | 89169 |
| NAME | | | |
| | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| NAME | | | |
| | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| NAME | | | |
| | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |

None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X *Leslie Bruno*

**Signature of Manager, Managing Member or Other Authorized Signature**

Title
MANAGING MEMBER

Date
2/17/2014

Nevada Secretary of State List ManorMem
Revised: 8-8-13

**INITIAL/ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE BUSINESS LICENSE APPLICATION OF:**

ENTITY NUMBER

PRO-TECT SECURITY SERVICES, LLC                                         E0109102009-5

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF    FEB, 2015    TO    FEB, 2016

*100402*

USE BLACK INK ONLY - DO NOT HIGHLIGHT

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

☐  Return one file stamped copy.  (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:  Read instructions before completing and returning this form.*

| Filed in the office of | Document Number |
|---|---|
| *Barbara K Cegavske* | 20150158007-39 |
| Barbara K. Cegavske | Filing Date and Time |
| Secretary of State | 04/06/2015 4:36 PM |
| State of Nevada | Entity Number |
| | E0109102009-5 |

(This document was filed electronically.)

ABOVE SPACE IS FOR OFFICE USE ONLY

1. Print or type names and addresses, either residence or business, for all manager or managing members.  **A Manager, or if none, a Managing Member** of the LLC must sign the form.  *FORM WILL BE RETURNED IF UNSIGNED.*
2. If there are additional managers or managing members, attach a list of them to this form.
3. Return completed form with the fee of $125.00.  A $75.00 penalty must be added for failure to file this form by the deadline.  An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. State business license fee is $200.00.  Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.
5. Make your check payable to the Secretary of State.
6. **Ordering Copies:**  If requested above, one file stamped copy will be returned at no additional charge.  To receive a certified copy, enclose an additional $30.00 per certification.  **A copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies.  Appropriate instructions must accompany your order.
7. Return the completed form to:  Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due.  (Postmark date is not accepted as receipt date.)  Forms received after due date will be returned for additional fees and penalties.  Failure to include annual list and business license fees will result in rejection of filing.

**ANNUAL LIST FILING FEE: $125.00**    **LATE PENALTY: $75.00 (if filing late)**         **BUSINESS LICENSE FEE: $200.00**    **LATE PENALTY: $100.00 (if filing late)**

---

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

☐  Pursuant to NRS Chapter 76, this entity is exempt from the business license fee.  Exemption code: ☐

**NOTE: If claiming an exemption, a notarized Declaration of Eligibility form must be attached.  Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.**

**NRS 76.020 Exemption Codes**

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

| NAME | | | |
|---|---|---|---|
| LESLIE BRUNO | MANAGER OR MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 3511 S. EASTERN , USA | LAS VEGAS | NV | 89169 |

| NAME | | | |
|---|---|---|---|
| | MANAGER OR MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

| NAME | | | |
|---|---|---|---|
| | MANAGER OR MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

| NAME | | | |
|---|---|---|---|
| | MANAGER OR MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X LESLIE BRUNO

**Signature of Manager, Managing Member or Other Authorized Signature**

| Title | Date |
|---|---|
| MANAGING MEMBER | 4/6/2015 4:36:37 PM |

Nevada Secretary of State List ManorMem
Revised: 1-5-15

**INITIAL/ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE BUSINESS LICENSE APPLICATION OF:**

ENTITY NUMBER

| PRO-TECT SECURITY SERVICES, LLC | E0109102009-5 |

NAME OF LIMITED-LIABILITY COMPANY

*100403*

FOR THE FILING PERIOD OF | FEB, 2016 | TO | FEB, 2017 |

USE BLACK INK ONLY - DO NOT HIGHLIGHT

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

☐ Return one file stamped copy.  (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:*  *Read instructions before completing and returning this form.*

1. Print or type names and addresses, either residence or business, for all manager or managing members.  **A Manager, or if none, a Managing Member of the LLC must sign the form.  FORM WILL BE RETURNED IF UNSIGNED.**
2. If there are additional managers or managing members, attach a list of them to this form.
3. Return completed form with the fee of $150.00.  A $75.00 penalty must be added for failure to file this form by the deadline.  An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. State business license fee is $200.00.  Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.
5. Make your check payable to the Secretary of State.
6. **Ordering Copies:**  If requested above, one file stamped copy will be returned at no additional charge.  To receive a certified copy, enclose an additional $30.00 per certification.  A copy fee of $2.00 per page is required for **each** additional copy generated when ordering 2 or more file stamped or certified copies.  Appropriate instructions must accompany your order.
7. Return the completed form to:  Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due.  (Postmark date is not accepted as receipt date.)  Forms received after due date will be returned for additional fees and penalties.  Failure to include annual list and business license fees will result in rejection of filing.

| Filed in the office of | Document Number |
| *Barbara K Cegavske* | 20160102997-57 |
| | Filing Date and Time |
| Barbara K. Cegavske | 03/04/2016 11:42 AM |
| Secretary of State | Entity Number |
| State of Nevada | E0109102009-5 |

(This document was filed electronically.)
ABOVE SPACE IS FOR OFFICE USE ONLY

**ANNUAL LIST FILING FEE: $150.00   LATE PENALTY: $75.00 (if filing late)**   **BUSINESS LICENSE FEE: $200.00   LATE PENALTY: $100.00 (if filing late)**

| **CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW** | **NRS 76.020 Exemption Codes** |

☐ Pursuant to NRS Chapter 76, this entity is exempt from the business license fee.  Exemption code: ☐

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

**NOTE:  If claiming an exemption, a notarized Declaration of Eligibility form must be attached.  Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.**

| NAME | | | | |
|------|--|--|--|--|
| LESLIE BRUNO | MANAGER OR MANAGING MEMBER | | | |
| ADDRESS | CITY | | STATE | ZIP CODE |
| 3511 S. EASTERN , USA | LAS VEGAS | | NV | 89169 |

| NAME | | | | |
|------|--|--|--|--|
| | MANAGER OR MANAGING MEMBER | | | |
| ADDRESS | CITY | | STATE | ZIP CODE |
| | | | | |

| NAME | | | | |
|------|--|--|--|--|
| | MANAGER OR MANAGING MEMBER | | | |
| ADDRESS | CITY | | STATE | ZIP CODE |
| | | | | |

| NAME | | | | |
|------|--|--|--|--|
| | MANAGER OR MANAGING MEMBER | | | |
| ADDRESS | CITY | | STATE | ZIP CODE |
| | | | | |

None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X LESLIE BRUNO

**Signature of Manager, Managing Member or Other Authorized Signature**

| Title | Date |
| MANAGING MEMBER | 3/4/2016 11:42:45 AM |

Nevada Secretary of State List ManorMem
Revised: 7-1-15

**INITIAL/ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE BUSINESS LICENSE APPLICATION OF:**

ENTITY NUMBER
E0109102009-5

PRO-TECT SECURITY SERVICES, LLC

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF    FEB, 2017    TO    FEB, 2018

USE BLACK INK ONLY - DO NOT HIGHLIGHT

*100403*

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT: Read instructions before completing and returning this form.*

1. Print or type names and addresses, either residence or business, for all manager or managing members. A **Manager, or if none, a Managing Member** of the LLC must sign the form. **FORM WILL BE RETURNED IF UNSIGNED.**

2. If there are additional managers or managing members, attach a list of them to this form.

3. Return completed form with the fee of $150.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.

4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A copy fee of $2.00 per page is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.

7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

Filed in the office of
*Barbara K Cegavske*
Barbara K. Cegavske
Secretary of State
State of Nevada

Document Number
20160528971-71
Filing Date and Time
12/05/2016 4:26 PM
Entity Number
E0109102009-5

(THIS DOCUMENT WAS FILED ELECTRONICALLY)
ABOVE SPACE IS FOR OFFICE USE ONLY

**ANNUAL LIST FILING FEE:** $150.00   **LATE PENALTY:** $75.00 (if filing late)          **BUSINESS LICENSE FEE:** $200.00   **LATE PENALTY:** $100.00 (if filing late)

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

☐ Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: [    ]

**NOTE: If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.**

**NRS 76.020 Exemption Codes**
001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

| NAME | | | |
|---|---|---|---|
| LESLIE BRUNO | MANAGER OR MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 3511 S. EASTERN , USA | LAS VEGAS | NV | 89169 |

| NAME | | | |
|---|---|---|---|
| | MANAGER OR MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |

| NAME | | | |
|---|---|---|---|
| | MANAGER OR MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |

| NAME | | | |
|---|---|---|---|
| | MANAGER OR MANAGING MEMBER | | |
| ADDRESS | CITY | STATE | ZIP CODE |

None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X  LESLIE L BRUNO

**Signature of Manager, Managing Member or Other Authorized Signature**

Title
PRESIDENT

Date
12/5/2016 4:26:40 PM

Nevada Secretary of State List ManorMem
Revised: 7-1-15

# EXHIBIT 6

**Retainer Agreement**

# EXHIBIT 6

## RETAINER AGREEMENT

I am retaining the law firm of DURHAM JONES & PINEGAR, a professional corporation, ("the firm"), to prepare the documents listed below for a flat fee of $ _6,500.00_:

**ESTATE PLANNING**
___ Living Trust - Simple
___ Living Trust - A/B
___ Living Trust - A/B/C
___ Pour-Over Will
___ DPOA-Health Care
___ DPOA-Assets
___ Living Will
___ Trust Amendment
___ Codicil to Will
___ Last Will & Testament
___ Children's Trust
___ Education Trust
___ Generation-Skipping Trust
___ Special Needs Trust
___ Irrevocable Life Insurance Trust
___ Qualified Personal Residence Trust
___ Charitable Remainder Trust

___ Grantor Retained Annuity Trust
_1_ Nevada Asset Protection Trust
___ Offshore Trust
___ Trust Administration

**BUSINESS**
___ Corporation
_1_ Limited Liability Company
_1_ Family Limited Partnership
___ General Partnership
___ Non-Profit Corporation/Trust
___ Corporate Clean-Up
___ Stock Purchase Agreement
___ Asset Purchase Agreement
___ Buy-Sell Agreement
___ Promissory Note
___ Security Agreement
___ UCC-1 Financing Statement

**REAL ESTATE**
___ Quit-Claim Deed
___ Grant, Bargain & Sale Deed
___ Affidavit Terminating J.T.
___ Deed of Trust and Note
___ Assignment of Trust Deed
___ Homestead

**OTHER**
_____
_____
_____
_____
_____
*Does not include expedite fee, deed prep or recording costs.*

All costs, such as filing fees, recording fees, photocopies, postage, long distance phone calls and other appropriate costs, will be paid in addition to professional fees.        $ _590.00_

**TOTAL AMOUNT OF RETAINER: $** _7,090.00_

I agree to pay all costs and one-half of professional services before services are begun and the remaining one-half of professional fees upon completion of the documents prepared by the firm, regardless of whether I execute or implement the documents. I direct the firm to begin preparation of the documents upon execution of this agreement regardless of whether I have deposited funds with the firm at this time.

Any amount which is not paid in full within fifteen (15) days from its due date will bear interest at 1.5% per month from the due date, compounded monthly until paid in full. I agree to pay all costs of collection, including attorney fees, for any bill over thirty (30) days past due. The firm may at any time apply any funds held in trust towards my statement. I understand that all questions or objections regarding any billing must be made in writing within thirty (30) days of the billing or I will be deemed to have waived such objection. I authorize the firm to retain my file and all of my papers and documents held by the firm as a lien until my bill is paid in full. If I request additional legal services to be performed by the firm, I agree to pay for such services at the firm's standard rates at the time the services are performed.

DATE: _8/23/10_

_____
(Client Signature)

DATE: _____

_____
(Client Signature)

f:\forms.general.client\retainer agreements\retainerdjp- use this one for ep 2009.doc

# CLIENT INFORMATION

Date: _8.23.10_                     Referred by: _Jack Musdel_

| PERSONAL INFORMATION | | |
|---|---|---|
| | CLIENT 1 | CLIENT 2 |
| Name | Leslie Bruno | |
| Street Address | 3511 S. Eastern Ave | |
| Mailing Address | Same | |
| City, State, Zip | Las Vegas NV 89169 | |
| Home Phone | ▓▓▓▓▓▓▓▓ | |
| Cellular Phone | ▓▓▓▓▓▓▓▓ | |
| Pager/Beeper | | |
| Fax | | |
| Email Address | Rachaird0070@hotmail.com | |
| Date of Birth | ▓▓▓▓▓ | |
| Social Security Number | | |
| Best Place and Time to Call | Home: ___ a.m. to ___ p.m. Work: ___ a.m. to ___ p.m. | Home: ___ a.m. to ___ p.m. Work: ___ a.m. to ___ p.m. |

| EMPLOYMENT INFORMATION | |
|---|---|
| Occupation | Business Owner |
| Employer | Pro-Tect Security |
| Employer Address | Same as above |
| City, State, Zip | |
| Business Phone | |

| ADVISORS | |
|---|---|
| Accountant | ▓▓▓▓▓▓ |
| Insurance Agent | ▓▓▓▓▓▓ |
| Stockbroker | ▓▓▓▓▓▓ |
| Financial Planner/Advisor | N/A |

## BUSINESS INFORMATION
(Complete if Client is a Business Entity)

| | |
|---|---|
| Name of Company | Pro-Tect Security |
| Type of Entity | ☐ Sole Proprietor  ☑ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ LLC  ☐ Other: |
| Telephone Number | 735-0110 |
| Fax | 735-7793 |
| Street Address | Same as above |
| Mailing Address | |
| City, State, Zip | |
| Resident Agent | Gary Schmitzer |

If two or more persons consult with or hire an attorney for legal services concerning the same or related matters, your communications with the attorney can and will be disclosed to the other co-clients, and you may risk compromising your interests.

There is no attorney/client relationship until client has signed a fee agreement and has paid the required retainer fee.

Purpose of consultation _Estate Planning_

If litigation, who is opposing party? _____

DURHAM JONES & PINEGAR
New Client/Matter Sheet

| Client: | Bruno, Leslie | No. | 27763 |
|---|---|---|---|
| Matter: | Living Trust | No. | .1 |

| Originating Attorney: | RLB | |
|---|---|---|
| Billing Attorney: | RLB | |
| Responsible Attorney: | RLB | |
| Section Head: | DAT | |
| Date | August 24, 2010 | |
| Contact: | Leslie Bruno | |
| Address: | 3511 S. Eastern Avenue, Las Vegas, Nevada 89169 | |

| Phone: | Home | Fax: |
|---|---|---|
| | Cell: ███████ | |

| Email: | ranchgirl007@hotmail.com |
|---|---|

| SS#: | | Tax ID #: |
|---|---|---|

| Matter Description: | Living Trust |
|---|---|

| File Description Name(s) | ☐ Agreements ☒ Documents ☐ Correspondence ☐ Attorney Specific ☐ Other | ☐ Discovery ☐ Notes ☐ Other Documents | ☐ Pleadings ☐ Research ☐ Settlement |
|---|---|---|---|

| Affiliated Parties: | |
|---|---|

| Adverse Parties: | |
|---|---|

| Retainer amount: | $ 0.00 |
|---|---|

Engagement Letter:
☒ Already on file and sufficient to cover this matter
☐ Will provide copy to billing office within three days of e-mail conflict check

| Rate Schedule: | Standard | Other |
|---|---|---|
| Interest: | Flat Fee? Yes | If yes, amount: $0.00 |

Bill Type: Select One

Practice Area Select One: EP - Tax  Estate Planning

| Submitted By: smy | Client Referred via: Current/Past Client (other) |
|---|---|

Conflict Checks: Juris Inquiry

Engagement Letter Received

E-mail Sent 8.24.10    Attorneys Signed

Cleared    Initials BB

Labels
Solo OF
Section Head Email
Set Up Email

**DURHAM JONES & PINEGAR**
New Client/Matter Sheet

| Client: | Bruno, Leslie | No. 27763 |
| Matter: | Asset Protection Trust | No. .2 |

| Originating Attorney: | RLB |
| Billing Attorney: | RLB |
| Responsible Attorney: | RLB |
| Section Head: | DAT |
| Date | August 24, 2010 |
| Contact: | Leslie Bruno |
| Address: | 3511 S. Eastern Avenue, Las Vegas, Nevada 89169 |

| Phone: | Home: ▓▓▓▓ | Fax: |
| | Cell: ( | |
| Email: | ranchgirl007@hotmail.com | |
| SS#: | | Tax ID #: |

| Matter Description: | ▓▓▓▓ Asset Protection Trust |

| File Description Name(s) | ☐ Agreements | ☐ Discovery | ☐ Pleadings |
| | ☒ Documents | ☐ Notes | ☐ Research |
| | ☐ Correspondence | ☐ Other Documents | ☐ Settlement |
| | ☐ Attorney Specific | | |
| | ☐ Other | | |

| Affiliated Parties: | |
| Adverse Parties: | |
| Retainer amount: | $ 3,545.00 |

Engagement Letter:
☒ Already on file and sufficient to cover this matter
☐ Will provide copy to billing office within three days of e-mail conflict check

| Rate Schedule: | Standard | Other |
| Interest: | | Flat Fee? Yes   If yes, amount: $3,570.00 |
| Bill Type: Select One |
| Practice Area Select One: EP - Tax  Estate Planning |
| Submitted By: smy | Client Referred via: Current/Past Client (other) |

Conflict Checks: Juris Inquiry _____   E-mail Sent 8-25-10   Attorneys Signed ✓

Engagement Letter Received _____   Cleared _____   Initials _BB_

DURHAM JONES & PINEGAR
New Client/Matter Sheet

| Client: | Bruno, Leslie | No. 27763 |
| Matter: | Limited Partnership | No. .3 |

| Originating Attorney: | RLB | RLB |
| Billing Attorney: | RLB | RLB |
| Responsible Attorney: | RLB | RLB |
| Section Head: | DAT | |
| Date | August 24, 2010 | |
| Contact: | Leslie Bruno | |
| Address: | 3511 S. Eastern Avenue, Las Vegas, Nevada 89169 | |

| Phone: | Home: ███████ | Fax: |
| | Cell: ( | |

| Email: | ranchgirl007@hotmail.com |
| SS#: | | Tax ID #: |
| Matter Description: | Harmony Investments, L.P. |

| File Description Name(s) | ☐ Agreements<br>☒ Documents<br>☐ Correspondence<br>☐ Attorney Specific<br>☐ Other | ☐ Discovery<br>☐ Notes<br>☐ Other Documents | ☐ Pleadings<br>☐ Research<br>☐ Settlement |

| Affiliated Parties: | |
| Adverse Parties: | |
| Retainer amount: | $ 0.00 |

Engagement Letter:
☒ Already on file and sufficient to cover this matter
☐ Will provide copy to billing office within three days of e-mail conflict check

| Rate Schedule: | Standard | Other |
| Interest: | | Flat Fee? Yes   If yes, amount: $1,730.00 |

Bill Type: Select One

Practice Area Select One:  EP - Tax  Estate Planning

| Submitted By: smy | Client Referred via: Current/Past Client (other) |

Conflict Checks: _____ Inquiry _____

Engagement Letter Received _____

E-mail Sent _____ Attorneys Signed ✓

Cleared _____   Initials _____

*(handwritten notes)*

DURHAM JONES & PINEGAR
## New Client/Matter Sheet

| Client: | Bruno, Leslie | No. 27763 |
| Matter: | Limited-Liability Company | No.   .4 |

| Originating Attorney: | RLB | |
| Billing Attorney: | RLB | |
| Responsible Attorney: | RLB | |
| Section Head: | DAT | |
| Date | August 24, 2010 | |
| Contact: | Leslie Bruno | |
| Address: | 3511 S. Eastern Avenue, Las Vegas, Nevada 89169 | |

| Phone: | Home: ▮▮▮▮▮▮ | Fax: | |
| | Cell: ( ▮▮▮▮ | | |
| Email: | ranchgirl007@hotmail.com | | |
| SS#: | | Tax ID #: | |

| Matter Description: | Wezi Holdings, LLC |
| File Description Name(s) | ☐ Agreements   ☐ Discovery   ☐ Pleadings |
| | ☒ Documents   ☐ Notes   ☐ Research |
| | ☐ Correspondence   ☐ Other Documents   ☐ Settlement |
| | ☐ Attorney Specific |
| | ☐ Other |

| Affiliated Parties: | |
| Adverse Parties: | |
| Retainer amount: | $ 0.00 |

Engagement Letter:
☒ Already on file and sufficient to cover this matter
☐ Will provide copy to billing office within three days of e-mail conflict check

| Rate Schedule: | Standard      Other |
| Interest: | Flat Fee? Yes   If yes, amount: $1,790.00 |
| Bill Type: Select One | |
| Practice Area Select One: EP - Tax Estate Planning | |
| Submitted By: smy | Client Referred via: Current/Past Client (other) |

Conflict Checks: Juris Inquiry          E-mail Sent          Attorneys Signed

Engagement Letter Received          Cleared          Initials

# FILE OPENING MEMORANDUM

DATE: _August 23, 2010_                    NEW CLIENT  ☑

FILE NUMBER: _1_                           NEW MATTER  ☐

| Name of Client | _Bruno, Leslie_ | | |
|---|---|---|---|
| File Name | _Living Trust_ | | |
| Cross Reference | File Name | | File No. |
| Attorney | Originating | Primary | Secondary |
| Category | Wills and Trusts ☐<br>LLC/FLP/LLP ☐<br>Corporate ☐<br>Probate/Trust Admin ☐<br>Will/Trust Contest ☐ | Real Estate ☐<br>Contract ☐<br>Securities ☐<br>Civil Litigation ☐ | Guardianship ☐<br>Medicaid ☐<br>Family ☐<br>General ☐ |
| Billing | Itemized Flat Fee:<br>_Holding copies_ /$ _0_<br>_____ /$ ____<br>_____ /$ ____<br>_____ /$ ____<br>TOTAL:  $ _0_ | Hourly:<br>RLB _____<br>KB _____<br>PVA _____<br>TMR _____<br>ETN _____ | |
| Payments | Amount Paid $ _0_<br>Balance Due $ _0_ | Deposit to:<br>General Account ☐<br>Trust Account ☐ | |

## INSTRUCTIONS, NOTES, CRITICAL DATES & ADVERSE PARTIES FOR LITIGATION:

_____
_____
_____

## CHECKLIST

- ☐ Client Information Form Completed & Attached
- ☐ (or) Information Verified for Existing Client
- ☐ Fee Agreement Signed by Client and Attached
- ☐ Retainer Collected
- ☐ Appointment Made for Signing Documents
- ☐ Thank You card sent to Referral Source

DURHAM
JONES &
PINEGAR

# ESTATE PLANNING INFORMATION

*(Single Individual)*

Date: _8·30·10_

Please print or write legibly and provide as complete information as possible, where applicable. **PLEASE VERIFY THE SPELLING OF EACH AND EVERY NAME WITH THE CLIENT.**

*(handwritten: No assets in trust. Do as a new one — not A&R)*

1.    **PERSONAL INFORMATION.**

Name (as it will appear on documents):

_use whatever name she wants_

Any other names client may be known by (if client wants it included in his or her documents):

_Leslie Bonnie Bruno_

Children:

| Children's Names | Age | Married Single Divorced | Gender | Date of Birth (Minors) |
|---|---|---|---|---|
| | ███ | | ███ | ███ |
| | | | | |
| | | | | |
| | | | | |

Other Beneficiaries:

| Beneficiaries' Names | Age | Relationship |
|---|---|---|
| ███████████████ | ███ | |
| | | |
| | | |
| | | |

2.    **FINANCIAL INFORMATION.**

The value of the client's estate is approximately $_____. Please attach a financial statement or complete the attached list of assets and liabilities.

App 1 Page   049

3.    **TRUST INFORMATION.**

(a)    **Trust Name**.  Our standard procedure is to title the trust using the client's full name followed by the words "living trust."  Example:  "Mary A. Jones Living Trust. "  Please specify how the trust should be titled.

☐    Standard name; or

☐    Other: _____ _ditto_ ▇▇▇▇ _Trust_

(b)    **Distribution of Property at Death**.

(1)    **Specific Bequests** *(Optional)*.  We recommend that any personal items such as jewelry, clothing, household furnishings, books, collectibles, artwork, etc. that the client wants to leave to an individual be listed by the client on his or her Disposition of Personal and Household Effects attached to his or her will.  Any gifts of money, real estate or any personal property with a certificate of title should be listed here.

| Beneficiary | Bequest |
|---|---|
| Someone to care for horse, a well per vath tous | $ |
|  |  |
|  |  |
|  |  |

NOTE:  We need a street address for all real property.

(2)    **Remainder**.  Our standard trust provisions distribute all remaining property in equal shares to the client's children or other designated beneficiaries.  If any beneficiary predeceases the client, his or her share is distributed to his or her descendants, if any.  If a predeceased beneficiary does not have any descendants, his or her share is divided equally among his or her siblings (or to the descendants of a predeceased sibling).  If a beneficiary predeceases without any descendants, siblings or descendants of siblings, his or her share is distributed to the client's heirs at law.  Choose one of the provisions below:

☑    Distribute all remaining properties equally to the client's children (or to the descendants of a predeceased child); or   _max gest_

☐    Distribute all remaining properties to the individuals listed below:

| Beneficiary | Percentage |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

(3)   Trust for a Beneficiary. (choose one).

Our standard form provides that the trustee hold the shares for each beneficiary as a separate share.  However, trust assets can be held as a single trust for the benefit of all beneficiaries until, for example, the youngest beneficiary reaches a designated age, or upon the occurrence of a specific event.  Please indicate the appropriate action.

☑   Trust assets shall be divided equally among the beneficiaries and held in separate shares for each beneficiary as follows:

      ☐   Hold in trust until the beneficiary reaches age _____; distribute all remaining property outright to the beneficiary when he or she attains such age; or

      ☐   Hold in trust and distribute as follows:

            _____ percent at age _____

            _____ percent at age _____

            _____ percent at age _____

            _____ percent at age _____; or

      ☑   Other:

      _Throughout his life; rem. to desc's, if none,_
      _to charitie used or p.s of existing tr._
      _(others min for s of adding trust Fredson. Harris, UT_
      _as noted)_

or

☐   Trust assets shall be held in one trust for the benefit of all beneficiaries as follows:

      ☐   Distribute all remaining assets equally among the beneficiaries when the youngest beneficiary attains age _____.

(c)   Successor Trustee.

    First choice: ███████████████████████

    Second choice: ██████████████████████

    Third choice: ███████████████████████

If there are two or more successor trustees serving at one time please indicate whether:

    ☐   any trustee may act alone;
    ☑   majority vote is required; or
    ☐   all trustees must consent

4.   **WILL PROVISIONS.**

(a)   Personal Representative.  Normally the personal representatives of the client's will are the same as the successor trustees of his or her trust.

    ☑   The personal representatives shall be the same as the successor trustees of the trust listed under subsection 3(c) above; or

    ☐   The following persons shall be named as personal representatives of the will:

f:\forms\estate\infoquestionnaire.single
Revised:  November 11, 2009

3

First choice: _____

Second choice: _____

Third choice: _____

If two or more personal representatives are serving at one time, please indicate whether:

☐   any personal representative may act alone;
☑   majority vote is required; or
☐   all personal representatives must consent

(b)   Burial Instructions.

_____

_____

_____

(c)   Guardian.  Please indicate the person or persons the client would like to nominate as guardians of any minor child of his or hers.  If a couple is named, please indicate whether the client wants only one of them to serve if they divorce or if one them dies, or whether the client would like the next individual or couple to serve.

First choice: _____

_____
If a couple, who should serve in the event of death or divorce?
Divorce: _____;
Death:  surviving spouse ☐  or successor ☐

Second choice: _____

_____
If a couple, who should serve in the event of death or divorce?
Divorce: _____;
Death:  surviving spouse ☐  or successor ☐

5.   DURABLE POWER OF ATTORNEY FOR ASSETS/GUARDIAN OF ESTATE.

The client would like to give his or her durable power of attorney for assets to:

☑   Same persons as successor trustee of the trust listed in subsection 3(c); or

☐   Other.

First choice: _____

Second choice: _____

Third choice: _____
If two or more persons are serving at one time, please indicate whether:

☐   any power holder may act alone;
☑   majority vote is required; or
☐   all power holders must consent

6.   **DURABLE POWER OF ATTORNEY FOR HEALTH CARE/GUARDIAN OF PERSON.**

**NOTE:  DOES THE CLIENT WISH THE PRIMARY CARE PHYSICIAN, ACTING ALONE (RATHER THAN IN CONJUNCTION WITH THE HOLDER OF THE DURABLE POWER OF ATTORNEY FOR HEALTH CARE), TO DETERMINE WHEN TO WITHDRAW LIFE SUPPORT?  IF YES, A LIVING WILL NEEDS TO BE PREPARED IN PLACE OF A DURABLE POWER OF ATTORNEY FOR HEALTH CARE.**

The client would like a living will.        ☑ Yes ☐ No
The client would like to give his or her durable power of attorney for health care to:

☐        Same persons as the holders of the power of attorney for assets listed in Section 5 above; or

☑        Other:

First choice:

Name: █████████████████

Address:_____

Phone Number:_____

Second choice:

Name: ████████████████████████████

Address ████████████████████████████

Phone Number:_____

Third choice:

Name: ██████████████████

Address:_____

Phone Number:_____

If two or more persons are serving at one time, please indicate whether:

☐        any power holder may act alone;
☐        majority vote is required; or
☐        all power holders must consent

Information taken by:_____ *NMB* _____

ARE WE PREPARING A QUIT CLAIM DEED?                    _Not here_
CLIENT TO PROVIDE COPY OF LAST RECORDED DEED?     _____
ORDER  LAST RECORDED DEED FROM EQUITY TITLE?         _____

# FILE OPENING MEMORANDUM

DATE: _August 23, 2010_     NEW CLIENT ☑

FILE NUMBER: _.2_     NEW MATTER ☑

| Name of Client | _Brund, Leslie_ | | |
|---|---|---|---|
| File Name | ████████ _Asset Protection Trust_ | | |
| Cross Reference | File Name | | File No. |
| Attorney | Originating _RLB_ Primary _____ | | Secondary _____ |
| Category | Wills and Trusts ☑<br>LLC/FLP/LLP ☐<br>Corporate ☐<br>Probate/Trust Admin ☐<br>Will/Trust Contest ☐ | Real Estate ☐<br>Contract ☐<br>Securities ☐<br>Civil Litigation ☐ | Guardianship ☐<br>Medicaid ☐<br>Family ☐<br>General ☐ |
| Billing | Itemized Flat Fee:<br>_NAPT_ /$ _4,950_<br>_Discount_ /$ _1,450_<br>_pub. fees_ /$ _70_<br> /$<br>TOTAL: $ _3,570_ | Hourly:<br>RLB _____<br>KB _____<br>PVA _____<br>TMR _____<br>ETN _____ | |
| Payments | Amount Paid $ _3,545_<br>Balance Due $ _25_ | Deposit to:<br>General Account ☐<br>Trust Account ☐ | |

## INSTRUCTIONS, NOTES, CRITICAL DATES & ADVERSE PARTIES FOR LITIGATION:

_____

_____

_____

CHECKLIST
- ☐ Client Information Form Completed & Attached
- ☐ (or) Information Verified for Existing Client
- ☐ Fee Agreement Signed by Client and Attached
- ☐ Retainer Collected
- ☐ Appointment Made for Signing Documents
- ☐ Thank You card sent to Referral Source

DURHAM
JONES &
PINEGAR

# FILE OPENING MEMORANDUM

DATE: _August 23, 2010_  NEW CLIENT []

FILE NUMBER: ___3___  NEW MATTER ☑

| Name of Client | _Brens, Leslie_ | | |
|---|---|---|---|
| File Name | _Harmony Investments, L.P._ | | |
| Cross Reference | File Name | | File No. |
| Attorney | Originating _RLB_ Primary ___ | | Secondary ___ |
| Category | Wills and Trusts ☐ | Real Estate ☐ | Guardianship ☐ |
| | LLC/FLP/LLP ☑ | Contract ☐ | Medicaid ☐ |
| | Corporate ☐ | Securities ☐ | Family ☐ |
| | Probate/Trust Admin ☐ | Civil Litigation ☐ | General ☐ |
| | Will/Trust Contest ☐ | | |

| Billing | Itemized Flat Fee: | | Hourly: | |
|---|---|---|---|---|
| | _LP_ /$ _1,500_ | | RLB | ___ |
| | _costs_ /$ _230_ | | KB | ___ |
| | /$ ___ | | PVA | ___ |
| | /$ ___ | | TMR | ___ |
| | TOTAL: $ _1,730_ | | ETN | ___ |

| Payments | Amount Paid $ _0_ | Deposit to: | |
|---|---|---|---|
| | Balance Due $ _1,730_ | General Account [] | |
| | | Trust Account [] | |

## INSTRUCTIONS, NOTES, CRITICAL DATES & ADVERSE PARTIES FOR LITIGATION:

_____
_____
_____

## CHECKLIST

- ☐ Client Information Form Completed & Attached
- ☐ (or) Information Verified for Existing Client
- ☐ Fee Agreement Signed by Client and Attached
- ☐ Retainer Collected
- ☐ Appointment Made for Signing Documents
- ☐ Thank You card sent to Referral Source

DURHAM
JONES &
PINEGAR

## NEVADA SPENDTHRIFT TRUST
## INFORMATION SHEET

Date: _8-23-10_

**NAME OF TRUST:** Standard: ☐   Other Name: _____████_____ APT

**TRUSTOR:** _Lynn L. Bonlie_

**TRUSTOR:** _II_

**INVESTMENT TRUSTEE 1:** _Lynn_

**INVESTMENT TRUSTEE 2:** _II_

**SUCCESSOR INVESTMENT TRUSTEES:**   Same as Family Trust: ☑

Other:   1st Successor Investment Trustee: _Lynn_

2nd Successor Investment Trustee: _____

**DISTRIBUTION TRUSTEE:** ████

**SUCCESSOR DISTRIBUTION TRUSTEE:** ████

**TRUST CONSULTANT:** ████

**Remaining Beneficiaries:**   Same as Family Trust: ☑

Other: _____

QC ████ to NAPT? yes - primary ks.

Revised: October 22, 2008   Nevada Spendthrift Trust Information Questionnaire

FAMILY LIMITED PARTNERSHIP INFORMATION SHEET     DATE _8-23-10_

NAME OF CLIENT: _Leslie Bruno_

NAME OF LP:  1. _Harmony Investments, LP_
(TOP THREE CHOICES
FOR NAMES)       2. _____

                 3. _____

(NAME OF LIMITED PARTNERSHIP NRS 88.320(1)(a) MUST CONTAIN THE WORDS "LIMITED PARTNERSHIP" WITHOUT ABBREVIATION)

STREET ADDRESS OF RECORDS IN NEVADA OF LP: (NRS 88.330(1)(a) REQUIRES THE RECORDS DESCRIBED IN NRS 88.335(1) BE KEPT AT AN OFFICE IN NEVADA FOR INSPECTION BY ANY PARTNER)

_DSP_

MAILING ADDRESS: (If Clients do not want documents sent to above LP address)

TELEPHONE NUMBER OF LP: (FOR OUR RECORDS ONLY) _____

GENERAL PARTNERS

| NAMES | BUSINESS ADDRESSES | SSN | %: |
|-------|-------------------|-----|-----|
| Lynn Bonlie | PO Box 60692 | | |
| L. Bonlie | LV, NV 89160 | | |

(THE NAME AND BUSINESS ADDRESS OF EACH GENERAL PARTNER IS REQUIRED PER NRS 88.350(1)(c). THE SSN FOR AT LEAST ONE GENERAL PARTNER IS REQUIRED ON SS-4 TO OBTAIN AN EIN. IF A CORPORATION IS THE GENERAL PARTNER, THE SS-4 OF AN OFFICER IS REQUIRED, NOT THE EIN OF THE CORPORATION.)

LIMITED PARTNERS

| NAMES | SSN | %: |
|-------|-----|-----|
| MRPT | | |

(INFORMATION OF LIMITED PARTNERS IS NOT OF PUBLIC RECORD)

RESIDENT AGENT AND ADDRESS: (MUST BE PHYSICAL ADDRESS PER NRS 88.330(1)(a) - NOT A P.O. BOX)
_DSP_

EXPEDITE: YES _✓_ NO _____   EIN: YES _✓_ NO _____

BUSINESS LICENSE: YES _____ NO _✓_

ASSETS TO BE TRANSFERRED: _investment_

F:\FORMS.GENERAL.CLIENT\ESTATE\Info Questionnaires\FLP INFO.doc

# FILE OPENING MEMORANDUM

DATE: _August 23, 2010_                          NEW CLIENT ☐

FILE NUMBER: _3_                                 NEW MATTER ☐

| Name of Client | _Bruena, Leslie_ | | |
|---|---|---|---|
| File Name | _Harmony Investments, L.P._ | | |
| Cross Reference | File Name | | File No. |
| Attorney | Originating _RLB_   Primary _____ | | Secondary _____ |
| Category | Wills and Trusts ☐<br>LLC/FLP/LLP ☑<br>Corporate ☐<br>Probate/Trust Admin ☐<br>Will/Trust Contest ☐ | Real Estate ☐<br>Contract ☐<br>Securities ☐<br>Civil Litigation ☐ | Guardianship ☐<br>Medicaid ☐<br>Family ☐<br>General ☐ |
| Billing | Itemized Flat Fee:<br>_LP_  /$ _1,500_<br>_costs_  /$ _230_<br> /$<br> /$<br>TOTAL:  $ _1,730_ | | Hourly:<br>RLB _____<br>KB _____<br>PVA _____<br>TMR _____<br>ETN _____ |
| Payments | Amount Paid $ _0_<br>Balance Due $ _1,730_ | | Deposit to:<br>General Account ☐<br>Trust Account ☐ |

## INSTRUCTIONS, NOTES, CRITICAL DATES & ADVERSE PARTIES FOR LITIGATION:

_____

_____

_____

_____

## CHECKLIST

☐ Client Information Form Completed & Attached
☐ (or) Information Verified for Existing Client
☐ Fee Agreement Signed by Client and Attached
☐ Retainer Collected
☐ Appointment Made for Signing Documents
☐ Thank You card sent to Referral Source

DURHAM
JONES &
PINEGAR

FAMILY LIMITED PARTNERSHIP INFORMATION SHEET     DATE _8-23-10_

NAME OF CLIENT: _Leslie Bruno_

NAME OF LP:   1. _Harmony Investments, LP_
(TOP THREE CHOICES
FOR NAMES)     2. _____

              3. _____

(NAME OF LIMITED PARTNERSHIP NRS 88.320(1)(a) MUST CONTAIN THE WORDS "LIMITED PARTNERSHIP" WITHOUT ABBREVIATION)

**STREET ADDRESS OF RECORDS IN NEVADA OF LP:** (NRS 88.330(1)(a) REQUIRES THE RECORDS DESCRIBED IN NRS 88.335(1) BE KEPT AT AN OFFICE IN NEVADA FOR INSPECTION BY ANY PARTNER)

_DSP_

**MAILING ADDRESS: (If Clients do not want documents sent to above LP address)**

_____

**TELEPHONE NUMBER OF LP:** (FOR OUR RECORDS ONLY) _____

**GENERAL PARTNERS**

| NAMES | BUSINESS ADDRESSES | SSN | %: |
|-------|-------------------|-----|-----|
| _Lynn Bonlie_ | _PO Box 60692_ | ✓ | |
| _L. Bonlie_ | _LV, NV 89160_ | | |

(THE NAME AND BUSINESS ADDRESS OF EACH GENERAL PARTNER IS REQUIRED PER NRS 88.350(1)(c). THE SSN FOR AT LEAST ONE GENERAL PARTNER IS REQUIRED ON SS-4 TO OBTAIN AN EIN. IF A CORPORATION IS THE GENERAL PARTNER, THE SS-4 OF AN OFFICER IS REQUIRED, NOT THE EIN OF THE CORPORATION.)

**LIMITED PARTNERS**

| NAMES | SSN | %: |
|-------|-----|-----|
| _MPT_ | | |

(INFORMATION OF LIMITED PARTNERS IS NOT OF PUBLIC RECORD)

**RESIDENT AGENT AND ADDRESS:** (MUST BE PHYSICAL ADDRESS PER NRS 88.330(1)(a) - NOT A P.O. BOX) _DSP_

EXPEDITE: YES _✓_ NO _____     EIN: YES _✓_ NO _____

BUSINESS LICENSE: YES _____ NO _✓_

ASSETS TO BE TRANSFERRED: _investment_

F:\FORMS.GENERAL.CLIENT\ESTATE\Info Questionnaires\FLP INFO.doc

# FILE OPENING MEMORANDUM

DATE: _August 23, 2010_                        NEW CLIENT ☐

FILE NUMBER: _4_                               NEW MATTER ☑

| Name of Client | *Bruno, Leslie* | | |
|---|---|---|---|
| File Name | *Wezi Holdings, LLC* | | |
| Cross Reference | File Name | | File No. |
| Attorney | Originating _RLB_  Primary | | Secondary |
| Category | Wills and Trusts ☐<br>LLC/FLP/LLP ☑<br>Corporate ☐<br>Probate/Trust Admin ☐<br>Will/Trust Contest ☐ | Real Estate ☐<br>Contract ☐<br>Securities ☐<br>Civil Litigation ☐ | Guardianship ☐<br>Medicaid ☐<br>Family ☐<br>General ☐ |
| Billing | Itemized Flat Fee:<br>_LLC_  !$ _1,500_<br>_costs_  !$ _290_<br>_____ !$ _____<br>_____ !$ _____<br>TOTAL:   $ _1,790_ | | Hourly:<br>RLB _____<br>KB _____<br>PVA _____<br>TMR _____<br>ETN _____ |
| Payments | Amount Paid $ _0_<br>Balance Due $ _1,790_ | | Deposit to:<br>General Account ☐<br>Trust Account ☐ |

**INSTRUCTIONS, NOTES, CRITICAL DATES & ADVERSE PARTIES FOR LITIGATION:**

_____

_____

_____

CHECKLIST
- ☐ Client Information Form Completed & Attached
- ☐ (or) Information Verified for Existing Client
- ☐ Fee Agreement Signed by Client and Attached
- ☐ Retainer Collected
- ☐ Appointment Made for Signing Documents
- ☐ Thank You card sent to Referral Source

DURHAM
JONES &
PINEGAR

## LIMITED-LIABILITY COMPANY ORGANIZATIONAL INFORMATION

DATE: _8-23-10_

SERIES:   Yes ☑   No ☐
HOW MANY: _2_

NAME OF CLIENT: _Leslie Bruno_

NAME OF LLC:   1. _Wezi Holdings, LLC_
(TOP THREE CHOICES
FOR NAMES)        2. _____

3. _____

ADDRESS AND TELEPHONE NUMBER OF LLC: (Not in articles) _____

MAILING ADDRESS: (If Clients do not want documents sent to above address)

PURPOSE OF COMPANY: _RE_

MANAGERS:                              _x She'll get me_

NAME _( Leslie Bruno )_   ADDRESS (P.O. Box permitted -   SSN
                           residence or business)

_Lynn Bonlie_   _L. Bonlie_   _P.O. Box 60692_   _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_
_(middle) (maiden)_                    _LV, NV 89160_

MEMBERS       MEMBERSHIP %        CAPITAL CONTRIBUTION
_NART_        _100%_              _$1,000_

RESIDENT AGENT AND STREET ADDRESS: _____
_DJP_

ORGANIZER AND ADDRESS: (P.O. Box permitted - residence or business)

_Lynn_

EXPEDITE  YES _✓_  NO _____   BUSINESS LICENSE: YES _____  NO _✓_

ASSETS TO BE TRANSFERRED: _RE_

f:\forms.general.client\estate\info questionnaires\llc - info.doc

# EXHIBIT 7

**Declaration of Trust of Trust #2 and First
Amendment to Trust #2**

# EXHIBIT 7

# DECLARATION OF TRUST

## OF THE

████████████████

      LESLIE BONLIE-BRUNO, a resident of Clark County, State of Nevada, hereafter referred to as "Trustor" and as "Trustee," hereby executes this declaration of trust on this 7th day of October, 2010.

    **1.**     **TRANSFER IN TRUST.** Trustor hereby creates this trust and holds as Trustee ten dollars and the property described on the attached Schedule A. Trustor, or any other person, may make additional contributions of cash or property to this trust.

    **2.**     **NAME AND BENEFICIARIES OF THE TRUST.**

        (a)    <u>Name</u>. This trust may be referred to as the ████ TRUST."

        (b)    <u>Family Relationships</u>. The Trustor is not married. Trustor has one (1) child, whose name is:

████████████████

        This child and his descendants shall be designated respectively as the "child" or "descendants" of the Trustor.

        (c)    <u>Beneficiaries</u>. This trust shall be held for the benefit of LESLIE BONLIE-BRUNO throughout her life, and for the benefit of the beneficiaries named or described herein according to the provisions of this trust.

    **3.**     **BENEFITS AND POWERS DURING LIFE OF TRUSTOR.** During the life of Trustor, Trustee shall administer the trust as follows:

        (a)    <u>Right to Receive Principal and Income</u>. Trustee shall distribute to Trustor such part or all of the income or principal as Trustor directs.

        (b)    <u>Revocability</u>. At any time, by a writing delivered to Trustee, the Trustor may alter, amend or revoke this trust in whole or in part. Upon a revocation of the trust, Trustee shall distribute all property to Trustor.

1



DURHAM
JONES &
PINEGAR

LB

4.    INCAPACITY OF TRUSTOR.

(a)    Distribution During Incompetency.  During any incompetency of Trustor, Trustee shall have discretion to distribute to or for the benefit of the Trustor such part or all of income and principal as Trustee determines is reasonably necessary or appropriate for the Trustor's health, support and maintenance, or for the health, education, support and maintenance of any person dependent upon Trustor.

(b)    Determination of Incompetency.  Trustor shall be presumed to be competent unless she is determined to be incompetent by a physician selected by Trustor and evidenced by a writing signed by Trustor specifically referring to this provision.

If Trustor does not select a physician under this section prior to her alleged incompetency, she shall be presumed to be competent unless she is determined to be incompetent by a physician selected by the successor Trustee. The physician shall be a reputable physician in the Trustor's community.

Upon a determination that Trustor is incompetent, she shall be presumed to be incompetent for all purposes under this trust until such time, if any, that she is determined to be competent by a physician.  The same physician who determined that Trustor was incompetent shall be consulted first if such physician is available.

5.    PAYMENT OF DEBTS, EXPENSES AND TAXES FOLLOWING THE DEATH OF TRUSTOR.

(a)    Debts and Expenses.  Following the Trustor's death, Trustee may, in Trustee's discretion, use trust properties to discharge part or all of Trustor's due but unpaid debts, expenses of such Trustor's last illness, burial and the administration of Trustor's estate.  Trustee shall consult with the Personal Representative of Trustor's estate in determining the source from which such debts and expenses shall be paid, using assets of Trustor's estate or properties of the trust, or both, to the extent appropriate.

(b)    Payment of Transfer Taxes.  From cash and properties controlled by the Trustee and in cooperation with the Personal Representative of Trustor's estate, the Trustee shall pay all estate, inheritance and other transfer taxes arising at or because of Trustor's death, together with interest and penalties thereon, if any.  Any transfer taxes shall be borne by each beneficiary in proportion to the value of property received.

2

DURHAM
JONES &
PINEGAR

**6.    PERSONAL AND HOUSEHOLD EFFECTS.**  Upon Trustor's death, the successor Trustee shall distribute the deceased Trustor's personal and household effects, including jewelry, clothing, household furnishings, books, works of art and any other property indicated in the personal property list referred to in Section 4 of Trustor's will.  All property not disposed of by such list shall be distributed outright to Trustor's living child.

**7.    DISTRIBUTION OF PROPERTIES AT TRUSTOR'S DEATH.**  After the death of the Trustor, the successor Trustee shall pay all debts due and owing, expenses and taxes and shall distribute the deceased Trustor's personal effects as provided in Sections 5 and 6.

Trustee shall divide all remaining property into two (2) portions to take maximum advantage of any remaining unused generation-skipping transfer tax exemption available to Trustor's estate.

The Trustee shall establish two (2) separate trusts from the remaining properties so that each has a generation-skipping inclusion ratio of either zero (the "Exempt Trust") or one (the "Nonexempt Trust").  The Trustee shall accomplish this by allocating to the Nonexempt Trust the maximum portion of the property that is necessary to establish that trust with an inclusion ration of one, while leaving the Exempt Trust with an inclusion ratio of zero.

Trustee shall hold all remaining properties in the Exemption Trust and in the Non-exempt Trust for the benefit of ▓▓▓▓▓▓▓▓▓▓▓▓ throughout his life under the following provisions:

(a)    <u>Irrevocable Trust</u>.  This trust shall be irrevocable.  It cannot be altered, amended or revoked by a beneficiary.

(b)    <u>Trustee</u>.  The Trustee of this Trust shall be the successor Trustee named or described in Section 10 of this trust agreement.

(c)    <u>Income Benefits</u>.  Trustee shall have discretion to retain or to distribute to or for the benefit of the beneficiary, such part or all of the remaining net income of the trust in such amounts, manner, and times as Trustee deems appropriate and to permit possession and use of tangible trust assets by the beneficiary as Trustee deems appropriate.

(d)    <u>Principal Benefits</u>.  Trustee shall have discretion to retain or distribute to or for the benefit of the beneficiary, such part or all of the remaining principal as Trustee determines to be necessary to supply funds for the health, education, support and maintenance of the beneficiary in the standard of living to which the beneficiary is accustomed at the death of the Trustor.

3

DURHAM
JONES &
PINEGAR



For the purposes of this subsection (d), "education" shall include: tuition, fees, books and the reasonable living expenses of a beneficiary while he or she is attending school on a full-time basis.

 (e) <u>No Provisions for Relatives</u>.  No relatives, including, but not limited to any children or descendants of any relatives shall not have access to any properties or businesses of Trustor.

If ███████████████ is diverting any funds to his father's family, Trustee shall not make any distributions to ██████████████ until Trustee determines that no future funds will be so diverted.

 (e) <u>Distribution</u>.  The trust for ███████████ shall continue throughout his life.  Upon the death of ██████████████ Trustee shall divide the remaining assets equally among his descendants, if any by right of representation.

If ████████████ is not survived by any descendants, the remaining trust assets shall be distributed as follows:

CHRISTIAN CHILDREN'S FUND

MAKE A WISH FOUNDATION

ST. JUDE'S HOSPITAL
Memphis, Tennessee

CANDLELIGHTERS OF CLARK
COUNTY, Las Vegas, Nevada



 (f) <u>Trustee's Discretion to Delay Distribution</u>.  Notwithstanding the distribution provisions contained herein, the following powers and directions are given to the Trustee:

 (1) If the Trustee for any reason described below, in his or her sole discretion determines that it would not be in the best interest of a beneficiary that a distribution take place, the distribution shall be totally or partially postponed until the reason for the postponement has been eliminated.

 (2) The causes of such delay in the distribution shall be:

 (A) The current involvement of the beneficiary in a divorce proceeding;

4





(B)     The current involvement of the beneficiary in a bankruptcy or other insolvency proceeding;

(C)     The existence of a large judgment or claim against the beneficiary;

(D)     The Trustee believes the beneficiary is involved in a harmful or unlawful chemical or drug abuse;

(E)     The conviction of the beneficiary of a felony involving drugs or narcotics, unless a five-year period has followed said conviction;

(F)     The existence of any circumstance that would deprive the beneficiary of the substantial freedom to use the distribution according to his own desires;

(G)     The substantial immaturity of the beneficiary resulting in his or her failure to recognize the value of money;

(H)     The judicially declared incompetency of the beneficiary; or

(I)     If a beneficiary is not residing in the United States of America, the Trustee may decline to transmit to him any part or all of the income and shall not be required to transmit to him any of the principal if, in the Trustee's sole judgment, the political and/or economic conditions of such place of residence is such that it is likely the money would not reach him, or upon reaching him, would be unduly taxed, seized, confiscated, appropriated, or in any other way taken from him in such a manner as to prevent his use and enjoyment of the same.

(3)     If said causes for delayed distribution are never removed, the trust share of that beneficiary shall continue until his or her death and shall be distributed as provided in this trust instrument.

(4)     The Trustee shall not be responsible unless he has knowledge of the happening of any event set forth above.

**8.     POWERS OF TRUSTEE.** During Trustor's life and after Trustor's death, Trustee, in the administration of all trusts created by this trust agreement, shall, except as otherwise limited herein, have all powers conferred upon trustees by law, including, but not by way of limitation, those powers enumerated in Nevada Revised

5



DURHAM
JONES &
PINEGAR

Statutes Sections 163.265 through 163.410.  In addition, the Trustee, acting reasonably and for the benefit of the trust beneficiaries, shall have the following specific powers and shall be subject to the following limitations:

      (a)    The Trustee shall have power to retain indefinitely assets received by the Trustee from Trustor during life or as part of, or from, Trustor's estate, as long as in the Trustee's judgment it is advisable to do so.  However, this power shall not give the Trustee the right to withhold any required distributions to any beneficiary of this trust.

      (b)    The Trustee shall have power to carry on in the same form, to continue to hold indefinitely and to expand any trade, business or other enterprise, whether or not incorporated, which was carried on by Trustor in Trustor's lifetime, as long as in the Trustee's judgment it is advisable to do so.

      (c)    The Trustee shall have the power to vote, in person or by proxy, any shares of stock, and to participate in or consent to any reorganization, dissolution, liquidation, merger, or other action affecting any such shares of stock of any corporation which has issued such shares of stock.  The Trustee may also participate in the management of any closely-held corporation, and may serve as an officer or director.  The Trustee may similarly hold and vote the membership interests or partnership interests of any limited-liability company or partnership held in trust.

      (d)    The Trustee shall have full power to deal with real estate, including, but not limited to, the ability to purchase, sell, lease, rent, exchange, mortgage, lien, encumber, partition, terminate a joint tenancy, or otherwise create, transfer or dispose of any other interest in real property.

      (e)    The Trustee shall have power to execute and deliver full or partial releases, by deed or otherwise, with respect to any conditional sale contract, mortgage, deed of trust, or security agreement, on real or personal property sold or held as security by Trustor or by the Trustee, in exchange for full or part cash payment of sums remaining due, or for the purchaser's or debtor's note for the sum remaining due secured by security which in the fiduciary's judgment is adequate.

      (f)    The Trustee may borrow money for, or lend money at a reasonable rate of interest to, any trust created herein, to be secured by the assets of the trust as against the beneficiaries, whenever in the fiduciary's judgment such a loan would protect such trust or would otherwise be in the best interests of the beneficiaries thereof.  The Trustee may open and maintain safety deposit boxes in the name of the trust.

6





(g)     The Trustee may invest and reinvest funds and other assets in such properties as persons of prudence, discretion and intelligence purchase for their own accounts, having regard not to speculation (except for original Trustees), but to the permanent disposition of their funds and considering the probable income as well as the probable safety of their capital, including, but not by way of limitation, stocks, bonds, securities, common trust funds, shares, mutual funds and obligations of the Trustee and shares and obligations of any affiliate, whether or not of the character otherwise permitted by law for the investment of funds by a trustee.

(h)     In the event all conditions precedent to final distribution of any trust created herein have been satisfied prior to completion of administration of Trustor's estate, the Trustee may distribute all of the assets, which would otherwise have been distributed through such trust, directly to the remainder beneficiaries without funding the trust.

(i)     Only during the life of Trustor and only with Trustor's specific consent, the Trustee shall be authorized to buy, sell and margin, and for such other purposes may open and maintain margin, option and commodities accounts with brokers, and may pledge any securities held or purchased by them with such brokers as security for loans and advances made by the Trustee.

(j)     The Trustee shall have full power and discretion to determine what is principal or income of a trust and apportion and allocate receipts and expenses between these accounts.  The Trustee shall also have discretion in making distribution of the corpus of any trust estate for which such Trustee is responsible, to allocate assets, in cash or in kind, among the distributees, based upon values on the date or dates of distribution, except to the extent that any such allocation may conflict with other specific provisions or directions contained in this declaration of trust.  In making such allocations, the Trustee is specifically authorized to take into account the basis for gain or loss which each asset will carry in the hands of the distributee and the circumstances of the distributee with respect to the tax consequences of holding and disposing of the asset to the extent such circumstances are known to, or anticipated by, the Trustee.

(k)     The Trustee may make payments hereunder directly to any beneficiary under disability, to the guardian of his or her person or estate, to any other persons deemed suitable by Trustee, or by direct payment of such beneficiary's expenses.

(l)     The Trustee may in his discretion, after giving thirty (30) days' written notice to all beneficiaries of a trust, terminate any trust created by this agreement when the assets of the trust are of such a value as to make

7

DURHAM
JONES &
PINEGAR



administration of the trust impractical or imprudent for any reason, including the cost of administering the trust, filing tax returns, etc. The Trustee shall have the sole discretion to determine when a trust should be terminated.

(m)    When more than one trust is created after the death of Trustor, Trustee, in his sole discretion, may co-mingle for investment purposes only, the funds of one trust with the funds of one or more other trusts, provided that accurate records are kept on the property and earnings of each trust.

(n)    For as long as Trustor lives, Trustee shall comply with all written directions made by Trustor with respect to the retention, sale, exchange or other acquisition, disposition, investment or reinvestment of any property of Trustor held by Trustee. Trustee shall be immune from all liability by reason of complying with such written directions of Trustor.

(o)    Until the Trustee receives actual notice of any birth, marriage, death or other event upon which right to payment from this trust may depend, the Trustee shall incur no liability to persons who may have been affected by such event for disbursements made in good faith.

(p)    The enumeration of certain powers of the Trustee shall not limit his or her general powers, subject always to the discharge of his or her fiduciary obligations, and being vested with and having all the rights, powers, and privileges which an absolute owner of the same property would have.

(q)    The Trustee shall have the power to deal with any governmental agency. To make applications for, receive and administer any of the following benefits, if applicable: Social Security, Medicare, Medicaid, Supplemental Security Income, In-Home Support Services, and any other government resources and community support services available to the elderly or disabled.

(r)    The Trustee is authorized to employ attorneys, accountants, investment advisors, specialists and such other agents as he or she shall deem necessary or desirable. The Trustee shall have the authority to appoint an investment manager or managers to manage all or any part of the assets of the trust, and to delegate to said manager investment discretion. Such appointment shall include the power to acquire and dispose of such assets. The Trustee may charge the compensation of such attorneys, accountants, investment advisors, investment managers, specialists and other agents and any other expenses against the trust.

(s)    The Trustee is authorized to plan and accomplish asset preservation in the event Trustor needs long-term health or nursing care. Such

8





planning shall include, but is not necessarily limited to, the authority to: (1) make home improvements and additions to Trustor's residence; (2) pay off partly, or in full, the encumbrance, if any, on Trustor's residence; (3) purchase a new residence or more appropriate residence; (4) arrange for a reverse mortgage on Trustor's residence; (5) make gifts of assets for Medicaid estate planning purposes when, in the discretion of Trustor's Agent, they are necessary to preserve a portion of Trustor's estate, so long as these gifts shall not materially alter the ultimate disposition of Trustor's estate under the terms of any existing Will or revocable living trust, if Trustor has one, and so long as Trustee shall ensure Trustor's care is provided for during any disqualification period; and, (6) to do any and all acts now or hereafter authorized by law to accomplish such asset preservation provided that the care Trustor receives is appropriate.

## 9.   ADMINISTRATIVE PROVISIONS.

(a)   Spendthrift Provision. No beneficiary (except for Trustor) under this trust agreement or under any trust created by this trust agreement shall have power to pledge, assign, mortgage, sell or in any manner transfer or hypothecate any interest which such beneficiary may have or may expect to have in any income or principal; nor shall any beneficiary (other than Trustor) have any power in any manner to anticipate, charge or encumber his or her interest, whether in income or in principal; nor shall such interest of any beneficiary be liable or subject in any manner while in the possession of the Trustee for the debts, contracts, liabilities, engagements, obligations or torts of such beneficiary, in favor of any person, including creditors, spouses and ex-spouses.

(b)   Severability. If any portion of this trust shall be determined to be unenforceable, the remaining portions shall, nevertheless, be carried into effect to the extent that Trustor's overall intentions as expressed herein can be accomplished.

(c)   Applicable Law. All trusts created under this instrument shall be interpreted under and governed by the laws of the State of Nevada.

(d)   No Contest Provision. Trustor has specifically and intentionally provided for the disposition of his or her properties only to the beneficiaries named or described herein in the amounts set forth herein. Any beneficiary not named or described in this agreement has been specifically disinherited. If any beneficiary contests the distribution of property under this trust, such beneficiary shall, to the extent not prohibited by public policy or other rule of law, receive no benefits under this trust. All benefits otherwise passing to such beneficiary shall pass as though the beneficiary has predeceased.

9

DURHAM
JONES &
PINEGAR

(e)     Thirty Day Survivorship.  If any beneficiary does not survive the death of Trustor by at least thirty (30) days, he or she will be deemed to have predeceased Trustor, and all benefits or property otherwise passing to such beneficiary shall pass as though the beneficiary did not survive Trustor.

(f)     Disclaimer of Benefits.  To the extent any benefit created hereunder is effectively disclaimed (under the provisions of Internal Revenue Code Section 2518, or otherwise), distribution shall be made as though the beneficiary had predeceased.

(g)     Perpetuities Savings Clause.  Notwithstanding any other provision in this document to the contrary, no trust created herein shall continue longer than the longest permissible time allowed by law for the vesting of property interests, as provided in NRS 111.103 et seq., or other applicable state law.  At such time, the trust will terminate and all property shall be distributed to the trust beneficiaries.

(h)     Number, Gender, Definitions.  Wherever used herein, the terms "child," "children," and "descendants" shall include an adopted child, adopted children and their descendants, as well as a natural child, natural children and their descendants, but shall exclude step-children (unless specifically named as beneficiaries).  Where applicable, the masculine includes the feminine, and vice versa.

**10.    SUCCESSOR TRUSTEE.**  If LESLIE BONLIE-BRUNO ceases to serve as Trustee, ████████████████ and ████████████████ shall serve as successor Trustee in her place.  If any of ████████████████ cease to serve as Trustee, ████████████████ shall serve as successor Investment Trustee with the survivors of them.  If more than two Trustees are serving at any one time, all actions of Trustees must be by majority vote.

(a)     No Named Successor Trustee.  If any trust is without a Trustee and no provision has been made hereunder for a successor Trustee, a corporate Trustee authorized to act as such under the laws of any state shall be appointed by a court of competent jurisdiction upon the application of any interested party.

(b)     Resignation of Trustee.  Any Trustee may resign at any time after giving all current income beneficiaries of the trust at least thirty (30) days' written notice.

(c)     Removal of Corporate Trustee, etc.  A majority in number of the adult beneficiaries who are then receiving or eligible to receive income of a trust hereunder, shall have the power to remove any corporate Trustee and to

10

DURHAM
JONES &
PINEGAR

appoint another corporate Trustee whether such prior corporate Trustee has been removed or has resigned.  Such removal and appointment shall be made upon written notice signed by the persons entitled to exercise such power.

(d)    Vesting of Title to Property.  Title to all trust property shall automatically vest in the successor Trustee in his or her capacity as Trustee upon such successor's acceptance of appointment without further action or court confirmation.  Each successor Trustee shall have the same powers and authority, and shall be subject to the same duties and restrictions, as the original Trustee.

(e)    No Responsibility for Prior Acts.  No successor Trustee shall have any responsibility for the acts or omissions of any prior Trustee, or have any duty to audit or investigate the accounts or administration of any such Trustee. Unless requested to do so in writing by a majority in number of the adult benefi-ciaries who are then receiving or eligible to receive income of a trust, such Trustee shall be under no duty to obtain redress for a breach of trust by any prior Trustee.

(f)    Compensation of Trustee.  All Trustees shall be entitled to receive ███████████████████ compensation for services rendered in such capacity.  All Trustees shall be entitled to reimbursement for all reasonable and necessary expenses incurred as a Trustee.

(g)    Bond.  No Trustee need post bond.

**IN WITNESS WHEREOF,** this declaration of trust has been executed on the day and year above written.

*Leslie Bonlie-Bruno*
LESLIE BONLIE-BRUNO, Trustor

*Leslie Bonlie-Bruno*
LESLIE BONLIE-BRUNO, Trustee

11

DURHAM
JONES &
PINEGAR

STATE OF NEVADA )
) ss
COUNTY OF CLARK )

On this 7th day of _____October_____, 2010, before me, a notary public, personally appeared LESLIE BONLIE-BRUNO, personally known to me (or proved to me on the basis of satisfactory evidence), to be the person whose name is subscribed to the above instrument, who acknowledged that she executed the foregoing declaration of trust as Trustor and Trustee.

_____
NOTARY PUBLIC

SANDY YAMASHIRO
Notary Public State of Nevada
No. 98-49251-T
My appt. exp. Aug. 8, 2014

12

DURHAM
JONES &
PINEGAR

# CERTIFICATE OF REVOCABLE LIVING TRUST

The undersigned, LESLIE BONLIE-BRUNO, a resident of Clark County, Nevada, has executed that certain document entitled, the ████TRUST," on the 7th day of _October_, 2010, which provides in pertinent parts as follows:

1.    **TRUSTOR.** The Trustor of the trust is LESLIE BONLIE-BRUNO.

2.    **TRUSTEE.** The Trustee of the trust is LESLIE BONLIE-BRUNO.

3.    **SUCCESSOR TRUSTEE.** If the original Trustee ceases to act as Trustee, ████████████shall serve as successor Trustee. If any of ████cease to act as Trustee, ████████ shall serve as successor Trustee with the survivors of them. Any Trustee may resign at any time. No Trustee need post bond. If more than two Trustees are serving at any one time, all actions of Trustees must be by majority vote.

4.    **VESTING OF PROPERTIES.** Title to properties held in the trust shall be vested as follows:

> LESLIE BONLIE-BRUNO as Trustee of the ████TRUST dated October 7, 2010

5.    **IDENTIFICATION NUMBER OF TRUST.** The tax identification number of the trust is the social security number of LESLIE BONLIE-BRUNO.

6.    **POWER TO AMEND OR REVOKE.** During the life of the Trustor, the trust may be revoked in whole or in part by an instrument in writing signed by the Trustor and delivered to the Trustee.

7.    **POWERS OF TRUSTEE.** The Trustee shall have all powers set forth in NRS Sections 163.265 through 163.410 and all powers set forth below:

> (a)    The Trustee shall have power to retain indefinitely assets received by the Trustee from Trustor during life or as part of, or from, Trustor's estate, as long as in the Trustee's judgment it is advisable to do so. However, this power shall not give the Trustee the right to withhold any required distributions to any beneficiary of this trust.

1

DURHAM
JONES &
PINEGAR

(b)     The Trustee shall have power to carry on in the same form, to continue to hold indefinitely and to expand any trade, business or other enterprise, whether or not incorporated, which was carried on by Trustor in Trustor's lifetime, as long as in the Trustee's judgment it is advisable to do so.

(c)     The Trustee shall have the power to vote, in person or by proxy, any shares of stock, and to participate in or consent to any reorganization, dissolution, liquidation, merger, or other action affecting any such shares of stock of any corporation which has issued such shares of stock.  The Trustee may also participate in the management of any closely-held corporation, and may serve as an officer or director.  The Trustee may similarly hold and vote the membership interests or partnership interests of any limited-liability company or partnership held in trust.

(d)     The Trustee shall have power to execute and deliver full or partial releases, by deed or otherwise, with respect to any conditional sale contract, mortgage, deed of trust, or security agreement, on real or personal property sold or held as security by Trustor or by the Trustee, in exchange for full or part cash payment of sums remaining due, or for the purchaser's or debtor's note for the sum remaining due secured by security which in the fiduciary's judgment is adequate.

(e)     The Trustee may borrow money for, or lend money at a reasonable rate of interest to, any trust created herein, to be secured by the assets of the trust as against the beneficiaries, whenever in the fiduciary's judgment such a loan would protect such trust or would otherwise be in the best interests of the beneficiaries thereof.  The Trustee may open and maintain safety deposit boxes in the name of the trust.

(f)     The Trustee may invest and reinvest funds and other assets in such properties as persons of prudence, discretion and intelligence purchase for their own accounts, having regard not to speculation (except for original Trustee), but to the permanent disposition of their funds and considering the probable income as well as the probable safety of their capital, including, but not by way of limitation, stocks, bonds, securities, common trust funds, shares, mutual funds and obligations of the Trustee and shares and obligations of any affiliate, whether or not of the character otherwise permitted by law for the investment of funds of a Trustee.

(g)     In the event all conditions precedent to final distribution of any trust created herein have been satisfied prior to completion of administration of Trustor's estate, the Trustee may distribute all of the assets, which would otherwise have been distributed through such trust, directly to the remainder beneficiaries without funding the trust.

2

DURHAM

JONES &

FINBOAR



(h)     During the life of Trustor, with Trustor's consent, the Trustee shall be authorized to buy, sell and margin, and for such other purposes may open and maintain margin, option and commodities accounts with brokers, and may pledge any securities held or purchased by them with such brokers as security for loans and advances made by the Trustee.

(i)     The Trustee shall have full power and discretion to determine what is principal or income of a trust and apportion and allocate receipts and expenses between these accounts.  The Trustee shall also have discretion in making distribution of the corpus of any trust estate for which such Trustee is responsible, to allocate assets, in cash or in kind, among the distributees, based upon values on the date or dates of distribution, except to the extent that any such allocation may conflict with other specific provisions or directions contained in this declaration of trust.  In making such allocations, the Trustee is specifically authorized to take into account the basis for gain or loss which each asset will carry in the hands of the distributee and the circumstances of the distributee with respect to the tax consequences of holding and disposing of the asset to the extent such circumstances are known to, or anticipated by, the Trustee.

(j)     The Trustee may make payments hereunder directly to any beneficiary under disability, to the guardian of his or her person or estate, to any other persons deemed suitable by Trustee, or by direct payment of such beneficiary's expenses.

(k)     The Trustee may employ agents, attorneys, brokers, and other employees, individual or corporate, and may pay them reasonable compensation.

(l)     The Trustee may in his discretion, after giving thirty (30) days' written notice to all beneficiaries of a trust, terminate any trust created by this agreement when the assets of the trust are of such a value as to make administration of the trust impractical or imprudent for any reason, including the cost of administering the trust, filing tax returns, etc.  The Trustee shall have the sole discretion to determine when a trust should be terminated.

(m)     When more than one trust is created after the death of Trustor, Trustee, in his sole discretion, may co-mingle for investment purposes only, the funds of one trust with the funds of one or more other trusts, provided that accurate records are kept on the property and earnings of each trust.

(n)     For as long as Trustor lives, Trustee shall comply with all written directions made by Trustor with respect to the retention, sale, exchange or other acquisition, disposition, investment or reinvestment of any property of

3

Trustor held by Trustee.  Trustee shall be immune from all liability by reason of complying with such written directions of Trustor.

(o)     Until the Trustee receives actual notice of any birth, marriage, death or other event upon which right to payment from this trust may depend, the Trustee shall incur no liability to persons who may have been affected by such event for disbursements made in good faith.

(p)     The enumeration of certain powers of the Trustee shall not limit his general powers, subject always to the discharge of his fiduciary obligations, and being vested with and having all the rights, powers, and privileges which an absolute owner of the same property would have.

(q)     The Trustee shall have the power to deal with any governmental agency.  To make applications for, receive and administer any of the following benefits, if applicable:  Social Security, Medicare, Medicaid, Supplemental Security Income, In-Home Support Services, and any other government resources and community support services available to the elderly or disabled.

(r)     The Trustee is authorized to employ attorneys, accountants, investment advisors, specialists and such other agents as he or she shall deem necessary or desirable.  The Trustee shall have the authority to appoint an investment manager or managers to manage all or any part of the assets of the trust, and to delegate to said manager investment discretion.  Such appointment shall include the power to acquire and dispose of such assets.  The Trustee may charge the compensation of such attorneys, accountants, investment advisors, investment managers, specialists and other agents and any other expenses against the trust.

(s)     The Trustee is authorized to plan and accomplish asset preservation in the event Trustor needs long-term health or nursing care.  Such planning shall include, but is not necessarily limited to, the authority to:  (1) make home improvements and additions to Trustor's residence; (2) pay off partly, or in full, the encumbrance, if any, on Trustor's residence; (3) purchase a new residence or more appropriate residence; (4) arrange for a reverse mortgage on Trustor's residence; (5) make gifts of assets for Medicaid estate planning purposes when, in the discretion of Trustor's Agent, they are necessary to preserve a portion of Trustor's estate, so long as these gifts shall not materially alter the ultimate disposition of Trustor's estate under the terms of any existing Will or revocable living trust, if Trustor has one, and so long as Trustee shall ensure Trustor's care is provided for during any disqualification period; and, (6) to do any and all acts now or hereafter authorized by law to accomplish such asset preservation provided that the care Trustor receives is appropriate.

4



DURHAM
JONES &
PINEGAR

8.    **CERTIFICATION.** Trustee hereby certifies that the trust is in full force and effect and has not been revoked or amended to make any representations contained in the certification incorrect.  The signature below is that of the currently acting Trustee.

DATED this 7th day of October, 2010.

_Leslie Bonlie-Bruno_
LESLIE BONLIE-BRUNO, Trustee


STATE OF NEVADA          )
                         ) ss
COUNTY OF CLARK          )

On this 7th day of October, 2010, before me, a notary public, personally appeared LESLIE BONLIE-BRUNO, personally known to me (or proved to me on the basis of satisfactory evidence), to be the person whose name is subscribed to the above instrument, who acknowledged that she executed the foregoing Certificate of Revocable Living Trust.

_Sandy M. Yamashiro_
NOTARY PUBLIC


APPROVED AS TO FORM:

_Robert L. Bolick_
ROBERT L. BOLICK, ESQ.
Attorney for Trustor

5

DURHAM
JONES &
PINEGAR

# DISPOSITION OF PERSONAL

## AND

## HOUSEHOLD EFFECTS OF

## LESLIE BONLIE-BRUNO

In accordance with Section 4 of my will dated the 7th day of October, 2010, and pursuant to Nevada Revised Statutes, Section 133.045, I give the following items of tangible personal property (other than money, evidence of indebtedness, documents of title, securities and property used in a trade or business) to the following individuals:

<u>INDIVIDUAL</u>                          <u>ITEMS</u>

DATED this _____ day of _____.

_____
LESLIE BONLIE-BRUNO

5

DURHAM
JONES &
PINEGAR

## ASSIGNMENT OF PERSONAL PROPERTY

The Trustor hereby transfers the following assets to the Trustee as part of the trust estate of the ████ TRUST dated the 7th day of October, 2010:

All of Trustor's personal and household effects, including, but not limited to household furniture and furnishings, books, works of art, jewelry, silverware, the contents of any safety deposit boxes (and Trustor hereby grants the successor Trustee access to such boxes) and all remaining tangible personal property.

DATED this 7th day of October, 2010.

*Leslie Bonlie-Bruno*
LESLIE BONLIE-BRUNO, Trustor

DURHAM
JONES &
PINEGAR

# SCHEDULE A
## OF THE
<span>█████████</span> **TRUST**
**(Inventory of Trust Assets)**

The Trustor hereby transfers the following assets to the Trustee as part of the trust estate of the ████████ TRUST, dated the 7th day of October, 2010:

1.    All of the Trustor's right, title and interest in and to the following accounts, whether they be checking, savings, money market, certificates of deposit or other similar accounts:

| Institution | Address | Account Numbers |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

2.    All of the Trustor's right, title and interest in and to the following stocks and bonds, described as follows:

| Institution | Address | Account Numbers |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

1

DURHAM
JONES &
PINEGAR

3.    All of the Trustor's rights, title and interest to her following real property.  The description of said property is set forth below or a copy of each deed is attached.

| Address | City | State | County |
|---------|------|-------|--------|
|         |      |       |        |

Legal Description:

| Address | City | State | County |
|---------|------|-------|--------|
|         |      |       |        |

Legal Description:

| Address | City | State | County |
|---------|------|-------|--------|
|         |      |       |        |

Legal Description:

| Address | City | State | County |
|---------|------|-------|--------|
|         |      |       |        |

Legal Description:

2

DURHAM
JONES &
PINEGAR

4.      All of the Trustor's beneficial interest in and to the following described insurance policies and the Trustor hereby names this trust as the beneficiary under said policies:

| Company | Policy Number | Face Amount of Policy |
|---------|---------------|----------------------|
|         |               |                      |
|         |               |                      |
|         |               |                      |
|         |               |                      |

5.      All of the Trustor's beneficial interest in and to the following vehicles or boats:

| Make | Model | Year |
|------|-------|------|
|      |       |      |
|      |       |      |
|      |       |      |
|      |       |      |

6.      All of the Trustor's beneficial interest in and to the following partnership and limited partnership interests:

| Partnership | Address | Percent Interest (%) |
|-------------|---------|----------------------|
|             |         |                      |
|             |         |                      |
|             |         |                      |
|             |         |                      |

3

DURHAM
JONES &
PINEOAR

7.    All of Trustor's beneficial interest in and to the following limited-liability companies:

| LLC Name | Resident Agent | Percent Interest (%) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

8.    All of Trustor's interest in the following mortgages, trust deeds and notes receivable:

| Debtor's Name | Address | Description of Note |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

9.    All of Trustor's interest in the following miscellaneous property:

_____

_____

_____

DATED this _____ day of _____, 2010.

_____
LESLIE BONLIE-BRUNO, Trustor

4

DURHAM
JONES &
PINEGAR

# FIRST AMENDMENT TO THE

## TRUST

LESLIE BONLIE-BRUNO, as Trustor and Trustee, pursuant to the right reserved in Trustor under Subsection 3(b) of the "█████TRUST" dated October 7, 2010, hereby amends such trust as follows:

1.      Section 7, "DISTRIBUTION OF PROPERTIES AT TRUSTOR'S DEATH," is hereby deleted in its entirety and the following is substituted in lieu thereof:

**7.      DISTRIBUTION OF PROPERTIES AT TRUSTOR'S DEATH.** After the death of the Trustor, the successor Trustee shall pay all debts due and owing, expenses and taxes and shall distribute the deceased Trustor's personal effects as provided in Sections 5 and 6.

(a)      Specific Bequest.  Trustee shall hold the sum of █████ ████████████████████ in trust for the ████████ ████████████████ to be administered as follows:

(1)      <u>Trustee</u>.  The Trustee of this Trust shall be the successor Trustee named or described in Section 10 of this trust agreement.

(2)      <u>Custodians</u>.  The Custodians of the ███████ shall be the following persons in the order of priority listed:



1

DURHAM
JONES &
PINEGAR

33415v1

(3)     Benefits. Trustee shall distribute to the Custodians up to ███████ per month for the care and maintenance of ███████ In addition, Trustee shall pay all reasonable and necessary veterinary expenses or other expenses deemed reasonable and necessary in the sole discretion of Trustee.

(4)     Distribution of Remainder. Upon the death of the last to survive of Trustor's horses, all remaining funds shall be distributed as a part of the remainder under Subsection (b) below.

(b)     Remainder. Trustee shall divide all remaining property into two (2) portions to take maximum advantage of any remaining unused generation-skipping transfer tax exemption available to Trustor's estate.

The Trustee shall establish two (2) separate trusts from the remaining properties so that each has a generation-skipping inclusion ratio of either zero (the "Exempt Trust") or one (the "Nonexempt Trust"). The Trustee shall accomplish this by allocating to the Nonexempt Trust the maximum portion of the property that is necessary to establish that trust with an inclusion ration of one, while leaving the Exempt Trust with an inclusion ratio of zero.

Trustee shall hold all remaining properties in the Exemption Trust and in the Non-exempt Trust for the benefit of ███████ throughout his life under the following provisions:

(1)     Irrevocable Trust. This trust shall be irrevocable. It cannot be altered, amended or revoked by a beneficiary.

(2)     Trustee. The Trustee of this Trust shall be the successor Trustee named or described in Section 10 of this trust agreement.

(3)     Income Benefits. Trustee shall have discretion to retain or to distribute to or for the benefit of the beneficiary, such part or all of the remaining net income of the trust in such amounts, manner, and times as Trustee deems appropriate and to permit possession and use of tangible trust assets by the beneficiary as Trustee deems appropriate.

(4)     Principal Benefits. Trustee shall have discretion to retain or distribute to or for the benefit of the beneficiary, such part or all of the remaining principal as Trustee determines to be necessary to supply

2

DURHAM
JONES &
PINEGAR

33415v1

funds for the health, education, support and maintenance of the beneficiary in the standard of living to which the beneficiary is accustomed at the death of the Trustor.

For the purposes of this subsection (4), "education" shall include:  tuition, fees, books and the reasonable living expenses of a beneficiary while he or she is attending school on a full-time basis.

(5)     No Provisions for Relatives.  No relatives, including, but not limited to any children or descendants of any relatives, shall have access to any properties or businesses of Trustor.

If █████████████ is diverting any funds to his father's family, Trustee shall not make any distributions to ████████ ██████until Trustee determines that no future funds will be so diverted

(6)     Distribution.  The trust for █████ shall continue throughout his life.  Upon the death of █████████ █████████, Trustee shall divide the remaining assets equally among his descendants, if any, by right of representation.

If █████████████ is not survived by any descendants, the remaining trust assets shall be distributed as follows:

CHRISTIAN CHILDREN'S FUND

MAKE A WISH FOUNDATION

ST. JUDE'S HOSPITAL
Memphis, Tennessee

CANDLELIGHTERS OF CLARK
COUNTY, Las Vegas, Nevada



(7)     Trustee's Discretion to Delay Distribution.
Notwithstanding the distribution provisions contained herein, the following powers and directions are given to the Trustee:

(a)     If the Trustee for any reason described below, in his or her sole discretion determines that it would not be in the best interest of a beneficiary that a distribution take place, the distribution shall be totally or partially postponed until the reason for

3





the postponement has been eliminated.

(b)     The causes of such delay in the distribution shall be:

(i)     The current involvement of the beneficiary in a divorce proceeding;

(ii)     The current involvement of the beneficiary in a bankruptcy or other insolvency proceeding;

(iii)     The existence of a large judgment or claim against the beneficiary;

(iv)     The Trustee believes the beneficiary is involved in a harmful or unlawful chemical or drug abuse;

(v)     The conviction of the beneficiary of a felony involving drugs or narcotics, unless a five-year period has followed said conviction;

(vi)     The existence of any circumstance that would deprive the beneficiary of the substantial freedom to use the distribution according to his own desires;

(vii)     The substantial immaturity of the beneficiary resulting in his or her failure to recognize the value of money;

(viii)     The judicially declared incompetency of the beneficiary; or

(ix)     If a beneficiary is not residing in the United States of America, the Trustee may decline to transmit to him any part or all of the income and shall not be required to transmit to him any of the principal if, in the Trustee's sole judgment, the political and/or economic conditions of such place of residence is such that it is likely the money would not reach him, or upon reaching him, would be unduly taxed, seized, confiscated, appropriated, or in any other way taken from him in such a manner as to prevent his use and enjoyment of the same.

4

DURHAM
JONES &
PINEGAR

33415v1

(c)    If said causes for delayed distribution are never removed, the trust share of that beneficiary shall continue until his or her death and shall be distributed as provided in this trust instrument.

(d)    The Trustee shall not be responsible unless he has knowledge of the happening of any event set forth above.

2.    Trustor hereby ratifies and confirms the "█████ TRUST" as amended by this first amendment.

DATED this _30th_ day of _November_, 2010.

_Leslie Bonlie-Bruno_
LESLIE BONLIE-BRUNO

STATE OF NEVADA        )
                       ) ss
COUNTY OF CLARK        )

On this _30th_ day of _November_, 2010, before me, a notary public, personally appeared LESLIE BONLIE-BRUNO, personally known to me (or proved to me on the basis of satisfactory evidence), to be the person whose name is subscribed to the above instrument, who acknowledged that she executed the foregoing document.

_Dena Logan_
NOTARY PUBLIC

> DENA LOGAN
> Notary Public State of Nevada
> No. 92-0942-1
> My appt. exp. Sept. 1, 2013

5

> DURHAM
> JONES &
> PINEGAR

33415v1

presence of each other and at the request of the testator; that the testator at the time of the execution of the will appeared to them to be of full age and of sound mind and memory, and that they make this affidavit at the request of the testator.

_Donna Whitfield_

SUBSCRIBED and SWORN to before me this
_7th_ day of _October_____, 2010.

_Sandy M. Yamashiro_
NOTARY PUBLIC

SANDY YAMASHIRO
Notary Public State of Nevada
No. 98-49251-1
My appt. exp. Aug. 8, 2014

4

DURHAM
JONES &
PINEGAR

# EXHIBIT 8

**Chart of Leslie Bruno Entities**

# EXHIBIT 8





# EXHIBIT 9

**DJP Invoices**

# EXHIBIT 9

```
DURHAM
―――――――
J O N E S  &
―――――――
P I N E G A R
```

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

October 11, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

---

**Invoice Summary**

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 1 | Living Trust |
| Invoice No. | | 228647 |

For professional services rendered and costs advanced through September 30, 2010:

| | |
|---|---|
| Total Fees | $ 2,000.00 |
| Total Expenses | $ .00 |
| **Total of This Invoice** | **$ 2,000.00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

App 1 Page   096

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|----------------------------------|--------|
| 8/30/10 | RLB | Tax planning of properties, including title and form of ownership; preparation and execution of Living Trust, and Durable Powers of Attorney for assets and health care | 1,950.00 |
| 8/30/10 | RLB | Preparation and execution of Pour-Over Will and Living Will | 50.00 |
| | | TOTALS | $ 2,000.00 |

Total Fees:  $ 2,000.00

*2*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

October 11, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

---

**Remittance Advice**

*To insure proper credit to your account, please return this remittance with your payment.*

Client #:      27763       Leslie Bruno
Matter #:          1        Living Trust
Invoice No.                228647
Billing Attorney:      RLB

Current Invoice                    $ 2,000.00
Total Balance Due                  $ 2,000.00

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____       MasterCard _____       American Express _____       Discover _____
Account No. _____ Exp. Date: _____ / _____ Security Code: _____
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

*3*

App 1 Page  098

```
D U R H A M

J O N E S &

P I N E G A R
```

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

October 11, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV 89169

---

**Invoice Summary**

Client #:      27763          Leslie Bruno
Matter #:          2          ████████Asset Protection Trust
Invoice No.                   228648

For professional services rendered and costs advanced through September 30, 2010:

|                        |              |
| ---------------------- | ------------ |
| Total Fees             | $ 3,500.00   |
| Total Expenses         | $ .00        |
| Credits Applied        | $ -1,395.00  |
| **Total of This Invoice** | **$ 2,105.00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

```
 _____
|   D U R H A M     |
|   _____ |          DURHAM JONES & PINEGAR, P.C.
|                   |          10785 West Twain Avenue
|   J O N E S  &    |          Suite 200
|   _____ |          Las Vegas, Nevada 89135
|                   |          702.870.6060
|   P I N E G A R   |          702.870.6090 Fax
|_____|          www.djplaw.com
                               F.E.I. # 87-0399832
```

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|---------------------------------|--------|
| 8/23/10 | RLB | Preparation and execution of Nevada Asset Protection Trust | 3,500.00 |
|  |  | TOTALS | $ 3,500.00 |

|  | Total Fees: | $ 3,500.00 |
|--|-------------|-----------|

*2*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10765 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

October 11, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

### Remittance Advice
*To insure proper credit to your account, please return this remittance with your payment.*

Client #:       27763       Leslie Bruno
Matter #:            2       ██████ Asset Protection Trust
Invoice No.                  228648
Billing Attorney:     RLB

|  |  |
|---|---|
| Current Invoice | $ 3,500.00 |
| Credits Applied | $ -1,395.00 |
| **Total Balance Due** | **$ 2,105.00** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____       MasterCard _____       American Express _____       Discover _____
Account No. _____ Exp. Date: ___ / ___ Security Code: _____
Amount $ _____ Name on Account: _____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

*3*

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

November 8, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV 89169

**Invoice Summary**

Client #:     27763     Leslie Bruno
Matter #:         2     ███████ Asset Protection Trust
Invoice No.              232959

For professional services rendered and costs advanced through October 31, 2010:

| | |
|---|---|
| Total Fees | $ .00 |
| Total Expenses | $ 31.00 |
| **Total of This Invoice** | **$ 31.00** |
| Past Due Balance | $ 2,105.00 |
| **Total Balance Due** | **$ 2,136.00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

DURHAM
———————
JONES &
———————
PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399632

**Detail of Client Expenses**

| Date | Description | Amount |
|------|-------------|--------|
| 10/13/10 | Recording Fee, Clark County Recorder, ▆▆▆▆▆ - Bruno ▆▆▆▆ ▆▆▆▆ APT | 16.00 |
| 10/13/10 | Recording Fee, Clark County Recorder, Homestead ▆▆▆▆▆▆▆ Bruno ▆▆▆▆▆ APT | 15.00 |
| | Total Expenses: | $ 31.00 |

**Past Due Invoices**

UNPAID INVOICES AS OF THIS INVOICE DATE

| INVOICE# | DATE | AMOUNT | PAYMENTS | BALANCE |
|----------|------|--------|----------|---------|
| 228648 | 10/11/10 | 3,500.00 | 1,395.00 | 2,105.00 |
| | | Total Past Due Invoices: | | $ 2,105.00 |

*2*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

November 8, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

## Remittance Advice
*To insure proper credit to your account, please return this remittance with your payment.*

Client #:        27763        Leslie Bruno
Matter #:            2        ███████ Asset Protection Trust
Invoice No.              232959
Billing Attorney:      RLB

|  |  |
|---|---|
| Current Invoice | $ 31.00 |
| Past Due Invoices | $ 2,105.00 |
| **Total Balance Due** | **$ 2,136.00** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____        MasterCard _____        American Express _____        Discover _____
Account No. _____ Exp. Date: _____/_____ Security Code: _____
Amount $ _____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

*3*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

December 7, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

**Invoice Summary**

Client #:     27763     Leslie Bruno
Matter #:        2     ▇▇▇▇▇▇▇ Asset Protection Trust
Invoice No.          235523

For professional services rendered and costs advanced through November 30, 2010:

| | |
|---|---|
| Total Fees | $ .00 |
| Total Expenses | $ 70.00 |
| **Total of This Invoice** | **$ 70.00** |
| Past Due Balance | $ 2,136.00 |
| **Total Balance Due** | **$ 2,206.00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

```
 DURHAM

 JONES &

 PINEGAR
```

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0389832

**Detail of Client Expenses**

| Date | Description | Amount |
|------|-------------|--------|
| 11/01/10 | Professional services from Nevada Legal News,█████████ Bruno | 70.00 |

| | | |
|---|---|---|
| | Total Expenses: | $ 70.00 |

**Past Due Invoices**

UNPAID INVOICES AS OF THIS INVOICE DATE

| INVOICE# | DATE | AMOUNT | PAYMENTS | BALANCE |
|----------|------|--------|----------|---------|
| 228648 | 10/11/10 | 3,500.00 | 1,395.00 | 2,105.00 |
| 232959 | 11/08/10 | 31.00 | .00 | 31.00 |

| | | |
|---|---|---|
| | Total Past Due Invoices: | $ 2,136.00 |

*2*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM
———
JONES &
———
PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

December 7, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

## Remittance Advice
*To insure proper credit to your account, please return this remittance with your payment.*

Client #:     27763     Leslie Bruno
Matter #:         2     ███████ Asset Protection Trust
Invoice No.           235523
Billing Attorney:     RLB

| | |
|---|---|
| Current Invoice | $ 70.00 |
| Past Due Invoices | $ 2,136.00 |
| **Total Balance Due** | **$ 2,206.00** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____     MasterCard _____     American Express _____     Discover _____
Account No. _____ Exp. Date: ____ / ____ Security Code: ____
Amount $_____ Name on Account: _____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

*3*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

```
┌─────────────────────┐
│  D U R H A M        │        DURHAM JONES & PINEGAR, P.C.
│  ─────────────       │        10785 West Twain Avenue
│  J O N E S &        │        Suite 200
│  ─────────────       │        Las Vegas, Nevada 89135
│  P I N E G A R      │        702.870.6060
│                     │        702.870.6090 Fax
└─────────────────────┘        www.djplaw.com
                               F.E.I. # 87-0399832
```

September 8, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

---

**Invoice Summary**

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 3 | Harmony Investments, L.P. |
| Invoice No. | | 224091 |

For professional services rendered and costs advanced through August 31, 2010:

| | |
|---|---|
| Total Fees | $ 1,500.00 |
| Total Expenses | $ 325.00 |
| Credits Applied | $ -1,075.00 |
| **Total of This Invoice** | **$ 750.00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|----------------------------------|--------|
| 8/23/10 | RLB | Preparation and execution of Limited Partnership Agreement; preparation and filing of Certificate of Limited Partnership, Initial List of General Partners, Nevada Business License and Application for Employer Identification Number | 1,500.00 |
| | | TOTALS | $ 1,500.00 |

Total Fees:  $ 1,500.00

**Detail of Client Expenses**

| Date | Description | Amount |
|------|-------------|--------|
| 8/30/10 | Filing Fee ($75) & Expedite Fee ($125), Nevada Secretary of State - Bruno/Harmony Investments, L.P. | 200.00 |
| 9/07/10 | Initial List Filing Fee | 125.00 |

Total Expenses:  $ 325.00

*2*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

```
┌─────────────────────┐
│  D U R H A M        │      DURHAM JONES & PINEGAR, P.C.
│  -----------------  │      10785 West Twain Avenue
│  J O N E S &        │      Suite 200
│  -----------------  │      Las Vegas, Nevada 89135
│  P I N E G A R      │      702.870.6060
└─────────────────────┘      702.870.6090 Fax
                             www.djplaw.com
                             F.E.I. # 87-0399832
```

September 8, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV 89169

---

**Remittance Advice**
*To insure proper credit to your account, please return this remittance with your payment.*

Client #:       27763       Leslie Bruno
Matter #:           3       Harmony Investments, L.P.
Invoice No.             224091
Billing Attorney:     RLB

| | |
|---|---:|
| Current Invoice | $ 1,825.00 |
| Credits Applied | $ -1,075.00 |
| **Total Balance Due** | **$ 750.00** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____      MasterCard _____      American Express _____      Discover _____
Account No. _____ Exp. Date: ____/____ Security Code: _____
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

---

*3*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM
———
JONES &
———
PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

September 8, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

**Invoice Summary**

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 4 | Wezi Holdings, LLC |
| Invoice No. | | 224092 |

For professional services rendered and costs advanced through August 31, 2010:

| | |
|---|---|
| Total Fees | $ 2,236.00 |
| Total Expenses | $ 453.86 |
| Credits Applied | $ -1,075.00 |
| **Total of This Invoice** | **$ 1,614.86** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|--------------------------------|--------|
| 8/23/10 | RLB | Preparation and execution of Articles of Organization of Series Limited-Liability Company, Operating Agreement, Initial List, Nevada Business License Application, Minutes of Organizational Meeting of Members; Preparation and online filing of Form SS-4, Application for Employer Tax Identification Number; order company minute book and issue Ownership Certificates | 1,500.00 |
| 9/08/10 | RLB | Preparation, execution and recording of Nevada quitclaim deed for ███████████ | 184.00 |
| 9/08/10 | RLB | Preparation, execution and recording of Nevada quitclaim deed for ███████ | 184.00 |
| 9/08/10 | RLB | Preparation, execution and recording of Nevada quitclaim deed for ███████████ | 184.00 |
| 9/08/10 | RLB | Preparation, execution and recording of Nevada quitclaim deed for ███████ | 184.00 |
| | | TOTALS | $ 2,236.00 |

Total Fees:  $ 2,236.00

**Detail of Client Expenses**

| Date | Description | Amount |
|------|-------------|--------|
| 8/30/10 | Filing Fee ($75) & Expedite Fee ($125), Nevada Secretary of State - Bruno/Wezi Holdings, LLC | 200.00 |
| 9/07/10 | Professional services from Nevada Legal News, Corp. Kit - Bruno/Wezi Holdings, LLC | 64.86 |
| 9/07/10 | Initial List Filing Fee | 125.00 |
| 9/08/10 | Recording Fee, Clark County Recorder, ██████████ Bruno/Wezi Holdings, LLC | 16.00 |
| 9/08/10 | Recording Fee, Clark County Recorder ████████ - Bruno/Wezi Holdings, LLC | 16.00 |
| 9/08/10 | Recording Fee, Clark County Recorder ███████████ - Bruno/Wezi Holdings, LLC | 16.00 |
| 9/08/10 | Recording Fee, Clark County Recorder ██████████ Bruno/Wezi Holdings, LLC | 16.00 |

Total Expenses:  $ 453.86

*2*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM
—
JONES &
—
PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

*3*

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

September 8, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV 89169

---

**Remittance Advice**
*To insure proper credit to your account, please return this remittance with your payment.*

Client #:       27763       Leslie Bruno
Matter #:            4       Wezi Holdings, LLC
Invoice No.                  224092
Billing Attorney:     RLB

| | |
|---|---|
| Current Invoice | $ 2,689.86 |
| Credits Applied | $ -1,075.00 |
| **Total Balance Due** | **$ 1,614.86** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____       MasterCard _____       American Express _____       Discover _____
Account No. _____ Exp. Date: ____/____ Security Code: _____
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

*4*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

December 7, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

## Invoice Summary

Client #:      27763      Leslie Bruno
Matter #:          4      Wezi Holdings, LLC
Invoice No.           235524

For professional services rendered and costs advanced through November 30, 2010:

| | |
|---|---|
| Total Fees | $ 121.00 |
| Total Expenses | $ 179.00 |
| **Total of This Invoice** | **$ 300.00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.670.6060
702.670.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|----------------------------------|--------|
| 10/22/10 | RLB | Preparation execution and recording of Arizona quitclaim deed | 121.00 |
| | | Total Fees: | $ 121.00 |

**Detail of Client Expenses**

| Date | Description | Amount |
|------|-------------|--------|
| 10/01/10 | Professional services from uDeed, LLC | 179.00 |
| | Total Expenses: | $ 179.00 |

*2*

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

December 7, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV 89169

## Remittance Advice
*To insure proper credit to your account, please return this remittance with your payment.*

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 4 | Wezi Holdings, LLC |
| Invoice No. | | 235524 |
| Billing Attorney: | RLB | |

| | |
|---|---|
| Current Invoice | $ 300.00 |
| Total Balance Due | $ 300.00 |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____      MasterCard _____      American Express _____      Discover _____
Account No. _____ Exp. Date: ___/___ Security Code: _____
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

*3*

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399632

November 11, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

**Invoice Summary**

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 5 | Prenuptial Agreement |
| Invoice No. | | 232813 |

For professional services rendered and costs advanced through October 31, 2010:

| | |
|---|---|
| Total Fees | $ 2,800.00 |
| Total Expenses | $ .00 |
| Credits Applied | $ -2,800.00 |
| **Total of This Invoice** | **$ .00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

DURHAM
———
JONES &
———
PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|--------------------------------|--------|
| 10/07/10 | TMR | Meet with Leslie to conduct consultation regarding the preparation of a pre nuptial agreement. | 300.00 |
| 10/12/10 | TMR | Prepare pre nuptial agreement in accordance with Leslie's stated objectives. | 2,500.00 |
| | | TOTALS | $ 2,800.00 |
| | | Total Fees: | $ 2,800.00 |

*2*

```
DURHAM
─────────
JONES &
─────────
PINEGAR
```

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0390832

November 11, 2010

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV 89169

---

### Remittance Advice

*To insure proper credit to your account, please return this remittance with your payment.*

Client #:        27763       Leslie Bruno
Matter #:            5       Prenuptial Agreement
Invoice No.              232813
Billing Attorney:     TMR

| | |
|---|---|
| Current Invoice | $ 2,800.00 |
| Credits Applied | $ -2,800.00 |
| **Total Balance Due** | **$ .00** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____        MasterCard _____        American Express _____        Discover _____
Account No. _____ Exp. Date: ____/____ Security Code: _____
Amount $_____. Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

*3*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

```
D U R H A M

J O N E S  &

P I N E G A R
```

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

October 6, 2011

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

---

**Invoice Summary**

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 500 | Registered Agent Services |
| Invoice No. | | 282753 |

For professional services rendered and costs advanced through September 30, 2011:

| | |
|---|---|
| Total Fees | $ 350.00 |
| Total Expenses | $ 325.00 |
| Credits Applied | $ -675.00 |
| **Total of This Invoice** | **$ .00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS.

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|----------------------------------|--------|
| 8/01/11 | RLB | Annual Registered Agent fee; List of Managers, Members and Registered Agent - WEZI HOLDINGS, LLC | 150.00 |
| 9/01/11 | RLB | Annual Registered Agent fee; List of General Partners and Registered Agent - HARMONY ASSET MANAGEMENT, L.P. | 200.00 |
| | | Total Fees: | $ 350.00 |

**Detail of Client Expenses**

| Date | Description | Amount |
|------|-------------|--------|
| 9/12/11 | Annual List Filing Fee - WEZI HOLDINGS, LLC | 125.00 |
| 9/12/11 | Annual List Late Penalty - WEZI HOLDINGS, LLC | 75.00 |
| 9/12/11 | Annual List Filing Fee - HARMONY ASSET MANAGEMENT, L.P. | 125.00 |
| | Total Expenses: | $ 325.00 |

*2*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

October 6, 2011

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV 89169

## Remittance Advice
*To insure proper credit to your account, please return this remittance with your payment.*

Client #:     27763      Leslie Bruno
Matter #:      500       Registered Agent Services
Invoice No.             282753
Billing Attorney:    RLB

| | |
|---|---|
| Current Invoice | $ 675.00 |
| Credits Applied | $ -675.00 |
| **Total Balance Due** | **$ .00** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____     MasterCard _____     American Express _____     Discover _____
Account No. _____ Exp. Date: ____/____ Security Code: ____
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee of 1.99%, which will be charged at the time of your payment transaction.*
If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

*3*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM
———
JONES &
———
PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

March 8, 2012

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

Invoice Summary

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 500 | Registered Agent Services |
| Invoice No. | | 300657 |

For professional services rendered and costs advanced through February 29, 2012:

| | |
|---|---|
| Total Fees | $ 160.00 |
| Total Expenses | $ 15.00 |
| **Total of This Invoice** | **$ 175.00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|----------------------------------|--------|
| 1/27/12 | RLB | Annual fee for registered agent services for Trade Show Services Ltd. Company in the DJP Corporate Services program, Bronze Level. | 160.00 |

Total Fees: $ 160.00

**Detail of Client Expenses**

| Date | Description | Amount |
|------|-------------|--------|
| 1/20/12 | Registered Agent Services | 15.00 |

Total Expenses: $ 15.00

*2*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

```
DURHAM

JONES &

PINEGAR
```

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

March 8, 2012

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

## Remittance Advice
*To insure proper credit to your account, please return this remittance with your payment.*

Client #:     27763        Leslie Bruno
Matter #:       500        Registered Agent Services
Invoice No.                300657
Billing Attorney:    RLB

|  |  |
|---|---|
| Current Invoice | $ 175.00 |
| Total Balance Due | $ 175.00 |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____     MasterCard _____     American Express _____     Discover _____
Account No. _____ Exp. Date: ____/____ Security Code: ____
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee of 1.99%, which will be
charged at the time of your payment transaction.*
If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

*3*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

September 6, 2012

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

**Invoice Summary**

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 500 | Registered Agent Services |
| Invoice No. | | 324774 |

For professional services rendered and costs advanced through August 31, 2012:

| | |
|---|---|
| Total Fees | $ 150.00 |
| Total Expenses | $ .00 |
| **Total of This Invoice** | **$ 150.00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|--------------------------------|--------|
| 8/01/12 | RLB | Annual Registered Agent fee; List of Managers, Members and Registered Agent - WEZI HOLDINGS, LLC | 150.00 |

Total Fees:  $ 150.00

*2*

DURHAM
———
JONES &
———
PINEGAR

Durham Jones & Pinegar, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

September 6, 2012

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

---

### Remittance Advice
*To insure proper credit to your account, please return this remittance with your payment.*

Client #:        27763        Leslie Bruno
Matter #:          500        Registered Agent Services
Invoice No.                   324774
Billing Attorney:     RLB

|  |  |
|---|---|
| Current Invoice | $ 150.00 |
| Total Balance Due | $ 150.00 |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____     MasterCard _____     American Express _____     Discover _____
Account No. _____     Exp. Date: ____ / ____     Security Code: ____
Amount $_____     Name on Account: _____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee of 1.99%, which will be charged at the time of your payment transaction.*
If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

---

*3*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

```
D U R H A M

J O N E S  &

P I N E G A R
```

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

December 10, 2012

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

---

**Invoice Summary**

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 500 | Registered Agent Services |
| Invoice No. | | 339031 |

For professional services rendered and costs advanced through November 30, 2012:

| | |
|---|---|
| Total Fees | $ 200.00 |
| Total Expenses | $ .00 |
| **Total of This Invoice** | **$ 200.00** |
| Past Due Balance | $ 150.00 |
| **Total Balance Due** | **$ 350.00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

```
  DURHAM

  JONES &

  PINEGAR
```

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|----------------------------------|--------|
| 9/04/12 | RLB | Annual Registered Agent fee; List of General Partners and Registered Agent - Harmony Asset Management, LP | 200.00 |

|  | Total Fees: | $ 200.00 |
|--|-------------|----------|

**Past Due Invoices**

UNPAID INVOICES AS OF THIS INVOICE DATE

| INVOICE# | DATE | AMOUNT | PAYMENTS | BALANCE |
|----------|------|--------|----------|---------|
| 324774 | 9/06/12 | 150.00 | .00 | 150.00 |

|  | Total Past Due Invoices: | $ 150.00 |
|--|--------------------------|----------|

*2*

DURHAM

JONES &

PINEGAR

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

December 10, 2012

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

**Remittance Advice**

*To insure proper credit to your account, please return this remittance with your payment.*

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 500 | Registered Agent Services |
| Invoice No. | | 339031 |
| Billing Attorney: | RLB | |

| | |
|---|---|
| Current Invoice | $ 200.00 |
| Past Due Invoices | $ 150.00 |
| **Total Balance Due** | **$ 350.00** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____     MasterCard _____     American Express _____     Discover _____
Account No. _____ Exp. Date: ____/____ Security Code: ____
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee of 1.99%, which will be charged at the time of your payment transaction.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

3

```
D U R H A M

J O N E S  &

P I N E G A R
```

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

February 8, 2013

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV 89169

---

**Invoice Summary**

| Client #: | 27763 | Leslie Bruno |
| Matter #: | 500 | Registered Agent Services |
| Invoice No. | | 345115 |

For professional services rendered and costs advanced through January 31, 2013:

| | |
|---|---|
| Total Fees | $ 260.00 |
| Total Expenses | $ 515.00 |
| Credits Applied | $ -600.00 |
| **Total of This Invoice** | $ 175.00 |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

```
D U R H A M
─────────
J O N E S  &
─────────
P I N E G A R
```

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399632

## Detail of Professional Fees

| Date | Atty | Description of Services Rendered | Amount |
|------|------|----------------------------------|--------|
| 12/27/12 | RLB | Annual Registered Agent fee; List of General Partners and Registered Agent - HARMONY ASSET MANAGEMENT, LP | 100.00 |
| 1/31/13 | RLB | Annual fee for registered agent services for Trade Show Services Ltd. Company in the DJP Corporate Services program, Bronze Level. | 160.00 |
| | | Total Fees: | $ 260.00 |

## Detail of Client Expenses

| Date | Description | Amount |
|------|-------------|--------|
| 12/27/12 | Annual list of officers, business license and late penalties filing fees - HARMONY ASSET MANAGEMENT, LP | 500.00 |
| 1/31/13 | Division of Corporations Filing Fee | 15.00 |
| | Total Expenses: | $ 515.00 |

*2*

```
D U R H A M

J O N E S  &

P I N E G A R
```

DURHAM JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

February 8, 2013

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV 89169

## Remittance Advice

*To insure proper credit to your account, please return this remittance with your payment.*

Client #:      27763       Leslie Bruno
Matter #:        500       Registered Agent Services
Invoice No.               345115
Billing Attorney:   RLB

| | | |
|---|---|---|
| Current Invoice | $ 775.00 |
| Credits Applied | $ -600.00 |
| **Total Balance Due** | **$ 175.00** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____      MasterCard _____      American Express _____      Discover _____
Account No. _____ Exp. Date: ____/____ Security Code: ____
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee of 1.99%, which will be charged at the time of your payment transaction.*
If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

*3*

SALT LAKE CITY | OGDEN | ST. GEORGE | LAS VEGAS

```
DURHAM
JONES &
PINEGAR
```

DURHAM, JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

December 11, 2013

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

---

**Invoice Summary**

Client #:      27763        Leslie Bruno
Matter #:        500        Registered Agent Services
Invoice No.                 388666

For professional services rendered and costs advanced through November 30, 2013:

| | |
|---|---|
| Total Fees | $ 200.00 |
| Total Expenses | $ .00 |
| Credits Applied | $ -200.00 |
| **Total of This Invoice** | $ .00 |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

*1*

Durham Jones & Pinegar, P.C.

Client #:      27763       Leslie Bruno
Matter #:      500         Registered Agent Services
Invoice #:                 388666

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|----------------------------------|--------|
| 9/03/13 | RLB | Registered Agent Fee - Harmony Asset Management LP | 200.00 |

Total Fees:      $ 200.00

*2*

DURHAM

JONES &

PINEGAR

DURHAM, JONES & PINEGAR, P.C.
10785 West Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com
F.E.I. # 87-0399832

December 11, 2013

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

## Remittance Advice
*To insure proper credit to your account, please return this remittance with your payment.*

| | | | |
|---|---|---|---|
| Client #: | 27763 | Leslie Bruno | |
| Matter #: | 500 | Registered Agent Services | |
| Invoice No. | | 388666 | |
| Billing Attorney: | RLB | | |

| | |
|---|---|
| Current Invoice | $ 200.00 |
| Credits Applied | $ -200.00 |
| **Total Balance Due** | **$ .00** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____     MasterCard _____     American Express _____     Discover _____
Account No. _____ Exp. Date: ____/____ Security Code: _____
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee of 1.99%, which will be charged at the time of your payment transaction.*
If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

*3*

SALT LAKE CITY | PROVO | OGDEN | ST. GEORGE | LAS VEGAS

**DURHAM**

**JONES &**

**PINEGAR**

DURHAM, JONES & PINEGAR, P.C.
10785 WEST TWAIN AVENUE, SUITE 200
LAS VEGAS, NEVADA 89135
702.870.6060
702.870.6090 FAX
WWW.DJPLAW.COM
F.E.I. # 87-0399832

October 4, 2014
Invoice #: 429990

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

### Invoice Summary

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 500 | Registered Agent Services |

For professional services rendered and costs advanced through September 30, 2014:

| | |
|---|---|
| Total Fees | $ 200.00 |
| Total Expenses | $ 325.00 |
| Credits Applied | $ -525.00 |
| **Total of This Invoice** | **$ .00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

## Terms: Total Balance Due Upon Receipt

App 1 Page   139

Durham Jones & Pinegar, P.C.

Client #:      27763     Leslie Bruno
Matter #:        500     Registered Agent Services
Invoice #:    429990

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|----------------------------------|--------|
| 9/01/14 | RLB | Registered Agent Fee - Harmony Asset Management, L.P. | 200.00 |

Total Fees:     $ 200.00

**Detail of Client Expenses**

| Date | Description | Amount |
|------|-------------|--------|
| 9/29/14 | Nevada Secretary of State- Harmony Asset Management, LP | 325.00 |

Total Expenses:     $ 325.00

Page |  2

DURHAM

JONES &

PINEGAR

DURHAM, JONES & PINEGAR, P.C.
10785 WEST TWAIN AVENUE, SUITE 200
LAS VEGAS, NEVADA 89135
702.870.6060
702.870.6090 FAX
WWW.DJPLAW.COM
F.E.I. # 87-0399832

October 4, 2014

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

### Remittance Advice
*To insure proper credit to your account, please return this remittance with your payment.*

Client #:      27763
Matter #:        500
Invoice #:   429990
Billing Attorney:

Leslie Bruno
Registered Agent Services

RLB

| | |
|---|---|
| Current Invoice | $ 525.00 |
| Credits Applied | $ -525.00 |
| **Total of This Invoice** | **$ .00** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____     MasterCard _____     American Express _____     Discover _____
Account No. _____ Exp. Date: ____/____ Security Code: _____
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee of 1.99%, which will be
charged at the time of your payment transaction.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

**DURHAM**

**JONES &**

**PINEGAR**

DURHAM, JONES & PINEGAR, P.C.
10785 WEST TWAIN AVENUE, SUITE 200
LAS VEGAS, NEVADA 89135
702.870.6060
702.870.6090 FAX
WWW.DJPLAW.COM
F.E.I. # 87-0399832

October 13, 2015
Invoice #: 485392

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

## Invoice Summary

| | | |
|---|---|---|
| Client #: | 27763 | Leslie Bruno |
| Matter #: | 500 | Registered Agent Services |

For professional services rendered and costs advanced through September 30, 2015:

| | |
|---|---|
| Total Fees | $ 200.00 |
| Total Expenses | $ .00 |
| Credits Applied | $ -200.00 |
| **Total of This Invoice** | **$ .00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

## Terms: Total Balance Due Upon Receipt

SALT LAKE CITY | LEHI | OGDEN | ST. GEORGE | LAS VEGAS

Page | 1

Durham Jones & Pinegar, P.C.

Client #:     27763     Leslie Bruno
Matter #:       500     Registered Agent Services
Invoice #:   485392

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|--------------------------------|--------|
| 9/01/15 | RLB | Annual Registered Agent fee - Harmony Asset Management LP | 200.00 |

Total Fees:     $ 200.00

```
DURHAM
―――――
JONES &
―――――
PINEGAR
```

DURHAM, JONES & PINEGAR, P.C.
10785 WEST TWAIN AVENUE, SUITE 200
LAS VEGAS, NEVADA 89135
702.870.6060
702.870.6090 FAX
WWW.DJPLAW.COM
F.E.I. # 87-0399832

October 13, 2015

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV  89169

## Remittance Advice
*To insure proper credit to your account, please return this remittance with your payment.*

Client #:      27763        Leslie Bruno
Matter #:        500        Registered Agent Services
Invoice #:   485392
Billing Attorney:           RLB

| | |
|---|---:|
| Current Invoice | $ 200.00 |
| Credits Applied | $ -200.00 |
| **Total of This Invoice** | **$ .00** |

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa \_\_\_\_      MasterCard \_\_\_\_      American Express \_\_\_\_      Discover \_\_\_\_
Account No. _____ Exp. Date: \_\_\_/\_\_\_ Security Code: \_\_\_
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/ debit card are subject to a convenience fee of 1.99%, which will be charged at the time of your payment transaction.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

_____

**DURHAM**

**JONES &**

**PINEGAR**

DURHAM, JONES & PINEGAR, P.C.
10785 WEST TWAIN AVENUE, SUITE 200
LAS VEGAS, NEVADA 89135
702.870.6060
702.870.6090 FAX
WWW.DJPLAW.COM
F.E.I. # 87-0399832

October 11, 2016
Invoice #: 537728

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV 89169

### Invoice Summary

| Client #: | 27763 | Leslie Bruno |
|---|---|---|
| Matter #: | 500 | Registered Agent Services |

For professional services rendered and costs advanced through September 30, 2016:

| | |
|---|---|
| Total Fees | $ 200.00 |
| Total Expenses | $ 350.00 |
| Credits Applied | $ -550.00 |
| **Total of This Invoice** | **$ .00** |

*Interest accrues at 1.5% per month on balance not paid after 30 days.*

## Terms: Total Balance Due Upon Receipt

Durham Jones & Pinegar, P.C.

Client #:     27763     Leslie Bruno
Matter #:     500     Registered Agent Services
Invoice #:  537728

**Detail of Professional Fees**

| Date | Atty | Description of Services Rendered | Amount |
|------|------|----------------------------------|--------|
| 9/01/16 | RLB | Annual Registered Agent fee - Harmony Asset Management LP | 200.00 |

Total Fees:    $ 200.00

**Detail of Client Expenses**

| Date | Description | Amount |
|------|-------------|--------|
| 9/19/16 | Annual list filing fee - Harmony Investments LP | 350.00 |

Total Expenses:    $ 350.00

SALT LAKE CITY | LEHI | OGDEN | ST. GEORGE | LAS VEGAS

Page | 2

**DURHAM**

**JONES &**

**PINEGAR**

DURHAM, JONES & PINEGAR, P.C.
10785 WEST TWAIN AVENUE, SUITE 200
LAS VEGAS, NEVADA 89135
702.870.6060
702.870.6090 FAX
WWW.DJPLAW.COM
F.E.I. # 87-0399832

October 11, 2016

Leslie Bruno
3511 South Eastern Avenue
Las Vegas, NV 89169

---

### Remittance Advice
*To insure proper credit to your account, please return this remittance with your payment.*

Client #:        27763        Leslie Bruno
Matter #:          500        Registered Agent Services
Invoice #:    537728
Billing Attorney:        RLB

---

| | |
|---|---|
| Current Invoice | $ 550.00 |
| Credits Applied | $ -550.00 |
| **Total of This Invoice** | **$ .00** |

---

*Terms: Total Balance Is Due Upon Receipt*

To Pay by Credit Card:

Visa _____        MasterCard _____        American Express _____        Discover _____
Account No. _____ Exp. Date: ____/____ Security Code: _____
Amount $_____ Name on Account:_____
Cardholder Billing Address: _____

*Payments made by credit/debit card are subject to a convenience fee of 1.99%, which will be charged at the time of your payment transaction.*

If you prefer that invoices be sent to you by e-mail, please provide your e-mail address below:

---

# EXHIBIT 10

**10/7/2010 DJP Correspondence**

# EXHIBIT 10



DURHAM JONES & PINEGAR, P.C.
10785 W. Twain Avenue
Suite 200
Las Vegas, Nevada 89135
702.870.6060
702.870.6090 Fax
www.djplaw.com

Robert L. Bolick
Attorney at Law
rbolick@djplaw.com

October 7, 2010

Leslie Bonlie-Bruno
P. O. Box 60692
Las Vegas, Nevada  89160

Re:   Transfer of Assets to the Living Trust, Nevada Asset Protection Trust
      Limited Partnership and Limited-Liability Company
      Our File No. 27763.1

Dear Leslie:

It has been a pleasure working with you in the formation of your living trust, Nevada
Asset Protection Trust ("NAPT"), limited partnership ("LP") and limited-liability company
("LLC").  Your NAPT will serve as an excellent asset protection vehicle in your overall
estate plan.  Your trusts should provide you with peace of mind and security, provided
you properly fund the trusts as set forth in this letter.

We have enclosed a Schedule A form which you can use to list the properties which you
transfer to your NAPT and a Schedule A form to list the properties which you transfer to
your living trust.  If you prefer to make your own schedules using a different format,
please feel free to do so.  Please keep in mind that merely listing an asset on your
Schedule A will **not** transfer the title into your NAPT or living trust.  You will need to take
the necessary steps to have your NAPT or living trust listed as the owner of the asset
on the asset's title as explained in this letter.  The Schedule A should serve merely as
an inventory or list of assets which you have transferred to your trust.

Asset Protection.  It is very important that all of the assets you want protected from
potential future creditors' claims be transferred to your NAPT.  Only those assets
transferred to your NAPT will be protected from creditors' claims after the two-year
statute of limitations has run and your creditors have been notified.  To ensure that such
assets are adequately protected, we recommend that you publish a Notice to Creditors

Leslie Bonlie-Bruno
October 7, 2010
Page 2

for the assets transferred to your NAPT. Our office will be glad to assist you with this if you like. The statute of limitations begins on the date you transfer assets into your NAPT and have notified all of your creditors. Those assets remaining in your living trust will still be exposed to attachment by a creditor should a creditor obtain a judgment against you.

Limited-Liability Company. Assets owned by the LLC should not be subject to attachment by creditors. A creditor of yours individually can only attach the assets which are owned by you and titled in your name. In the case of an LLC, a creditor can only attach your membership interest in the LLC rather than the assets themselves because the title to the assets is held by the LLC. Under law in other jurisdictions, owners of LLC's have been successful in preventing creditors from piercing through the entity and attaching the underlying assets. However, there is no guarantee that a court in Nevada would decide this way in your situation.

Tax Identification Number and Tax Returns for Limited-Liability Company. We will send the Internal Revenue Service Form SS-4 which you signed to the IRS. The IRS will assign a tax identification number for the LLC and will send the number directly to you. They will not send the information to us, nor can we request it from them. They will only deal directly with you.

An LLC is taxed like a partnership. Currently, there is no separate tax return for an LLC. You should file a partnership income tax return on IRS Form 1065. There will be no tax paid by the LLC. All gains or losses will flow through to the members individually and should be reported on your individual income tax returns.

Funding Your Trusts. Generally speaking, we recommend that you transfer most, if not all, of your investment assets (i.e., stocks, bonds, cash or cash equivalents, raw land, etc.) into your LP which is held in your NAPT. Please refer to our separate letter concerning your limited partnership.

Assets which may be a source of liability, such as your rental property, automobiles and businesses (which are not held in a corporation, limited-liability company or other asset-protection entity) should **not** be transferred into your NAPT. To do so would expose your investments which would otherwise be protected to any claims arising from the liability-generating asset.

Although we may assist or advise you concerning transferring your assets to your NAPT or living trust, we accept no responsibility for such transfer work. As we have

Leslie Bonlie-Bruno
October 7, 2010
Page 3

discussed, it is strictly and exclusively your responsibility to see that the appropriate assets have been transferred into your NAPT or living trust.

When transferring title to your NAPT, new title can be held as follows: "**L. Bonlie as Trustee of the** ▮▮▮▮▮**Asset Protection Trust dated October 7, 2010.**"

When naming the NAPT as a beneficiary, use ▮▮▮▮▮**Asset Protection Trust dated October 7, 2010.**"

When transferring title to your living trust, new title can be held as follows: "**Leslie Bonlie-Bruno as Trustee of the** ▮▮▮▮**Trust dated October 7, 2010.**"

When naming the living trust as a beneficiary, use ▮▮▮▮▮**Trust dated October 7, 2010.**"

When transferring title of assets to your limited-liability company, new title can be held or the designation made as follows: "**L. Bonlie, as Manager of the Wezi Holdings, LLC.**"

We understand that you plan to transfer your rental properties to your LLC.

<u>Personal Residence</u>.  We understand that you intend to transfer your home to your NAPT.  We recommend that you do **not** transfer your home into your LLC because you may lose your $500,000 capital gain exclusion upon sale of your primary residence and other tax benefits unique to your home.

<u>Other Real Estate</u>.  It is important that all other real estate, whether located in Nevada or outside of the state, be transferred to the appropriate entity.  Real estate held for investment purposes, such as raw or undeveloped land, can be transferred into your LP or NAPT if it will not be a source of liability.  Typically, the potential for liability with such property will be low.

If you believe that there may be some potential liability with the property, we recommend that you create an LLC and transfer the property into it.  A new deed will have to be prepared to effect the transfer of your property.

If you like, we will be happy to prepare any deeds for you.  We will need to obtain the appropriate information from you to complete the transfers.  For real estate we will need

Leslie Bonlie-Bruno
October 7, 2010
Page 4

a copy of your old deeds.  Upon receipt of the old deeds, we will prepare the new deeds.  Our fee for doing so is $200 which includes the recording cost for each Nevada deed.

Any trust deed for which you are the beneficiary, such as property you have sold, should also be assigned to the appropriate entity.

Cash Accounts.  We recommend that you transfer all of your cash accounts (savings accounts, money market funds, etc.) except your personal checking account, into your LP.  In Nevada, if your total probate estate (or all property owned by you outside of a trust) is less than $20,000, and all real estate has been transferred into the appropriate entities, you will not need to do a probate.

We recommend that you **not** transfer your personal checking accounts into your LP or NAPT.  This way, you can continue writing personal checks for your everyday expenses.  If you were to transfer your personal checking account into your LP or NAPT, you would run the risk of having your LP or NAPT invalidated by a court.

You should not have to close the old accounts and open new ones; rather, you should be able to retain the old account numbers so that you do not need to order new checks or lose interest on interest-bearing accounts.  Similarly, the number of authorized signatures required should not need to be changed.

Motor Vehicles.  I understand that you plan to transfer your motor vehicles into your living trust.  Because vehicles can be a source of liability, we recommend that you **not** transfer them into your LP or NAPT.  To transfer title to your motor vehicles, you should sign the back of the title as the owner and sign as the trustee listing the living trust as the purchaser.  Nevada law requires that your title and proof of insurance be identical.

You must contact your insurance agent and have him or her issue a proof of insurance binder in the name of the trust.  You should then take the completed certificate, the proof of insurance and a copy of the Certificate of Revocable Living Trust to the Department of Motor Vehicles.  They charge a $20 fee.  If you do not have title, we recommend that you get a replacement title from the DMV.

Certificates of Deposit.  You will need to visit the bank or other financial institution where your certificates of deposit are kept and endorse any unmatured certificates of deposit over to your LP.  No penalties should be assessed.  When they mature the new certificates should be issued in the name of your LP.

Leslie Bonlie-Bruno
October 7, 2010
Page 5

Safe Deposit Boxes.  Most banks will allow you to title your safe deposit box in the name of your NAPT or living trust.

Stocks, Bonds and Securities.  We recommend that you have your broker handle the transfer of any publicly traded stocks or bonds to your LP because typically your signatures need to be guaranteed by a member of a national stock exchange or national bank.  You should receive a new certificate from the transfer agent showing your LP as the owner of the certificate.

S Corporation Stock.  To transfer stock in an S Corporation to your NAPT, you will need to date and sign the back of the original stock certificates.  New ones should be issued to you as Trustee of your NAPT as indicated on page 3 of this letter.  If you would like our office to assist you with the preparation of new stock certificates, please let us know.

Insurance Policies.  Unless you have an irrevocable trust to own your life insurance, we recommend that you change the ownership and beneficiary designation forms for any insurance policies so that your LP is the owner and beneficiary.  We recommend that you contact your insurance agent to assist you with this.  If you do not have an agent who can assist you, we will be happy to refer you to one.

Remember that the life insurance proceeds on your life are included in your taxable estate for federal estate tax purposes, regardless of whether the policy is owned by you individually or by your LP, NAPT or family trust.  The preferred way to exclude the proceeds from your taxable estate is to create an irrevocable life insurance trust to own the policy.  If you have questions about this, please let me know.

IRAs; 401(k)s; Retirement Plans:  It is important that you do not change the ownership of the account of your IRA, 401(k), pension, profit-sharing or retirement plan.  Most people name either their children or the trustee of their NAPT as the contingent beneficiary of their pension, profit-sharing, 401(k) plan or other retirement plan and IRA's.  We recommend that you consult with your accountant or other tax advisor concerning the designation of your primary and contingent beneficiaries.

You may choose to name the trustee of the NAPT as the contingent beneficiary, or you may select an individual beneficiary.  In addition to consulting with your tax advisor, you should check with the trustee of your IRA or with the plan administrator of your retirement plan to make sure you have elected an appropriate payment method under plan rules.

Future Acquisitions.  Keep in mind that any assets which you may acquire in the future should be purchased in the name of either your LP, NAPT, living trust or LLC.  If the

Leslie Bonlie-Bruno
October 7, 2010
Page 6

assets you acquire in the future are purchased in the name of your living trust, such assets will not be protected from potential future creditors' claims, but will avoid probate.

The assets you acquire in the name of your NAPT will be protected from potential future creditors so long as the two-year statute of limitations has run from the time such assets are contributed and creditors notified.

Tax Issues.  Before transferring stock options, rental real estate, or other tax-sensitive investments to an entity, we recommend that you consult your individual income tax return preparer to insure that no adverse income tax consequences will result upon transfer.

Administration of Trusts After Death of Trustor or Trustee.  Assets held in your NAPT and living trust will avoid probate.  However, other procedures may need to be completed upon the death of a Trustor or Trustee.  These procedures may include, but not be limited to, the preparation and recordation of the Affidavit of Successor Trustee, the filing of the original last will and testament with the Clark County Clerk's office, the preparation and publication of a Notice to Creditors, the allocation and transfer of assets to individual trusts or beneficiaries and, possibly, the filing of a federal estate tax return with the Internal Revenue Service and the State of Nevada.  These procedures may be necessary to protect the successor Trustee and to take advantage of the tax exemptions that may be available.  Our firm has a well-trained trust administration department that would be happy to assist you with any additional work that may be required in the future.

After you have transferred your assets to your NAPT, LP, living trust or LLC and published the Notice to Creditors as described above, your trusts should be fully implemented.

If you have any questions or if any individual dealing with you or your trust has any questions about your trust, please call Sandy Yamashiro at our office or have the individual call her and we will be glad to help.

Very truly yours,

DURHAM JONES & PINEGAR, P.C.

Robert L. Bolick

RLB:sy

██████TRUST dated October 7, 2010



| When transferring assets to your **living trust** such as: | New title should be held as: |
|---|---|
| Personal Checking Accounts<br><br>Motor Vehicles<br><br>Safe Deposit Box<br><br>Professional Corporation Stock | LESLIE BONLIE-BRUNO, Trustee of the ██████ TRUST dated October 7, 2010<br><br>**OR**<br><br>LESLIE BONLIE-BRUNO, Trustee u/a/d 10/7/10 |

███████**ASSET PROTECTION TRUST**
**dated October 7, 2010**



| When transferring assets to your **asset protection trust** such as: | New title should be held as: |
|---|---|
| Personal Residence<br><br>S corporation stock<br><br>LLC Membership Interests | L. BONLIE, Trustee of the ███████ASSET PROTECTION TRUST dated October 7, 2010<br><br>**OR**<br><br>L. BONLIE, Trustee u/a/d 10/7/10 |

| When naming the **asset protection trust** as the **contingent** beneficiary on: | Beneficiary designation should be: |
|---|---|
| All IRAs, 401(k)s, Pension Plans, Profit-Sharing Plans, Retirement Plans, Tax Deferred Annuities, etc. | ███████ASSET PROTECTION TRUST dated October 7, 2010 |

## HARMONY ASSET MANAGEMENT, L.P.



| When transferring assets to your **limited partnership** such as: | New title should be held as: |
|---|---|
| Real Property - **only vacant land**<br><br>Savings Accounts<br><br>Money Market Funds<br><br>Certificates of Deposit<br><br>Stocks, Bonds, Securities<br><br>Deeds of Trust | HARMONY ASSET MANAGEMENT, L.P.<br><br>**OR**<br><br>L. BONLIE, General Partner of the HARMONY ASSET MANAGEMENT, L.P. |

| When naming the **limited partnership** as the **owner and primary beneficiary** on: | New title should be held as: |
|---|---|
| Life Insurance Policies | HARMONY ASSET MANAGEMENT, L.P.<br><br>**OR**<br><br>L. BONLIE, General Partner of the HARMONY ASSET MANAGEMENT, L.P. |

## WEZI HOLDINGS, LLC



| When transferring assets to your **limited-liability company** such as: | New title should be held as: |
| --- | --- |
| Rental Property | L. BONLIE, as Manager of the WEZI HOLDINGS, LLC |

LESLIE BONLIE-BRUNO
P. O. Box 60692
Las Vegas, Nevada  89160


Date: _____




_____
_____
_____
_____

Re:   Account No.  _____
_____
_____

Dear Sirs:

I have created a living trust.  Please transfer title of the above account into the ███████ TRUST.  Title should be held as follows:

**"LESLIE BONLIE-BRUNO, Trustee of the █████TRUST dated October 7, 2010."**

Enclosed for your information is a copy of the Certificate of Revocable Living Trust.


_____
LESLIE BONLIE-BRUNO

L. BONLIE
P. O. Box 60692
Las Vegas, Nevada  89160

Date: _____

_____
_____
_____
_____

Re:    Account No. _____
                   _____
                   _____

Dear Sirs:

I have created a living trust.  Please transfer title of the above account into the [NAME] ASSET PROTECTION TRUST.  Title should be held as follows:

**"L. BONLIE, Trustee of the** ███████ **PROTECTION TRUST dated October 7, 2010."**

Enclosed for your information is a copy of the Certificate of Irrevocable Asset Protection Trust.

_____
L. BONLIE

# EXHIBIT 11

**Nevada Secretary of State Printouts for Harmony Asset Management, LP and WEZI Holdings, LLC**

# EXHIBIT 11

# HARMONY ASSET MANAGEMENT, L.P.

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 9/1/2010 |
| Type: | Limited Partnership (ULPA) | Entity Number: | E0425682010-9 |
| Qualifying State: | NV | List of Officers Due: | 9/30/2018 |
| Managed By: | | Expiration Date: | 9/30/2110 |
| NV Business ID: | NV20101663505 | Business License Exp: | 9/30/2018 |

## Additional Information

| | |
|---|---|
| Central Index Key: | |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | DJP CORPORATE SERVICES NEVADA | Address 1: | 10785 WEST TWAIN AVE STE 200 |
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89135 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | NV |
| Mailing Zip Code: | | | |
| Agent Type: | Commercial Registered Agent - Corporation | | |
| Jurisdiction: | UTAH | Status: | Active |

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 0 |

**No stock records found for this company**

## Officers

✔ Include Inactive Officers

### General Partner - LESLIE BONLIE

| | | | |
|---|---|---|---|
| Address 1: | P.O. BOX 60692 | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89160 | Country: | USA |
| Status: | Historical | Email: | |

### General Partner - LESLIE BONLIE-BRUNO

| | | | |
|---|---|---|---|
| Address 1: | P.O. BOX 60692 | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89160 | Country: | |
| Status: | Active | Email: | |

## Actions\Amendments

| Document Number: | 20100661220-90 | # of Pages: | 1 |
| File Date: | 9/1/2010 | Effective Date: | |

(No notes for this action)

| Action Type: | Initial List | | |
| Document Number: | 20100671999-04 | # of Pages: | 1 |
| File Date: | 9/7/2010 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
| Document Number: | 20110667291-85 | # of Pages: | 1 |
| File Date: | 9/14/2011 | Effective Date: | |

11-12

| Action Type: | Annual List | | |
| Document Number: | 20120869946-07 | # of Pages: | 1 |
| File Date: | 12/27/2012 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
| Document Number: | 20130649312-01 | # of Pages: | 1 |
| File Date: | 9/30/2013 | Effective Date: | |

13-14

| Action Type: | Annual List | | |
| Document Number: | 20140688771-94 | # of Pages: | 1 |
| File Date: | 9/29/2014 | Effective Date: | |

(No notes for this action)

| Action Type: | Amended List | | |
| Document Number: | 20150297515-27 | # of Pages: | 1 |
| File Date: | 6/29/2015 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
| Document Number: | 20150404171-55 | # of Pages: | 1 |
| File Date: | 9/10/2015 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
| Document Number: | 20160307267-64 | # of Pages: | 1 |
| File Date: | 7/11/2016 | Effective Date: | |

(No notes for this action)

| Action Type: | Annual List | | |
| Document Number: | 20170413312-94 | # of Pages: | 1 |
| File Date: | 9/29/2017 | Effective Date: | |

(No notes for this action)

# WEZI HOLDINGS, LLC

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 8/30/2010 |
| Type: | Domestic Limited-Liability Company | Entity Number: | E0422582010-4 |
| Qualifying State: | NV | List of Officers Due: | 8/31/2018 |
| Managed By: | Managers | Expiration Date: | 9/30/2110 |
| NV Business ID: | NV20101658510 | Business License Exp: | 8/31/2018 |

## Additional Information

| | |
|---|---|
| Central Index Key: | |
| Series LLC (YES if applicable): | YES |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | GARY E. SCHNITZER, ESQ. | Address 1: | 8985 S EASTERN AVE STE 200 |
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89123 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | NV |
| Mailing Zip Code: | | | |
| Agent Type: | Commercial Registered Agent | | |
| Status: | Active | | |

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 0 |

**No stock records found for this company**

## – Officers

☐ Include Inactive Officers

**Manager - LESLIE B BRUNO**

| | | | |
|---|---|---|---|
| Address 1: | P.O. BOX 60692 | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89160 | Country: | |
| Status: | Active | Email: | |

## – Actions\Amendments

| | | | |
|---|---|---|---|
| Action Type: | Articles of Organization | | |
| Document Number: | 20100653436-20 | # of Pages: | 4 |
| File Date: | 8/30/2010 | Effective Date: | |

(No notes for this action)

| Document Number: | 20100671974-17 | | # of Pages: | 1 |
| File Date: | 9/7/2010 | | Effective Date: | |
| (No notes for this action) | | | | |
| Action Type: | Annual List | | | |
| Document Number: | 20110667297-41 | | # of Pages: | 1 |
| File Date: | 9/14/2011 | | Effective Date: | |
| 11-12 | | | | |
| Action Type: | Annual List | | | |
| Document Number: | 20120596213-51 | | # of Pages: | 1 |
| File Date: | 8/29/2012 | | Effective Date: | |
| 2012/2013 | | | | |
| Action Type: | Registered Agent Change | | | |
| Document Number: | 20130045717-90 | | # of Pages: | 1 |
| File Date: | 1/22/2013 | | Effective Date: | |
| (No notes for this action) | | | | |
| Action Type: | Annual List | | | |
| Document Number: | 20130634922-72 | | # of Pages: | 1 |
| File Date: | 9/27/2013 | | Effective Date: | |
| (No notes for this action) | | | | |
| Action Type: | Annual List | | | |
| Document Number: | 20140629139-97 | | # of Pages: | 1 |
| File Date: | 8/29/2014 | | Effective Date: | |
| (No notes for this action) | | | | |
| Action Type: | Annual List | | | |
| Document Number: | 20150404172-66 | | # of Pages: | 1 |
| File Date: | 9/10/2015 | | Effective Date: | |
| (No notes for this action) | | | | |
| Action Type: | Registered Agent Change | | | |
| Document Number: | 20160270563-62 | | # of Pages: | 1 |
| File Date: | 6/16/2016 | | Effective Date: | |
| (No notes for this action) | | | | |
| Action Type: | Annual List | | | |
| Document Number: | 20160341040-51 | | # of Pages: | 1 |
| File Date: | 8/1/2016 | | Effective Date: | |
| (No notes for this action) | | | | |
| Action Type: | Annual List | | | |
| Document Number: | 20170240926-43 | | # of Pages: | 1 |
| File Date: | 6/2/2017 | | Effective Date: | |
| (No notes for this action) | | | | |

# EXHIBIT 12

**Articles of Organization and Operating Agreement of Wezi Holdings, LLC**

# EXHIBIT 12

# ARTICLES OF ORGANIZATION

## OF

## WEZI HOLDINGS, LLC

The undersigned, to form a Series Limited-Liability Company under Chapter 86 of the Nevada Revised Statutes, certifies that:

1.  **NAME.** The name of the series limited-liability company (hereafter the "Company") shall be WEZI HOLDINGS, LLC.

2.  **NAME AND PHYSICAL ADDRESS OF REGISTERED AGENT FOR SERVICE OF PROCESS.** The name of the registered agent for service of process of the Company in Nevada is DJP CORPORATE SERVICES NEVADA, 10785 West Twain Avenue, Suite 200, Las Vegas, Nevada 89135.

3.  **SEPARATE SERIES.**

    (a)   <u>Debts and Liabilities Separate</u>.  The Company may have more than one series.  The debts and liabilities of any series will be enforceable against the assets of that series only and not against the assets of another series or of the Company generally.

    (b)   <u>Rights Set Forth in Operating Agreement</u>.  The relative rights, powers and duties of each series and its members shall be set forth in the operating agreement for each series or are established as provided in the operating agreement for each series.

    (c)   <u>Separate Records Maintained</u>.  Each series shall maintain separate and distinct records.  The assets associated with each series will be held and accounted for separately from the other assets of the Company and from any other series within the Company.

4.  **MANAGEMENT.** The business of each series shall be managed by one or more managers in accordance with the terms of these Articles of Organization, the Operating Agreement for each series, and Nevada law. The number of managers may from time to time be increased or decreased as permitted by law and in the manner provided for in the operating agreement for a series.  A manager does not have to be a member of any series of the Company.

1

5.   **INITIAL MANAGER.** There shall be one initial manager. The name and address of the initial manager of each initial series of the Company is:

**L. BONLIE**

P. O. Box 60692
Las Vegas, Nevada 89160

6.   **TERM.** The Company shall exist perpetually or until the filing of articles of dissolution pursuant to Nevada Revised Statutes 86.531 and 86.541.

7.   **BUSINESS PURPOSE.** Each series is and shall be organized to engage in any business permitted by law. Each series may conduct one or more businesses separate and distinct from any other series in the Company.

8.   **MEMBERS.**

(a)   <u>Rights of Members</u>. The interest and rights of each member in a series (including the right to vote and the right to share in the profits, losses, and capital of the series) shall be set forth in an operating agreement for each series.

(b)   <u>Continuation of Business of Series</u>. Upon the occurrence of any event which terminates the membership of a member of any series (including the death, retirement, resignation, expulsion, bankruptcy, or dissolution of a member that is an entity) the remaining members of a series may continue the business of the series as provided in the operating agreement for the series or as otherwise unanimously agreed upon by the remaining members of the series (other than the member whose interest is or has been terminated).

(c)   <u>New Members</u>. New members may be added to any series as set forth in the operating agreement for the series or as otherwise agreed upon unanimously by those who are members of the series at the time the new member or members are added.

9.   **NON-ASSESSABLE MEMBERSHIP.** Except as specifically provided otherwise in the operating agreement, the members of any series shall not be subject to assessment for any purpose, including the payment of the debts of any series of the Company, after the amount of the initial contribution has been paid in money, property, or services.

10.   **LIMITED LIABILITY.** No member or manager shall be personally liable to any series or its members for any act or omission arising from his or her failure to exercise due care regarding the management of any series, or for any other breach of fiduciary duty, except for any act or omission which involves intentional misconduct, fraud, or a knowing violation of law. Any series may indemnify and/or advance funds to

2

a manager or member of the series to defend a civil or criminal action as provided in Nevada Revised Statutes 86.411 through 86.481, inclusive.

**11. AMENDMENT.** These articles may be amended only by a vote of members holding fifty-one percent (51%) of the voting membership interests of the Company.

**12. TRANSACTIONS WITH INTERESTED MEMBER OR MANAGER.** The Company or any of its series may enter into any business transaction in which a member, manager or employee has a personal interest, whether directly or indirectly, if:

(a)     The transaction is an arms-length transaction entered into in good faith by all parties; and

(b)     The Company is benefited by the transaction and cannot enter into an equivalent transaction under more favorable terms; and

(c)     The personal interest in the transaction is fully disclosed to the Company by the interested member, manager, or employee; and

(d)     The transaction is approved by the managers, excluding the interested member, manager, or employee (unless he or she is the only manager).

Dated this _____ day of _____, 2010.

_____
L. BONLIE, Organizer
P. O. Box 60692
Las Vegas, Nevada  89160

3

**STATE OF NEVADA**



*ROSS MILLER*
Secretary of State

*SCOTT W. ANDERSON*
Deputy Secretary
for Commercial Recordings

**Commercial Recordings Division**
202 N. Carson Street
Carson City, NV 89701-4069
Telephone (775) 684-5708
Fax (775) 684-7138

**OFFICE OF THE**
**SECRETARY OF STATE**

DJP CORPORATE SERVICES NEVADA
10785 WEST TWAIN AVE STE 200
LAS VEGAS, NV 89135

**Job: C20100831-1382**
August 31, 2010

**Special Handling Instructions:**
NF EX P/U DJM

Charges

| Description | Document Number | Filing Date/Time | Qty | Price | Amount |
|---|---|---|---|---|---|
| Articles of Organization | 20100653436-20 | 8/30/2010 4:24:23 PM | 1 | $75.00 | $75.00 |
| 24 Hour Expedite | 20100653436-20 | 8/30/2010 4:24:23 PM | 1 | $125.00 | $125.00 |
| Total | | | | | $200.00 |

Payments

| Type | Description | Amount |
|---|---|---|
| Check | Check #2351 | $200.00 |
| Total | | $200.00 |

Credit Balance: $0.00

Job Contents:
| | |
|---|---|
| File Stamped Copy(s): | 1 |
| LLC Charter(s): | 1 |
| ILMM-ALMM(s): | 1 |

DJP CORPORATE SERVICES NEVADA
10785 WEST TWAIN AVE STE 200
LAS VEGAS, NV 89135

# OPERATING AGREEMENT

## OF

## WEZI HOLDINGS, LLC
### Series A

### 1. OFFICES

      1.1   Principal Office. The principal office of Series A of the Limited-liability Company (hereafter the "Company") shall be located at  P. O. Box 60692, Las Vegas, Nevada  89160.  The Series may have such other offices, either within or without the State of Nevada as the members or managers may designate or as the business of the Series may from time to time require.

      1.2   Registered Office; Registered Agent.  The registered office of the Company, required by Nevada Revised Statutes 86.231 to be maintained in the State of Nevada may, but need not, be identical with the Principal Office in the State of Nevada.  The address of the initial registered office of the Company is 10785 West Twain Avenue, Suite 200, Las Vegas, Nevada 89135.  The registered agent at such office is DJP Corporate Services Nevada.  The registered office may be changed from time to time by action of the members and by filing the prescribed form with the Nevada Secretary of State.

### 2. MEETINGS OF MEMBERS

      2.1   Annual Meetings.  Annual meetings of the members shall be held in the month of August in each year, beginning with the year 2011, for the purpose of electing the manager or managers and for the transaction of such other business as may come before the meeting.  If the election shall not be held at the time designated herein for the annual meeting of the members, the members shall cause the election to be held at a special meeting of the members as soon thereafter as it may conveniently be held.

      2.2   Other Regular Meetings.  The members may provide for the holding of regular meetings in addition to the annual meetings by prescribing the time and place for such meetings.

      2.3   Special Meetings.  Special meetings of the members, for any purpose or purposes, may be called by the managers or by a majority of the equity interests of the members.

      2.4   Notice of Meetings.  Except where notice is not required, as provided herein, written notice stating the place, day and hour of the meeting and, in

case of a special meeting, the purposes for which the meeting is called, shall be given not less than ten (10) days before the date of the meeting, by or at the direction of the managers, to each member of record entitled to vote at such meeting. When all the members of the Series are present at any meeting and do not object to notice, or if those not present subsequently ratify all the proceedings thereof, the transactions of such meeting are as valid as if a meeting were formally called and notice had been given. Notwithstanding the above, if either (1) notice of two consecutive meetings, or (2) two payments of distribution of profits sent by U. S. Postal Service mail during a twelve-month period are returned as undeliverable, the giving of further notices is not required. In that event, any action taken without notice to the member shall be deemed to have been taken with notice to the member until such time as the member provides a current address to the Series.

2.5     Meeting Without Notice. If a majority of the members shall meet at any time and place, either within or without the State of Nevada, and consent to the holding of the meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting any action may be taken.

2.6     Place of Meeting. Except as provided herein, all meetings of the members shall be at the principal office or registered office stated in Sections 1.1 and 1.2 above. Any meeting of the members may be held at any other location upon majority agreement of the equity interests of the members. A written consent to hold a meeting at an alternate location shall be irrevocable for purposes of the meeting specified therein.

2.7     Waiver of Attendance. Attendance by a member at a meeting shall be deemed to be a waiver of any objection to notice or place of a meeting, unless the member appears solely for purposes of objecting to notice or place of meeting.

2.8     Quorum. At any meeting of the members, a majority of the equity interests, as determined from the capital accounts of each member as reflected by the books of the Series, represented in person or by proxy, shall constitute a quorum at a meeting of members. If less than said majority of the equity interests are represented at a meeting, a majority of the interests so represented may adjourn the meeting from time to time without further notice. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally notified. The members present at a duly organized meeting may continue to transact business until adjournment, notwith-standing the withdrawal of enough equity interests of the members to leave less than a quorum.

2.9     Proxies. At all meetings of members, a member may vote by written proxy by the member or by his or her duly authorized attorney-in-fact. To be effective, such proxy must be personally received by the managers, or received at the Series' principal office at least ten (10) hours prior to the time of commencement of the meeting. In addition to an original writing, members may designate a proxy by a

2

facsimile or email that sets forth sufficient information to determine that the transmission was authorized by the member. No proxy shall be valid after three (3) months from the date of its execution, unless otherwise provided in the proxy. No proxy shall, in any case, be valid for longer than seven (7) years from the date of its execution or any other period mandated by Nevada law.

2.10    Voting by Certain Members. Equity ownership interests held in the name of a corporation, partnership, limited-liability company, trust or other entity may be voted by such officer, partner, trustee, agent or proxy as the bylaws, partnership agreement, trust agreements or operating agreements of such entity may prescribe. Equity ownership interests held by a trustee, personal representative, administrator, executor, guardian or conservator may be voted by him or her, either in person or by proxy, without a transfer of such certificates into his or her name.

2.11    Manner of Acting.

(a)    Formal Action by Members. Unless otherwise specified for certain actions in the Articles of Organization or this Operating Agreement, the act of a majority of the equity ownership interests of members present at a meeting at which a quorum is present shall be the act of the members. Upon demand of any member, voting on a particular issue may be recorded in accordance with the equity ownership in the Series.

(b)    Procedure. A manager of the Series, when present, shall preside at meetings of the members. The presiding manager or any member may move or second any item of business. A record of all items of business discussed or acted upon shall be maintained of the meetings of the members. The members may adopt their own rules of procedure which shall not be inconsistent with this Operating Agreement.

(c)    Presumption of Assent. A member of the Series who is present at a meeting of the members at which an action is taken shall be presumed to have assented to the action taken, unless his or her dissent shall be entered in the minutes of the meeting or unless he or she shall file his or her written dissent to such action with the manager or person presiding at the meeting before the adjournment thereof, or shall forward such dissent by certified mail to the managers immediately after the adjournment of the meeting. Such right to dissent shall not apply to a member who voted in favor of such action.

(d)    Informal Action of Members. Unless otherwise provided by law, any action required to be taken at a meeting of the members, or any other action which may be taken at a meeting of the members, may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all the members entitled to vote with respect to the subject matter thereof.

3

2.12   <u>Order of Business</u>.  The order of business at all meetings of the members shall be as follows:

1.   Roll Call
2.   Proof of Notice of Meeting or Waiver of Notice
3.   Reading of Minutes of Preceding Meeting
4.   Report of the Manager
5.   Reports of Committees, if any
6.   Unfinished Business
7.   New Business

2.13   <u>Telephonic Meeting</u>.  Members of the Series may participate in any meeting of the members by means of conference telephone or similar communication if all persons participating in such meeting can hear one another for the entire discussion. Participation in a meeting pursuant to this Section shall constitute presence in person at such meeting.  The Series shall provide members with adequate means by which to participate in all meetings telephonically, by conference call capability at the meeting location, or other adequate means.

## 3. FISCAL MATTERS

3.1   <u>Fiscal Year</u>.  The fiscal year of the Series, for both accounting and tax reporting purposes, shall be the calendar year.

3.2   <u>Deposits</u>.  All cash funds of the Series shall be deposited from time to time to the credit of the Series in such banks, trust companies or other depositories as the members or managers may select.

3.3   <u>Contracts, Conveyances</u>.  All matters in the conduct of the ordinary business of the Series, except for those specifically reserved to the members, may be performed by the managers.  No conveyances of property of the Series, other than payments of money in the ordinary course of the Series' business, shall be made except upon authorization by a resolution of the members.

3.4   <u>Loans</u>.  No loans shall be contracted on behalf of the Series, and no notes or other evidence of indebtedness of the Series shall be issued except upon authorization by resolution of the members.

3.5   <u>Checks, Drafts, Etc</u>.  All checks, drafts, notes, liabilities incurred by the Series, or other orders for the payment of money issued in the name of the Series shall be signed by a manager.

3.6   <u>Accountant</u>.  An accountant may be selected from time to time by the members or the managers to perform such tax and accounting services as may from time to time be required.

4

3.7     Legal Counsel.  One or more attorneys at law may be selected from time to time by the members or managers to review the legal affairs of the Series and to perform such other services as may be required.

## 4.  MEMBERSHIP RECORDS AND TRANSFER OF OWNERSHIP

4.1     Membership Records.  The managers shall maintain a current record of the members, their equity ownership interest in the Series, their capital accounts, and their membership percentages.

4.2     Transfer of Ownership.  Any member may transfer his or her membership interest in the Series at any time.  The transferees shall have no right to vote or otherwise participate in the management of the business and affairs of the Series or to become a member.  The transferee shall only be entitled to receive the share of the profits or other compensation and the return of contributions, if any, to which that member would otherwise be entitled.

4.3     No Return of Capital.  No member shall be entitled to receive any part of his or her contribution to capital until the dissolution of the Series or liquidation of that member's interest in the Series.

## 5.  CAPITAL AND CAPITAL CONTRIBUTIONS

5.1     Capital of the Series.  The capital of the Series shall be the aggregate amount of the capital contribution made to it by the members, plus any net profits retained in the Series.

5.2     Original Contribution of Members.  The members shall contribute to the Series certain properties or services particularly described on Exhibit 1, which is attached hereto and incorporated by this reference.

5.3     Membership Percentages.  Each member's membership percentage is his or her percentage of equity ownership of the Series, which shall be the equivalent of the amount of each member's capital account as a percentage of the capital of the Series.  The initial membership percentages of each member are set forth on Exhibit 1.

5.4     No Additional Capital Contributions.  Members will not be obligated to make additional contributions to capital except upon a resolution of the members that includes a determination of business necessity.

## 6.  CAPITAL ACCOUNTS

An individual capital account shall be maintained for each member under the rules for maintaining capital accounts as may be prescribed in federal treasury regulations.  Unless required to the contrary by regulations, a member's capital account

5

shall be his or her original capital contribution, increased by his or her share of (a) income, (b) gain and (c) tax-exempt income of the Series, and reduced by his or her share of (d) distributions of money or property, (e) deductions, (f) losses and (g) other Series expenditures.

## 7. ADMISSION OF NEW MEMBERS OR SERIES

New members may be admitted to the Series upon unanimous agreement by the members. Additionally, unanimous agreement by the members is required for the Company or its managers to create or terminate any Series as provided in Section 13 below.

## 8. DISTRIBUTION OF PROFITS AND LOSSES

8.1     General.  The members may from time to time declare, and the Series may distribute, accumulated profits determined to be not necessary for the cash needs of the Series' business.  Such distributions may be made subject to the additional requirement that, after such distributions are made, the assets of the Series exceed the net losses (determined for federal tax purposes) and other liabilities of the Series, except liabilities to members on account of their capital contributions.  Unless otherwise provided, retained profits shall be deemed to be an increase in the capital of the Series.

8.2     Allocations.  The net profits of the Series shall be allocated to all members in proportion to their capital accounts.  All losses and deductions shall similarly be allocated to the members in proportion to their capital accounts.

8.3     Rules for Determining Profits and Losses.  For the purpose of determining net profits distributable among the members, and for the purpose of determining net losses to be borne by the members, the rules for determination of net income or net losses for federal income tax purposes shall apply.  Such income or losses shall be allocated among and borne by the members at the end of each accounting year as provided above.  The members may establish additional rules and procedures for determining and allocating the profits to the members consistent with federal treasury regulations and the provisions of this Operating Agreement.

8.4     Distributions on Dissolution.  Upon dissolution of the Series or the Company, or liquidation of any member's interest in the Series or the Company, liquidating distributions will be in accordance with the positive capital account balances of each member, as determined after taking into account all capital account adjustments for the tax year during which such liquidation occurs.

## 9. BOOKS AND RECORDS

9.1     Books and Records.  The books and records of the Series required by Nevada Revised Statutes 86.241 shall be kept at the registered office of the Series.

Other books and records shall be kept at such other places, within or without the state of Nevada, as the members or managers shall from time to time determine.

The books and records which the Series shall keep at its registered office are:

        (a)      A current list of the full name and last known business address of each member and manager separately identifying the members in alphabetical order and the managers, if any, in alphabetical order;

        (b)      A copy of the filed Articles of Organization and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any document has been executed;

        (c)      Copies of the Series' federal income tax returns and reports, if any, for the three (3) most recent years or a copy of the Company's tax return, if any, if no separate tax returns are filed by the Series;

        (d)      Copies of any then effective written operating agreement and of any financial statements of the Series for the three (3) most recent years; and

        (e)      A writing setting forth:

                (1)      The amount of cash and a description and statement of the agreed value of the other property or services contributed by each member and which each member has agreed to contribute;

                (2)      The items of which or events on the happening of which any additional contributions agreed to be made by each member are to be made;

                (3)      Any right of a member to receive, or of a manager to make, distributions to a member which include a return of all or any part of the member's contribution; and

                (4)      Any events upon the happening of which the Series or the Company is to be dissolved and its affairs wound up.

9.2    <u>Right of Inspection</u>.  Any member of record shall have the right to examine, at any reasonable time or times, for all purposes, the financial statements, the books and records of account, minutes and records of members and to make copies thereof, with copies at the members' expense.  Such inspection may be made by any agent or attorney of the member.

7

9.3   Financial Records.  All financial records shall be maintained and reported based on generally acceptable accounting practices.

### 10. MANAGEMENT

10.1   Management.  The business of the Series shall be managed by one or more managers who need not be members of the Series.  Any manager may sign, on behalf of the Series, such deeds, mortgages, bonds, contracts or other instruments which he or she is authorized to execute under Article 3 of this Operating Agreement, except in cases where the signing or execution thereof shall be expressly delegated to the members; and, in general, he or she shall perform all duties as may be prescribed by the members from time to time.

10.2   Duties of Managers.  The managers shall be responsible for the general overall supervision of the business and affairs of the Series.  The specific authority and responsibility of the managers shall include the following:

(a)   The managers shall direct and supervise the operations of the Series;

(b)   The managers shall establish such charges for services and products of the Series as may be necessary to provide adequate income for the efficient operation of the Series;

(c)   The managers, within the budget established by the members, shall set and adjust wages and rates of pay for all personnel of the Series and shall appoint, hire and dismiss all personnel and regulate their hours of work;

(d)   The managers shall keep the members advised in all matters pertaining to the business of the Series, services rendered, operating income and expense, financial position, and, to this end, shall prepare and submit a report to the members at each annual meeting and at other times as may be directed by the members.

10.3   Election and Tenure.  The managers of the Series shall be elected annually by the members at their annual meeting.  Each manager shall hold office from the date of his or her election until the next annual meeting and until his or her successor shall have been elected, unless he or she shall sooner resign or be removed.

10.4   Resignations and Removal.  Any manager may resign at any time by giving written notice to the other managers and to all of the members; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.  Any manager may be removed at any time by the members with or without cause.

10.5   Vacancies.  A vacancy caused by a deceased, resigning or removed manager may be filled for the unexpired portion of the term by a successor selected by majority vote of the equity interest of the members.

10.6   Salaries.  The salaries, if any, of the managers shall be fixed from time to time by the members, and no manager shall be prevented from receiving such salary by reason of the fact that he or she is also a member of the Series.

10.7   Presumption of Assent.  A manager of the Series who is present at a meeting of the managers at which action on any Series matter is taken, shall be conclusively presumed to have assented to the action taken unless his or her dissent shall be entered in the minutes of the meeting or unless he or she shall file his or her written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof.  Such right to dissent shall not apply to a manager who voted in favor of such action.

## 11. MISCELLANEOUS

11.1   Arbitration.  Any controversy or claim between members or managers relating to the Articles of Organization or this Operating Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  One arbitrator will be used, unless the parties to the dispute are not able to agree on a designated arbitrator, in which case a three (3) member panel of arbitrators will be used.

11.2   Notice.  Except as provided in Section 2.9 (regarding proxies), whenever notice of any kind is required or permitted under the terms and provisions of the Nevada Revised Statutes, the Articles of Organization or this Operating Agreement, the same may be deposited with the U. S. Postal Service by registered or certified mail, postage prepaid, to the indicated parties at their last known address as shown in the records of the Series, or in lieu thereof, by regular first class mail, postage prepaid, private carrier, facsimile, or delivery in person.  If properly mailed by registered or certified mail, the date of mailing shall be the effective date of notice.  If notice is by facsimile, the effective date shall be the next date after the date of receipt of transmission that is not a weekend or U. S. Postal Service holiday.  Otherwise, the effective date of notice shall be the date of actual receipt by the party entitled to notice.

Members changing their addresses shall give notice to the managers of the Series and the managers of the Series shall give notice of a change of registered or principal office to the members within ten (10) days.

11.3   Waiver of Notice.  Whenever any notice is required to be given pursuant to the provisions of the Nevada Revised Statutes, the Articles of Organization of the Series or this Operating Agreement, a waiver thereof, in writing, signed by the

9

persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

   11.4   Indemnification of Members, Managers. Unless the members determine that he or she did not act in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of the Series, and unless the members determine that, with respect to any criminal acts or proceeding he or she was without reasonable cause to believe that his or her conduct was unlawful, the Series shall indemnify any person who was or is a party defendant or is threatened to be made a party defendant to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (other than an action by or in the right of the Series) by reason of the fact that he or she is or was a member of the Series or a manager, against expenses, including attorney's fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him or her in connection with such action, suit or proceeding. The termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not in itself create a presumption that the person did not act in good faith and in a manner which he or she reasonably believed to be in the best interest of the Series, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his or her conduct was unlawful.

   11.5   Other Indemnification. The Series may, by member action, indemnify any employee, agent, or other person acting on behalf of the Series under the same terms and conditions as set forth in section 11.4. The Series shall indemnify members, managers, employees and agents when the requirements of Nevada Revised Statutes 86.431(1) (generally, regarding successful defense of actions) have been met.

   11.6   Indemnification Funding; Insurance. The Series shall fund the indemnification obligations provided by Section 11.4 in such manner and to such extent as the members may from time to time deem proper. The members may cause the Series to maintain insurance coverage to provide for any expenses of indemnification of the Series.

   11.7   Anticipated Transactions. It is anticipated that the members and managers will have other legal and financial relationships. Representatives of this Series, along with representatives of other entities, may from time to time participate in the joint development of contracts and transactions designed to be fair and reasonable to each participant and to afford an aggregate benefit to all participants. Therefore, it is anticipated that this Series will desire to participate in such contracts and transactions and, after ordinary review for reasonableness, that the participation of the Series in such contracts and transactions may be authorized by the members, subject to the requirements regarding transactions with interested members, managers and employers as stated in the articles of organization.

11.8  <u>Gender and Number</u>.  Whenever the context requires, the gender of all words used herein shall include the masculine, feminine and neuter, and the number of all words shall include the singular and plural thereof.

11.9  <u>Articles and Other Headings</u>.  The articles and other headings contained in this Operating Agreement are for reference purposes only and shall not affect the meaning or interpretation.

11.10  <u>Reimbursement of Managers and Members</u>.  Managers and members shall receive reimbursement for expenses reasonably incurred in the performance of their duties.

11.11  <u>Document Copies</u>.  Except where otherwise limited by law, any photocopy, facsimile copy, or other reliable reproduction of any writing may be substituted for the original writing or for any original signature affixed thereto for any Series business purpose (including, without limitation, notices and consents) for which the original could be used, provided that the copy or reproduction is a complete and accurate reproduction of the entire original writing.

## 12.  AMENDMENTS

This Operating Agreement may be altered, amended, restated, or repealed and a new Operating Agreement may be adopted by a majority vote of the equity interests of the members, after notice and opportunity for discussion of the proposed alteration, amendment, restatement, or repeal.

## 13.  OTHER SERIES PERMITTED

13.1  <u>Other Series Authorized</u>.  The Company may have additional Series.  Separate and distinct records are to be maintained for each Series.  The assets associated with any other Series are to be held and accounted for separately from the other assets of this Series, or any other Series. Any other Series may have a separate business purpose, managers, and members from any other Series and/or from the Company generally.

13.2  <u>Series Creation and Termination</u>.  The managers by majority vote may create or terminate one or more additional Series.  Each additional Series shall adopt its own Operating Agreement.

13.3  <u>Series Designation</u>.  Upon the creation of a new Series, the managers of the Company shall give the new Series a designation or name, which shall be unique among the other Series within the Company.

11

## CERTIFICATION

THE UNDERSIGNED, being the sole member of the WEZI HOLDINGS, LLC, hereby evidences the adoption and ratification of the foregoing Operating Agreement of the Company.

EXECUTED by the sole member on the date indicated.

███████ ASSET PROTECTION TRUST dated , October 7, 2010

9/3/2010
Date

By: L. BONLIE, Trustee

12

EXHIBIT 1

**WEZI HOLDINGS, LLC**
**Series A**

ORIGINAL CONTRIBUTION OF ASSETS
(Per Article 5 of the Operating Agreement)

| MEMBER | ASSETS CONTRIBUTED | PERCENTAGE OF INTEREST |
|---|---|---|
| █████████ ASSET PROTECTION TRUST dated September 1, 2010 | Real Property Located At: ███████████ Henderson, NV ████████ Henderson, NV ████, Henderson, NV Vacant Land, Yavapai County, AZ | 100% |

13





# LIMITED LIABILITY COMPANY CHARTER

I, ROSS MILLER, the Nevada Secretary of State, do hereby certify that **WEZI HOLDINGS, LLC** did on August 30, 2010, file in this office the Articles of Organization for a Limited Liability Company, that said Articles of Organization are now on file and of record in the office of the Nevada Secretary of State, and further, that said Articles contain all the provisions required by the laws governing Limited Liability Companies in the State of Nevada.



IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office on August 31, 2010.

ROSS MILLER
Secretary of State

Certified By: Delaina Marzullo
Certificate Number: C20100831-1382
You may verify this certificate
online at **http://www.nvsos.gov/**

# EXHIBIT 13

**Operating Agreement of Pro-Tect Security, LLC**

# EXHIBIT 13

✓ 1.  Do trust amd 501 ██████████

✓ 2.  correct deed on home —    ordered ok 501
                                re-record
              ██████████ asset Protection Trust    pent for recording

✓ 3.  correct membership cert. Wezjtoldings
         Ocean

Doesn't want 4.  Pro—Ject Security - corporate clean-up  )
                has EIN ??                    Hold

~~5. filing outs or leaving?~~ assume leaving

✓ 6.  make new index & organize trust binder

✓ 7.  reprint Ex A to Operating Agm's —
        add properties)

# OPERATING AGREEMENT

## OF

## PRO-TECT SECURITY SERVICES, LLC

## 1. OFFICES

1.1    Principal Office.  The principal office of the Limited-liability Company (hereafter the "Company") shall be located at 3511 South Eastern Avenue, Las Vegas, Nevada.  The Company may have such other offices, either within or without the state of Nevada as the members may designate or as the business of the Company may from time to time require.

1.2    Registered Office; Registered Agent.  The registered office of the Company, required by Nevada Revised Statutes 86.231 to be maintained in the State of Nevada may, but need not, be identical with the Principal Office in the State of Nevada.  The address of the initial registered office of the Company is 10785 West Twain Avenue, Suite 200, Las Vegas, Nevada 89135.  The registered agent at such office is DJP Corporate Services Nevada.  The registered office may be changed from time to time by action of the members and by filing the prescribed form with the Nevada Secretary of State.

## 2. MEETINGS OF MEMBERS

2.1    Annual Meeting.  The annual meeting of the members shall be held in the month of February in each year, beginning with the year 2010, for the purpose of electing the manager and for the transaction of such other business as may come  . before the meeting.  If the election shall not be held at the time designated herein for the annual meeting of the members, or at any adjournment thereof, the members shall cause the election to be held at a special meeting of the members as soon thereafter as it may conveniently be held.

2.2    Regular Meetings.  The members may provide for the holding of regular meetings by resolution prescribing the time for such meetings and may provide that the adoption of such resolution shall constitute notice of such regular meetings.

2.3    Special Meetings.  Special meetings of the members, for any purpose or purposes, may be called by the managers or by any two members.

2.4    Notice of Meeting.  Except where notice is not required, as provided herein, written notice stating the place, day and hour of the meeting and, in case of a special meeting, the purposes for which the meeting is called, shall be given not less than ten (10) days before the date of the meeting, by or at the direction of the

1

managers, to each member of record entitled to vote at such meeting. When all the members of the Company are present at any meeting and do not object to notice, or if those not present sign in writing a waiver of notice of such meeting, or subsequently ratify all the proceedings thereof, the transactions of such meeting are as valid as if a meeting were formally called and notice had been given. Notwithstanding the above, if either notice of two consecutive annual meetings and required notices of all meetings in the interim, or two payments of distribution of profits sent by U. S. Postal Service mail during a twelve-month period are returned as undeliverable, the giving of further notices is not required. In that event, any action taken without notice to the member shall be deemed to have been taken with notice to the member until such time as the member provides a current address to the Company.

      2.5    <u>Meeting Without Notice</u>. If all the members shall meet at any time and place, either within or without the State of Nevada, and consent to the holding of the meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting any company action may be taken.

      2.6    <u>Place of Meeting</u>. Except as provided herein, all meetings of the members shall be at the principal office or registered office stated in sections 1.1 and 1.2 above. Any meeting of the members may be held at any other location upon unanimous agreement of the members. A written consent to hold a meeting at an alternate location shall be irrevocable for purposes of one meeting specified therein.

      2.7    <u>Waiver of Attendance</u>. Attendance by a member at a meeting shall be deemed to be a waiver of any objection to notice or place of a meeting, unless the member appears solely for purposes of objecting to notice or place of meeting.

      2.8    <u>Quorum</u>. At any meeting of the members, a majority of the equity interests, as determined from the capital contribution of each member as reflected by the books of the Company, represented in person or by proxy, shall constitute a quorum at a meeting of members. If less than said majority of the equity interests are represented at a meeting, a majority of the interests so represented may adjourn the meeting from time to time without further notice. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally notified. The members present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough members to leave less than a quorum.

      2.9    <u>Proxies</u>. At all meetings of members, a member may vote by written proxy by the member or by his or her duly authorized attorney-in-fact. To be effective, such proxy must be personally received by the managers, or received at the office of the managers at the Company's principal office at least ten (10) hours prior to the time of commencement of the meeting. In addition to an original writing, members may designate a proxy by a telegram, cablegram, or facsimile that sets forth sufficient information to determine that the transmission was authorized by the member. No proxy

2

shall be valid after three (3) months from date of execution, unless otherwise provided in the proxy. No proxy shall, in any case, be valid for longer than seven (7) years from the date of the execution.

    2.10  <u>Voting by Certain Members</u>. Equity ownership interests standing in the name of a corporation, partnership or company may be voted by such officer, partner, agent or proxy as the bylaws, partnership agreement, or other operating agreements of such entity may prescribe. Equity ownership interests held by a trustee, personal representative, administrator, executor, guardian or conservator may be voted by him or her, either in person or by proxy, without a transfer of such certificates into his or her name.

    2.11  <u>Manner of Acting</u>.

    (a)  <u>Formal Action by Members</u>. Unless otherwise specified for certain actions in the Articles of Organization or this Operating Agreement, the act of a majority of the equity ownership interests of members present at a meeting at which a quorum is present shall be the act of the members. Upon demand of any member, voting on a particular issue may be recorded in accordance with percentage of equity ownership in the Company.

    (b)  <u>Procedure</u>. A manager of the Company, when present, shall preside at meetings of the members. The presiding manager or the members may move or second any item of business. A record shall be maintained of the meetings of the members. The members may adopt their own rules of procedure which shall not be inconsistent with this Operating Agreement.

    (c)  <u>Presumption of Assent</u>. A member of the Company who is present at a meeting of the members at which action on any matter is taken shall be presumed to have assented to the action taken, unless his or her dissent shall be entered in the minutes of the meeting or unless he or she shall file his or her written dissent to such action with the Operating Manager or person presiding at the meeting before the adjournment thereof, or shall forward such dissent by certified mail to the managers immediately after the "adjournment of the meeting." Such right to dissent shall not apply to a member who voted in favor of such action.

    (d)  <u>Informal Action of Members</u>. Unless otherwise provided by law, any action required to be taken at a meeting of the members, or any other action which may be taken at a meeting of the members, may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all the members entitled to vote with respect to the subject matter thereof.

    2.12  <u>Order of Business</u>. The order of business at all meetings of the members shall be as follows:

3

1. Roll Call
2. Proof of notice of meeting or waiver of notice
3. Reading of minutes of preceding meeting
4. Report of the Operating Manager
5. Reports of committees, if any
6. Unfinished Business
7. New Business

2.13    Telephonic Meeting.  Members of the Company may participate in any meeting of the members by means of conference telephone or similar communication if all persons participating in such meeting can hear one another for the entire discussion of the matter(s) to be voted upon.  Participation in a meeting pursuant to this Section shall constitute presence in person at such meeting.  The Company shall provide members with adequate means by which to participate in all meetings telephonically, by conference call capability at the meeting location, or other adequate means.

2.14    Informal Action by Members.  Any action required to be taken at a meeting of the members or any other action which may be taken at a meeting of the members may be taken without a meeting if a consent in writing setting forth the action so taken shall be signed by a majority of the members entitled to vote with respect to the subject matter thereof.

2.15    Presumption of Assent.  A member of the company who is present at a meeting of the members at which action on any company matter is taken, shall be conclusively presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof or shall forward such dissent by certified or registered mail to the manager of the company immediately after the adjournment of the meeting.  Such right to dissent shall not apply to a member who voted in favor of such action.

## 3. FISCAL MATTERS

3.1    Fiscal Year.  The fiscal year of the Company, for both accounting and tax reporting purposes, shall be the calendar year.

3.2    Deposits.  All cash funds of the Company shall be deposited from time to time to the credit of the Company in such banks, trust companies or other depositories as the members may select.

3.3    Contracts, Conveyances.  Except as otherwise specifically provided herein, no contracts on behalf of the Company shall be executed except by a resolution of the members.  No conveyances of property of the Company, other than payments of

4

money in the ordinary course of the Company's business, shall be made except upon authorization by a resolution of the members. The members may, by resolution, authorize the managers or designated managing officers to enter into any contract or execute any instrument. Such authorization may be general or confined to specific instances.

3.4 <u>Loans</u>. No loans shall be contracted on behalf of the Company, and no notes or other evidence of indebtedness of the Company shall be issued except upon authorization by resolution of the members. The members may, by resolution, authorize the managers or designated managing officers to contract loans or issue notes or other evidences of indebtedness. Such authority may be general or confined to specific instances.

3.5 <u>Checks, Drafts, Etc</u>. All checks, drafts, notes, liabilities incurred by the Company, or other orders for the payment of money issued in the name of the Company shall be signed by a manager or managers to be designated for that purpose.

3.6 <u>Accountant</u>. An accountant may be selected from time to time by the members to perform such tax and accounting services as may from time to time be required. The accountant may be removed by the members at any time, with or without cause.

3.7 <u>Legal Counsel</u>. One or more attorneys at law may be selected from time to time by the members to review the legal affairs of the Company and to perform such other services as may be required and to report to the members with respect thereto.

## 4. MEMBERSHIP RECORDS AND TRANSFER OF OWNERSHIP

4.1 <u>Membership Records</u>. The managers shall maintain a current record of the members, their equity ownership interest in the Company, their capital accounts, and their membership percentage.

4.2 <u>Transfer of Ownership</u>. Any member may transfer his or her membership interest in the Company at any time. The transferee shall have no right to participate in the management of the business and affairs of the Company or to become a member. The transferee shall only be entitled to receive the share of the profits or other compensation and the return of contributions, if any, to which that member would otherwise be entitled.

4.3 <u>No Return of Capital</u>. No member shall be entitled to receive any part of his or her contribution to capital until the dissolution of the Company or liquidation of that member's interest in the Company.

5

## 5.  CAPITAL AND CAPITAL CONTRIBUTIONS

5.1    Capital of the Company.  The capital of the Company shall be the aggregate amount of the capital contribution made to it by the members.

5.2    Original Contribution of Members.  The members shall contribute to the Company certain properties or services particularly described on Exhibit A, which is attached hereto and incorporated by this reference.

5.3    Membership Percentages.  Each member's membership percentage is his or her percentage of equity ownership of the Company, which shall be the equivalent of the amount of each member's capital account as a percentage of the capital of the Company.  The initial membership percentages of each member are set forth on Exhibit A.

5.4    No Additional Capital Contributions.  Members will not be obligated to make additional contributions to capital except upon a resolution of the members that includes a determination of business necessity.

## 6.  CAPITAL ACCOUNTS

An individual capital account shall be maintained for each member under the rules for maintaining capital accounts as may be prescribed in federal treasury regulations.  Unless required to the contrary by regulations, a member's capital account shall be his or her original capital contribution, increased by his or her share of (a) income, (b) gain and (c) tax-exempt income of the Company, and reduced by his or her share of (d) distributions of money or property, (e) deductions, (f) losses and (g) other Company expenditures.

## 7.  ADMISSION OF NEW MEMBERS

New members may be admitted to the Company upon unanimous agreement by the members.

## 8.  DISTRIBUTION OF PROFITS AND LOSSES

8.1    General.  The members may from time to time unanimously declare, and the Company may distribute, accumulated profits determined to be not necessary for the cash needs of the Company's business.  Such distributions may be made subject to the additional requirement that, after such distribution is made, the assets of the Company exceed the net losses (determined for federal tax purposes) and other liabilities of the Company, except liabilities to members on account of their capital contributions.  Unless otherwise provided, retained profits shall be deemed to be an increase in the capital of the Company.

6

8.2   <u>Allocations</u>.  The net profits of the Company shall be allocated to all members in proportion to their capital accounts.  All losses and deductions shall be allocated to the members in proportion to their capital accounts.

8.3   <u>Rules for Determining Profits and Losses</u>.  For the purpose of determining net profits distributable among the members, and for the purpose of determining net losses to be borne by the members, the rules for determination of net income or net losses for federal income tax purposes shall apply.  Such income or losses shall be allocated among and borne by the members at the end of each accounting year as above provided.  The members may establish additional rules and procedures for determining and allocating the profits to the members consistent with federal treasury regulations and the provisions of this Operating Agreement.

8.4   <u>Distributions on Dissolution</u>.  Upon dissolution of the Company, or liquidation of any member's interest in the Company, liquidating distributions will be in accordance with the positive capital account balances of each member, as determined after taking into account all capital account adjustments for the tax year during which such liquidation occurs.

## 9.  BOOKS AND RECORDS

9.1   <u>Books and Records</u>.  The books and records of the Company required by Nevada Revised Statutes 86.241 shall be kept at the registered office of the Company.  Other books and records shall be kept at such other places, within or without the state of Nevada, as the members shall from time to time determine.

The books and records which the Company shall keep at its registered office are:

(a)   A current list of the full name and last known business address of each member and manager separately identifying the members in alphabetical order and the managers, if any, in alphabetical order;

(b)   A copy of the filed articles of organization and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any document has been executed;

(c)   Copies of the Company's federal income tax returns and reports, if any, for the three (3) most recent years;

(d)   Copies of any then effective written operating agreement and of any financial statements of the Company for the three (3) most recent years; and

7

(e)     Unless contained in the articles of organization, a writing setting out:

(1)     The amount of cash and a description and statement of the agreed value of the other property or services contributed by each member and which each member has agreed to contribute;

(2)     The items of which or events on the happening of which any additional contributions agreed to be made by each member are to be made;

(3)     Any right of a member to receive, or of a manager to make, distributions to a member which include a return of all or any part of the member's contribution; and

(4)     Any events upon the happening of which the limited liability is to be dissolved and its affairs wound up.

9.2     <u>Right of Inspection</u>.  Any member of record shall have the right to examine, at any reasonable time or times, for all purposes, the financial statements, the books and records of account, minutes and records of members and to make copies thereof, with copies at the members' expense.  Such inspection may be made by any agent or attorney of the member.

9.3     <u>Financial Records</u>.  All financial records shall be maintained and reported based on generally acceptable accounting practices.

## 10. MANAGEMENT

10.1     <u>Management</u>.  The business of the Company shall be managed by one or more managers who need not be members of the Company.  Any manager may sign, on behalf of the Company, such deeds, mortgages, bonds, contracts or other instruments which he or she is authorized to execute under Article 3 of this Operating Agreement, except in cases where the signing or execution thereof shall be expressly delegated by the members or by this Operating Agreement or by statute to some other manager of the Company; and, in general, he or she shall perform all duties as may be prescribed by the members from time to time.

10.2     <u>Duties of Managers</u>.  The managers shall be responsible for the general overall supervision of the business and affairs of the Company.  The specific authority and responsibility of the managers shall include the following:

(1)     The managers shall effectuate this Operating Agreement and the regulations and decisions of the members;

8

(2)    The managers shall direct and supervise the operations of the Company;

(3)    The managers, within such parameters as may be set by the members, shall establish such charges for services and products of the Company as may be necessary to provide adequate income for the efficient operation of the Company;

(4)    The managers, within the budget established by the members, shall set and adjust wages and rates of pay for all personnel of the Company and shall appoint, hire and dismiss all personnel and regulate their hours of work;

(5)    The managers shall keep the members advised in all matters pertaining to the operation of the Company, services rendered, operating income and expense, financial position, and, to this end, shall prepare and submit a report to the members at each annual meeting and at other times as may be directed by the members.

10.3   <u>Election and Tenure</u>.  The managers of the Company shall be elected annually by the members at the annual meeting.  Each manager shall hold office from the date of his or her election until the next annual meeting and until his or her successor shall have been elected, unless he or she shall sooner resign or be removed.

10.4   <u>Resignations and Removal</u>.  Any manager may resign at any time by giving written notice to the managers or to all of the members, and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.  Any manager may be removed at any time by the members with or without cause.

10.5   <u>Vacancies</u>.  A vacancy in any office may be filled for the unexpired portion of the term by the members.

10.6   <u>Salaries</u>.  The salaries of the managers shall be fixed from time to time by the members and no manager shall be prevented from receiving such salary by reason of the fact that he or she is also a member of the Company.

10.7   <u>Presumption of Assent</u>.  A manager of the company who is present at a meeting of the managers at which action on any company matter is taken, shall be conclusively presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof.  Such right to dissent shall not apply to a manager who voted in favor of such action.

9

## 11. DISQUALIFICATION OF MEMBERS, MANAGERS AND EMPLOYEES

If any member, manager or employee of the company becomes legally disqualified to practice his or her profession within the State of Nevada, he or she shall sever all employment with, and financial interest (other than an interest as a creditor) in, the company forthwith or as otherwise provided in Section 12. Such legal disqualification to practice his or her profession within the State of Nevada shall be deemed to constitute an irrevocable offer by the disqualified member to sell his or her membership interests to the company pursuant to the provisions of Section 12.

## 12. DEATH OR DISQUALIFICATION OF MEMBERS

The company shall purchase or redeem the membership interests of a member in case of death or disqualification pursuant to the provisions of Section 11, within a reasonable period of time after appointment of the executor, administrator, or other legal representative of the estate of the deceased or incompetent member, or within a reasonable period of time after a disqualification of a living member. The purchase price shall be the member's capital account adjusted to the date of the withdrawal.

## 13. MISCELLANEOUS

13.1 <u>Arbitration</u>. Any controversy or claim between members relating to the Articles of Organization or this Operating Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. One arbitrator will be used, unless the parties to the dispute are not able to agree on a designated arbitrator, in which case a three (3) member panel of arbitrators will be used.

13.2 <u>Notice</u>. Except as provided in Section 2.8 (regarding proxies), whenever notice of any kind is required or permitted under the terms and provisions of the Nevada Revised Statutes, the Articles of Organization or this Operating agreement, the same may be deposited with the U. S. Postal Service by registered or certified mail, postage prepaid, to the indicated parties at their last known address as shown in the records of the Company, or in lieu thereof, by regular first class mail, postage prepaid, private carrier, facsimile, or delivery in person. If properly mailed by registered or certified mail, the date of mailing shall be the effective date of notice. If notice is by facsimile, the effective date shall be the next date after the date of receipt of transmission that is not a weekend or U. S. Postal Service holiday. Otherwise, the effective date of notice shall be the date of actual receipt by the party entitled to notice.

10

Members changing their addresses shall give notice to the Company and the Company shall give notice of its change of registered or principal office within ten (10) days.

13.3   Waiver of Notice.   Whenever any notice is required to be given pursuant to the provisions of the Nevada Revised Statutes, the Articles of Association of the Company or this Operating Agreement, a waiver thereof, in writing, signed by the persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

13.4   Indemnification of Members, Managers.   Unless the members determine that he or she did not act in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of the Company, and unless the members determine that, with respect to any criminal acts or proceeding he or she was without reasonable cause to believe that his or her conduct was unlawful, the Company shall indemnify any person who was or is a party defendant or is threatened to be made a party defendant to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (other than an action by or in the right of the Company) by reason of the fact that he or she is or was a member of the Company or a managing officer, against expenses, including attorney's fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him or her in connection with such action, suit or proceeding. The termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not in itself create a presumption that the person did not act in good faith and in a manner which he or she reasonably believed to be in the best interest of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his or her conduct was unlawful.

13.5   Other Indemnification.   The Company may, by member action, indemnify any employee, agent, or other person acting on behalf of the Company under the same terms and conditions as set forth in section 13.4.   The Company shall indemnify members, managers, employees and agents when the requirements of Nevada Revised Statutes 86.431(1) (generally, regarding successful defense of actions) have been met.

13.6   Indemnification Funding; Insurance.   The Company shall fund the indemnification obligations provided by Section 8.3 in such manner and to such extent as the members may from time to time deem proper.   The members may cause the Company to maintain insurance coverage to provide for any expenses of indemnification of the Company.

13.7   Anticipated Transactions.   It is anticipated that the members and managers will have other legal and financial relationships.   Representatives of this Company, along with representatives of other entities, may from time to time participate

11

in the joint development of contracts and transactions designed to be fair and reasonable to each participant and to afford an aggregate benefit to all participants. Therefore, it is anticipated that this Company will desire to participate in such contracts and transactions and, after ordinary review for reasonableness, that the participation of the Company in such contracts and transactions may be authorized by the members, subject to the requirements regarding transactions with interested members, managers and employers as stated in the articles of organization.

13.8   Gender and Number.  Whenever the context requires, the gender of all words used herein shall include the masculine, feminine and neuter, and the number of all words shall include the singular and plural thereof.

13.9   Articles and Other Headings.  The articles and other headings contained in this Operating Agreement are for reference purposes only and shall not affect the meaning or interpretation.

13.10  Reimbursement of Managers and Members.  Managers and members shall receive reimbursement for expenses reasonably incurred in the performance of their duties.

13.11  Document Copies.  Except where otherwise limited by law, any photocopy, facsimile copy, or other reliable reproduction of any writing may be substituted for the original writing or for any original signature affixed thereto for any Company business purpose (including, without limitation, notices and consents) for which the original could be used, provided that the copy or reproduction is a complete and accurate reproduction of the entire original writing.

## 14. AMENDMENTS

This Operating Agreement may be altered, amended, restated, or repealed and a new Operating Agreement may be adopted by a majority vote of the equity interests of the members, after notice and opportunity for discussion of the proposed alteration, amendment, restatement, or repeal.

12

## CERTIFICATION

THE UNDERSIGNED, being the sole member of PRO-TECT SECURITY SERVICES, LLC, hereby evidences the adoption and ratification of the foregoing Operating Agreement of the Company.

EXECUTED by the sole member on the date indicated.

HARMONY ASSET MANAGEMENT, LP.

February 25, 2009
Date

By: L. BONLIE, General Partner

13

**EXHIBIT A**

**PRO-TECT SECURITY SERVICES, LLC**

<u>ORIGINAL CONTRIBUTION OF ASSETS</u>
(Per Article 5 of the Operating Agreement)

| MEMBER | ASSETS CONTRIBUTED | PERCENTAGE OF INTEREST |
|---|---|---|
| HARMONY ASSET MANAGEMENT, L.P. | $1,000 | 100% |

14

# EXHIBIT 14

**Membership Certificate of Pro-Tect Security, LLC**

# EXHIBIT 14

ORGANIZED UNDER THE LAWS OF
THE STATE OF NEVADA

Membership Certificate

PRO-TECT SECURITY SERVICES, LLC

A LIMITED LIABILITY COMPANY

UNITS

100%

NO.

CERTIFICATE NO.

**This Certifies that**

is the owner of ..... One Hundred Percent (100%) .................................... units of the above named

*Limited Liability Company transferable only on the books of the Company by the holder hereof in person or by duly authorized*

*Attorney upon surrender of this Certificate properly endorsed. This transfer of the units in this Limited Liability Company is subject*

*to restrictions set forth in the Limited Liability Company Operating Agreement and the transfer of the units and/or ownership rights may be*

*effected only upon the unanimous consent of members or compliance with any provision provided in the Operating Agreement.*

*In Witness Whereof, the said Limited Liability Company has caused this Certificate to be executed*

*on its behalf by its duly authorized manager(s),*

*member(s), officer(s), or agent(s).*

This ......... 25th ............... day ......... of .... February ......... A.D. 20 .. 2009

_____  MANAGER

_____  MANAGER

# EXHIBIT 15

**Organizational Meeting Minutes of the Members of Pro-Tect Security and 2010 Annual Meeting of the Members of Pro-Tect Security**

# EXHIBIT 15

ORGANIZATIONAL MEETING MINUTES

OF THE MEMBERS OF

**PRO-TECT SECURITY SERVICES, LLC**

The organizational meeting of PRO-TECT SECURITY SERVICES, (the "Company") was held at 3511 South Eastern Avenue, Las Vegas, Nevada on February 25, 2009, at the hour of 10:00 a.m., pursuant to call and waiver of notice by all the members of the Company. The following member, being the sole member of the Company, was present at the meeting:

████, General Partner of ████████████████

████ was elected chairman of the meeting and ████ was elected secretary of the meeting to record the minutes thereof.

The chairman then reviewed the Articles of Organization which had been prepared by counsel for the Company, executed by the members and duly filed with the Secretary of State of Nevada and submitted to the meeting a copy of the articles as filed with the Secretary of State on February 25, 2009. Upon motion duly made, seconded, and unanimously carried, it was:

RESOLVED, that the said Articles of Organization be approved and that they be placed in the Company book.

It was announced that the members have offered to transfer cash, property, or services, as stated in the proposed Exhibit A to the Operating Agreement as the original contribution to the Company. Upon motion duly made, seconded and unanimously carried, it was:

RESOLVED, that acceptance of the offer of the persons named in the proposed Exhibit A to the Operating Agreement and described therein is in the best interest of the Company, and necessary for carrying out the Company's business, and in the judgment of the members, the cash, property, or services proposed to be transferred to the Company are reasonably worth the value demanded therefor; and the same is accepted and that, upon receipt of the consideration indicated above, the appropriate managers (as stated in the Operating Agreement) are authorized to issue membership certificates in appropriate amounts to the persons specified in proposed Exhibit A to the Operating Agreement; and

FURTHER RESOLVED, that said Exhibit A be incorporated into the Operating Agreement of the Company, upon approval and execution of the Operating Agreement of the Company.

The chairman then presented to the meeting a form of Operating Agreement for the regulation of the Company.  The provisions thereof were then discussed by the members.  Upon motion duly made, seconded, and unanimously carried, it was:

RESOLVED, that the Operating Agreement discussed at this meeting be approved as the Operating Agreement of the Company, to stand until further amendment thereof, as provided therein; and that, upon proper execution of the Operating Agreement by all of the members, a copy thereof be placed in the Company book.

At this point, all of the members of the Company executed the Operating Agreement of the Company, and indicated the date of their signature.

The chairman stated that the next item of business to be considered was the designation of the number of managers, and the election of such managers pursuant to Article 10 of the Operating Agreement.  These items were discussed by the members.  Upon motion duly made, seconded and unanimously carried, it was:

RESOLVED, that the manager to hold office until the next annual meeting of members, subject to the provisions of the Operating Agreement shall be:

█████████████

In order to provide for payment of the expenses of organization of the Company, on motion duly made, seconded and unanimously carried, it was:

RESOLVED, that the managers are authorized and directed to pay the expenses of the Company, including attorneys' fees, and to reimburse the persons who have made disbursements thereof.

FURTHER RESOLVED, that beginning with the month in which the Company first does business, the Company shall adopt a system of amortizing organization expenditures ratably over a period of sixty (60) months in accordance with Section 709(b) of the Internal Revenue Code.

The chairman then stated that it would be desirable to have a resolution authorizing the managers to negotiate contracts, leases and other arrangements on behalf of the Company in connection with the operation of the business, including the purchase of or acquisition of leases for the rental or purchase of office equipment and

Organizational Minutes –       2

supplies for the Company.  Thereupon, on motion duly made, seconded and unanimously carried, it was:

> RESOLVED, that the managers of the Company are authorized to negotiate contracts, leases, and other arrangements for and on behalf of the Company in connection with the operation of the business, including the negotiation of leases or contracts for the rental or purchase of office equipment and supplies.

A general discussion was then held concerning the commencement of business operations of the Company.  It was decided that business would commence immediately.  It was agreed that regular meetings shall not be required unless so required by future resolution of the members.  Special meetings may be periodically called, as provided in the Operating Agreement.  Upon motion duly made, seconded and unanimously carried, it was:

> RESOLVED, that the managers are hereby authorized to do any and all things necessary to conduct the ordinary course of the business of the Company, as set forth in the Articles of Organization.

The chairman then explained the necessity to designate a depository for the funds of the Company and the opening of an appropriate Company bank account.  Thereupon, on motion duly made, seconded and unanimously carried, it was:

> RESOLVED, that _____ be designated as a depository for the funds of the Company, and that the financial managers as designated from time to time shall be the authorized agents of the Company for the purpose of any business of the Company at said bank.

Organizational Minutes -     3

There being no further business to come before the members, the meeting was thereupon adjourned.

Dated this 25th day of February, 2009.

███████████ Secretary
of the Meeting

Approved:

███████████ Chairman of the Meeting

Organizational Minutes -        4

**WAIVER AND APPROVAL**

       The undersigned member has read the minutes of the organizational meeting held on February 25, 2009, and hereby waives notice of the date, place, and time of the meeting, and further ratifies and approves all actions taken at said meeting.

February 25, 2009
Date

████████ General Partner

Organizational Minutes -            5

**MINUTES OF THE ANNUAL MEETING OF THE MEMBERS**

**OF**

**PRO-TECT SECURITY SERVICES, LLC**

Pursuant to the Operating Agreement of PRO-TECT SECURITY SERVICES, LLC (the "company"), the annual meeting of the members of the company was held at 3511 South Eastern Avenue, Las Vegas, Nevada, on January 12, 2010, at the hour of 6:00 p.m.  The following, constituting the sole member of the company, was present:

███████, General Partner of ██████████████████████

███████ was elected to serve as chairman of the meeting and ███████ to serve as the secretary.

The chairman noted that approval of the minutes of the previous meeting had been obtained.  Accordingly, the reading of the prior meeting's minutes was dispensed with.

The chairman next gave a report of the financial condition of the company for the prior year, which reports were discussed and considered.

The first item of business to come before the meeting was a review of the activities of the company since the last meeting of the members.  After consideration thereof, it was unanimously

RESOLVED, that all acts and deeds of the individual managers of the company performed since the last meeting of the managers on behalf of the company be, and the same are hereby confirmed, ratified and approved whether or not such acts and deeds are recorded in the minutes of the company.

The next item of business to come before the meeting was the election of the managers of the company.  Upon motion duly made and seconded, the following persons were unanimously elected to serve as the managers of the company for the ensuing year or until their successors are elected and accept their appointment:

███████████

There being no further business to come before this meeting, the meeting was adjourned.

█████████ Secretary

APPROVED:

█████████ Chairman

**WAIVER OF NOTICE AND CONSENT
TO HOLD THE ANNUAL MEETING
OF THE MEMBERS OF
PRO-TECT SECURITY SERVICES, LLC**

The undersigned, being the sole member of PRO-TECT SECURITY SERVICES, LLC by signing this waiver and consent, hereby waives any right to notice of the time, place and purpose of the annual meeting of the members and consents to the business transacted at such meeting as set forth in the foregoing minutes, and further ratifies, approves, and renders valid any irregularity or defect in the annual meeting.

DATED this 12th day of January, 2010.

By_____
                General Partner

# EXHIBIT 16

**Last Will and Testament of Leslie Bonlie-Bruno**

# EXHIBIT 16

# LAST WILL AND TESTAMENT

## OF

## LESLIE BONLIE-BRUNO

I, LESLIE BONLIE-BRUNO, a resident of Clark County, State of Nevada, hereby make my will:

1.  **PRIOR WILLS.** I revoke all prior wills and codicils previously made by me.

2.  **PERSONAL.** I am not married. I have one (1) child, ████████ ██████████.

3.  **PAYMENT OF DEBTS, EXPENSES AND TRANSFER TAXES.** By the provisions of a trust which I created earlier this _____ day of _____, 2010, the successor Trustee of such trust is empowered to use properties of such trust for the purpose of paying my debts and expenses, including those of my last illness, burial and administration of my estate, and all transfer taxes arising at or because of my death.

My Personal Representative shall cooperate with the Trustee in determining the source from which debts, expenses and death taxes are paid, using assets of my estate or properties of such trust, or both, to the extent appropriate.

4.  **PERSONAL AND HOUSEHOLD EFFECTS.** I may provide for the disposition of certain specific items of tangible personal property, consisting of personal and household effects, by a writing executed pursuant to the provisions of Nevada Revised Statutes, Section 133.045. Any property not disposed of by such writing shall become part of the remainder of my estate to be disposed of under its provisions. All property not disposed of by such list shall be distributed outright to Trustor's living child.

5.  **REMAINDER TO LIVING TRUST.** I confirm the living trust referred to in Section 3 hereof. I give, devise and bequeath all the rest, residue and remainder of my properties, now known or hereafter discovered and wheresoever situated, to the Trustee of such trust, to be administered and distributed pursuant to the provisions thereof. If for any reason the trust is not in existence at my death and I have not created a subsequent trust or have otherwise provided for some other disposition of my properties, such as by subsequent will or codicil, my properties shall be distributed by

1

DURHAM
JONES &
PINEGAR

my Personal Representative under the provisions of the trust referred to in Section 3 as it last existed, as if it were in existence at my death.

6. **NOMINATION OF PERSONAL REPRESENTATIVE.** I nominate ▉▉▉▉▉▉ to be the Personal Representatives of my estate. If any of ▉▉▉▉▉▉ or ▉▉▉▉▉▉ do not serve as Personal Representatives, I nominate ▉▉▉▉▉▉ to be the Personal Representative of my estate with the survivors of them. No bond shall be required of any Personal Representative. If more than two Personal Representatives are serving at any one time, all actions of Trustees must be by majority vote.

7. **POWERS OF PERSONAL REPRESENTATIVE.** In the administration of my estate, the Personal Representative shall have all powers conferred upon my Personal Representative by law, including, but not by way of limitation, those powers enumerated in Nevada Revised Statutes Section 143.010, et seq. Furthermore, my Personal Representative may sell property at public auction or private sale without notice. However, my Personal Representative must petition the Court for return of sale and obtain confirmation thereof.

8. **ADMINISTRATIVE PROVISIONS.**

(a)    Severability.  If any portion of this will shall be determined to be unenforceable, the remaining portions shall, nevertheless, be carried into effect to the extent that my overall intentions as expressed herein can be accomplished.

(b)    Number, Gender, Definitions.  Wherever used herein, the terms "child", "children" and "descendants" include an adopted child, adopted children and adopted descendants, as well as natural child, natural children and natural descendants, and include descendants of adopted child, adopted children and adopted descendants.  Where applicable, the masculine includes the feminine and vice versa.

(c)    Provisions for Others.  Except as otherwise provided herein, I have intentionally and with full knowledge omitted to provide for my heirs, including any person or persons who may hereafter become my heir or heirs.

(d)    No Contest Clause.  If any beneficiary under this Will, in any manner, directly or indirectly, contests or attacks this will or any of its provisions, any share or interest in my estate given to that contesting beneficiary under this will is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary had predeceased me.

2

DURHAM
JONES &
PINEGAR

**IN WITNESS WHEREOF,** I have hereunto subscribed my name and cause this my will, consisting of four (4) typewritten pages, including the attestation clause and self-proving affidavit, to be executed, published and declared at Las Vegas, Nevada, this 7th day of October, 2010.

_Leslie Bonlie-Bruno_
LESLIE BONLIE-BRUNO

THE FOREGOING will consisting of four (4) typewritten pages, including this attestation clause and the following self-proving affidavit, was subscribed, published and declared by the testator, as her last will in the presence of us and each of us, who at her request, in her presence and the presence of each other subscribe our names as attesting witnesses, and we declare that at the time of the execution of this instrument the said testator, according to our best knowledge and belief was of sound mind and disposing memory and under no constraint.

Executed at Las Vegas, Nevada, this 7th day of October 2010.

Address: 10785 West Twain Avenue, Suite 200
Las Vegas, Nevada 89135

_Donna Whitfield_     Address: 10785 West Twain Avenue, Suite 200
Las Vegas, Nevada 89135

STATE OF NEVADA        )
                       ) ss.
COUNTY OF CLARK        )

Then and there personally appeared the within-named, _____ and _Donna Whitfield_, who, being duly sworn, depose and say: That they witnessed the execution of the within will of the within-named testator, LESLIE BONLIE-BRUNO, that the testator subscribed the will and declared the same to be her last will and testament in their presence; that they thereafter subscribed the same as witnesses in the presence of the testator and in the

3

DURHAM
JONES &
PINEGAR

presence of each other and at the request of the testator; that the testator at the time of the execution of the will appeared to them to be of full age and of sound mind and memory, and that they make this affidavit at the request of the testator.

_Donna Whitfield_

SUBSCRIBED and SWORN to before me this
7th day of October, 2010.

_Sandy M. Yamashiro_
NOTARY PUBLIC

SANDY YAMASHIRO
Notary Public State of Nevada
No. 98-49251-1
My appt. exp. Aug. 8, 2014

4

DURHAM
JONES &
PINEGAR

# DISPOSITION OF PERSONAL

## AND

## HOUSEHOLD EFFECTS OF

## LESLIE BONLIE-BRUNO

In accordance with Section 4 of my will dated the 7th day of October, 2010, and pursuant to Nevada Revised Statutes, Section 133.045, I give the following items of tangible personal property (other than money, evidence of indebtedness, documents of title, securities and property used in a trade or business) to the following individuals:

<u>INDIVIDUAL</u>                          <u>ITEMS</u>

DATED this _____ day of _____.


_____
LESLIE BONLIE-BRUNO

5

DURHAM
JONES &
PINEGAR

## ASSIGNMENT OF PERSONAL PROPERTY

The Trustor hereby transfers the following assets to the Trustee as part of the trust estate of the ▮▮▮▮ TRUST dated the 7th day of October, 2010:

All of Trustor's personal and household effects, including, but not limited to household furniture and furnishings, books, works of art, jewelry, silverware, the contents of any safety deposit boxes (and Trustor hereby grants the successor Trustee access to such boxes) and all remaining tangible personal property.

DATED this 7th day of October, 2010.

*Leslie Bonlie-Bruno*

LESLIE BONLIE-BRUNO, Trustor

DURHAM
JONES &
PINEGAR

# EXHIBIT 17

### First Codicil to the Will of Leslie Bonlie-Bruno

# EXHIBIT 17

# FIRST CODICIL TO THE WILL OF

# LESLIE BONLIE-BRUNO

I, LESLIE BONLIE-BRUNO, a resident of Clark County, Nevada, hereby make this first codicil to my will.

1.      Section 5 of my will which refers to the ████TRUST" shall mean such trust dated October 7, 2010, as amended by a first amendment to such trust dated this 30th day of November, 2010.

2.      I hereby ratify and confirm my will dated October 7, 2010, as amended by this first codicil.

IN WITNESS WHEREOF, I have hereunto subscribed my name and caused this first codicil to my will, consisting of two (2) typewritten pages, including the attestation clause and self-proving affidavit, to be executed, published and declared at Las Vegas, Nevada, this *30th* day of *November*          , 2010.

_Leslie Bonlie-Bruno_
LESLIE BONLIE-BRUNO

THE FOREGOING codicil, consisting of two (2) typewritten pages, including this attestation clause and the following self-proving affidavit, was subscribed, published and declared by the testator as the first codicil to her will in the presence of us and each of us, who at her request, in her presence and the presence of each other subscribed our names as attesting witnesses, and we declare that at the time of the execution of this instrument the said testator, according to our best knowledge and belief was of sound mind and disposing memory and under no constraint.

Executed at Las Vegas, Nevada this *30th* day of *November*      , 2010.

_[signature]_                            Address:  10785 West Twain Avenue, Suite 200
                                                  Las Vegas, Nevada  89135

1

DURHAM
JONES &
PINEGAR

33433v1

_Joan Burtnett_     Address:  10785 West Twain Avenue, Suite 200
                                                    Las Vegas, Nevada  89135

STATE OF NEVADA       )
                    ) ss.
COUNTY OF CLARK     )

Then and there personally appeared the within named
_Robert L. Bolick_ and _Joan Burtnett_ who, being duly
sworn, depose and say: that they witnessed the execution of the within first codicil to
the will of the within named testator, that the testator subscribed the first codicil to the
will and declared the same to be a codicil to her will in their presence; that they
thereafter subscribed the same as witnesses in the presence of the testator and in the
presence of each other and at the request of the testator; that the testator at the time of
the execution of the codicil to the will appeared to them to be of full age and of sound
mind and memory and that they make this affidavit at the request of the testator.

SUBSCRIBED AND SWORN to before me this
_30th_ day of _November_ , 2010.

_Dena Logan_
NOTARY PUBLIC

DENA LOGAN
Notary Public State of Nevada
No. 92-0942-1
My appt. exp. Sept. 1, 2013

2

DURHAM
JONES &
PINEGAR

33433v1

# EXHIBIT 18

**Declaration/"Living Will"**

# EXHIBIT 18

## DECLARATION
## ("LIVING WILL")

If I should have an incurable and irreversible condition that, without the administration of life-sustaining treatment, will, in the opinion of my attending physician, cause my death within a relatively short time, and I am no longer able to make decisions regarding my medical treatment, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

IF YOU WISH TO INCLUDE THIS STATEMENT, YOU MUST INITIAL THE STATEMENT IN THE BOX PROVIDED:

Withholding or withdrawal of artificial nutrition and hydration may result in death by starvation or dehydration.  Initial this box if you want to receive or continue receiving artificial nutrition and hydration by way of the gastro-intestinal tract after all other treatment is withheld pursuant to this declaration.

[          ]

Signed this 7th day of October , 2010.

*Leslie Bonlie-Bruno*
LESLIE BONLIE-BRUNO
P. O. Box 60692
Las Vegas, Nevada  89160

The declarant voluntarily signed this writing in my presence.

*Donna Whitfield*
WITNESS
10785 WEST TWAIN AVENUE, SUITE 200
LAS VEGAS, NEVADA  89135

WITNESS
10785 WEST TWAIN AVENUE, SUITE 200
LAS VEGAS, NEVADA  89135

DURHAM
JONES &
PINEGAR

# EXHIBIT 19

**Durable Power of Attorney for Health Care Decisions**

# EXHIBIT 19

# DURABLE POWER OF ATTORNEY
# FOR HEALTH CARE DECISIONS

## WARNING TO PERSON EXECUTING THIS DOCUMENT

THIS IS AN IMPORTANT LEGAL DOCUMENT.  IT CREATES A DURABLE POWER OF ATTORNEY FOR HEALTH CARE.  BEFORE EXECUTING THIS DOCUMENT, YOU SHOULD KNOW THESE IMPORTANT FACTS:

1.  THIS DOCUMENT GIVES THE PERSON YOU APPOINT AS YOUR HEALTH-CARE AGENT ("HEALTH-CARE AGENT" OR "AGENT" or "ATTORNEY-IN-FACT") THE POWER TO MAKE HEALTH CARE DECISIONS FOR YOU.  THIS POWER IS SUBJECT TO ANY LIMITATIONS OR STATEMENT OF YOUR DESIRES THAT YOU INCLUDE IN THIS DOCUMENT.  THE POWER TO MAKE HEALTH CARE DECISIONS FOR YOU MAY INCLUDE CONSENT, REFUSAL OF CONSENT, OR WITHDRAWAL OF CONSENT TO ANY CARE, TREATMENT, SERVICE OR PROCEDURE TO MAINTAIN, DIAGNOSE OR TREAT A PHYSICAL OR MENTAL CONDITION. YOU MAY STATE IN THIS DOCUMENT ANY TYPES OF TREATMENT OR PLACEMENTS THAT YOU DO NOT DESIRE.

2.  THE PERSON YOU DESIGNATE IN THIS DOCUMENT HAS A DUTY TO ACT CONSISTENT WITH YOUR DESIRES AS STATED IN THIS DOCUMENT OR OTHERWISE MADE KNOWN OR, IF YOUR DESIRES ARE UNKNOWN, TO ACT IN YOUR BEST INTERESTS.

3.  EXCEPT AS YOU OTHERWISE SPECIFY IN THIS DOCUMENT, THE POWER OF THE PERSON YOU DESIGNATE TO MAKE HEALTH CARE DECISIONS FOR YOU MAY INCLUDE THE POWER TO CONSENT TO YOUR DOCTOR NOT GIVING TREATMENT OR STOPPING TREATMENT WHICH WOULD KEEP YOU ALIVE.

4.  UNLESS YOU SPECIFY A SHORTER PERIOD IN THIS DOCUMENT, THIS POWER WILL EXIST INDEFINITELY FROM THE DATE YOU EXECUTE THIS DOCUMENT, AND IF YOU ARE UNABLE TO MAKE HEALTH CARE DECISIONS FOR YOURSELF, THIS POWER WILL CONTINUE TO EXIST UNTIL THE TIME WHEN YOU BECOME ABLE TO MAKE HEALTH CARE DECISIONS FOR YOURSELF.

5.  NOTWITHSTANDING THIS DOCUMENT, YOU HAVE THE RIGHT TO MAKE MEDICAL AND OTHER HEALTH CARE DECISIONS FOR YOURSELF SO

1

DURHAM
JONES &
PINEGAR

LONG AS YOU CAN GIVE INFORMED CONSENT WITH RESPECT TO THE PARTICULAR DECISION.  IN ADDITION, NO TREATMENT MAY BE GIVEN TO YOU OVER YOUR OBJECTION, AND HEALTH CARE NECESSARY TO KEEP YOU ALIVE MAY BE STOPPED IF YOU OBJECT.

6.  YOU HAVE THE RIGHT TO REVOKE THE APPOINTMENT OF THE PERSON DESIGNATED IN THIS DOCUMENT TO MAKE HEALTH CARE DECISIONS FOR YOU BY NOTIFYING THAT PERSON OF THE REVOCATION ORALLY OR IN WRITING.

7.  YOU HAVE THE RIGHT TO REVOKE THE AUTHORITY GRANTED TO THE PERSON APPOINTED IN THIS DOCUMENT TO MAKE HEALTH CARE DECISIONS FOR YOU BY NOTIFYING THE TREATING PHYSICIAN, HOSPITAL OR OTHER PROVIDER OF HEALTH CARE ORALLY OR IN WRITING.

8.  THE PERSON DESIGNATED IN THIS DOCUMENT TO MAKE HEALTH CARE DECISIONS FOR YOU HAS THE RIGHT TO EXAMINE YOUR MEDICAL RECORDS AND TO CONSENT TO THEIR DISCLOSURE UNLESS YOU LIMIT THIS RIGHT IN THIS DOCUMENT.

9.  THIS DOCUMENT REVOKES ANY PRIOR DURABLE POWER OF ATTORNEY FOR HEALTH CARE.

10.  IF THERE IS ANYTHING IN THIS DOCUMENT THAT YOU DO NOT UNDERSTAND, YOU SHOULD ASK A LAWYER TO EXPLAIN IT TO YOU.

## 1. DESIGNATION OF HEALTH CARE AGENT.

Pursuant to the provisions of NRS 449.830, I, LESLIE BONLIE-BRUNO, do hereby designate and appoint the health-care agent named below as my attorney-in-fact to make health care decisions for me as authorized in this document.

Name:
Address:

Telephone:

## 2. CREATION OF DURABLE POWER OF ATTORNEY FOR HEALTH CARE.

By this document I intend to create a durable power of attorney by appointing the person designated above to make health care decisions for me.  This power of attorney shall not be affected by my subsequent incapacity.

2

DURHAM
JONES &
PINEGAR

### 3. GENERAL STATEMENT OF AUTHORITY GRANTED.

Except as indicated in Sections 4 or 6, in the event that I am incapable of giving informed consent with respect to health care decisions, I hereby grant to the health-care agent named above, full power and authority to make health care decisions for me, including, but not limited to:

(a)     To consent, refuse to consent, or to withdraw consent to any care, treatment, service, or procedure to maintain, diagnose, or treat a physical or mental condition.

(b)     To request, review, and receive any information, verbal or written, regarding my physical or mental health, including, but not limited to, medical and hospital records, and to execute any releases or other documents that may be required in order to obtain such information, and to disclose such information as my health-care agent deems appropriate.

(c)     To employ or discharge medical personnel including physicians, psychiatrists, dentists, nurses and therapists as my health-care agent shall deem necessary for my physical, mental and emotional well-being.

(d)     To consent to and authorize my admission to and discharge from a hospital, nursing home, or other institution, or to arrange for hospice or home care.

(e)     To communicate with my physician, health maintenance organization, and other health care providers, and act as my advocate to ensure that all appropriate medical services are provided to me by my HMO or other health care provider.  To enforce this power, my health-care agent is empowered to pursue administrative, court, and any other remedial approaches on my behalf.

(f)     My health-care agent, including each alternate designated herein, shall be considered my "personal representative" for health care disclosure under the Health Insurance Portability and Accountability Act regulations.  My health-care agent and each person designated as an alternate health-care agent herein shall have the right to receive personal information, to confer with medical care providers, and to be permitted visitation rights.

(g)     My health-care agent does not have the authority to enter into any arbitration agreements or execute any arbitration clauses in connection with admission to any health care facility, including any skilled nursing facility.

3

DURHAM
JONES &
PINEGAR

## 4.  SPECIAL PROVISIONS AND LIMITATIONS.

In exercising the authority under this durable power of attorney for health care, the authority of my health-care agent is subject to the following special provisions and limitations:

(a)  My health-care agent may not consent to my commitment or placement in a mental health treatment facility, convulsive treatment, psychosurgery, abortion, sterilization, or aversive intervention.

(b)  My health-care agent may not consent to experimental medical, biomedical or behavioral treatment, or my participation in any medical, biomedical or behavioral research program.

(c)  _____
_____
_____

## 5.  DURATION.

I understand that this power of attorney will exist indefinitely from the date I execute this document unless I establish a shorter time.  If I am unable to make health care decisions for myself when this power of attorney expires, the authority I have granted my health-care agent will continue to exist until the time when I become able to make health care decisions for myself.

(IF APPLICABLE)  I wish to have this power of attorney end on the following date: _____.

## 6.  STATEMENT OF DESIRES.

My health-care agent is authorized to act in my best interest, as my health-care agent may determine.  I specifically authorize my health-care agent to make decisions subject to the statements in this Section 6 that I have initialed.

(a)  I desire that my life be prolonged to the greatest extent possible, without regard to my condition, the chances I have for recovery or long-term survival, or the cost of the procedures.

As to 6(a): I ████████████████████████████████████████

4

DURHAM
JONES &
PINEGAR

(b)      If I am in a coma which my doctors have reasonably concluded is irreversible, I desire that life-sustaining or prolonging treatments be withheld or withdrawn, and that I be permitted to die naturally.

As to 6(b): I ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(c)      If I have an incurable or terminal condition or illness and there is no reasonable hope of my long-term recovery or survival, I desire that life-sustaining and prolonging treatments be withheld or withdrawn, and that I be permitted to die naturally.

As to 6(c): I ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(d)      Withholding or withdrawal of artificial nutrition and hydration may result in death by starvation or dehydration. I want to receive or continue receiving artificial nutrition and hydration by way of the gastro-intestinal tract after all other treatment is withheld.

As to 6(d): ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(e)      I do not desire treatment to be provided and/or continued if the burdens of the treatment outweigh the expected benefits. My health-care agent is to consider the relief of suffering, the preservation or restoration of functioning, and the quality as well as the extent of the possible extension of my life.

As to 6(e): ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(f)      I direct my attending physician to mercifully administer such medication to me as will alleviate any suffering I might experience regardless of whether such medication is highly addictive or may shorten my remaining life.

As to 6(f): ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(g)      If at all possible, I desire to die at home with appropriate medical, nursing, social, and emotional support and any necessary medical or other equipment needed to keep me comfortable. Alternatively, my health-care agent may choose hospice care, or care in a facility that he or she deems appropriate.

As to 6(g): I ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5

DURHAM
JONES &
PINEGAR

(h)     My health-care agent should discuss the specifics of any proposed decision regarding my medical care and treatment with me if I am able to communicate in any manner, even by blinking my eyes.  I ask that those involved in my medical care conduct themselves so as to maintain my dignity, regardless of my condition.

As to 6(h): I ███████████████████████████████████████████

(i)     Other or Additional Statements of Desires:

_____
_____
_____

## 7. UNIFORM ANATOMICAL GIFT ACT

You may choose to make a gift of all or part of your body after your death to a hospital, physician, or medical school for scientific, educational, therapeutic, or transplant purposes.  Such a gift is allowed by the Revised Uniform Anatomical Gift Act pursuant to NRS 451.500, et seq.

[ ██████ ]    I allow my agent to make a gift of all or part of my body after my death under the terms of the Revised Uniform Anatomical Gift Act subject to the following limitations, if any:

_____
_____
_____

[ ██████ ]    I do **NOT** permit my body to be used for scientific, medical, educational, therapeutic or transplant purposes after my death.

## 8. FUNERAL AND DISPOSITION OF REMAINS.

[ ████ ]    If I initialed the line next to this statement, my agent shall **NOT** have the power to make my funeral arrangements.

In compliance with NRS 451.600-451.715, as amended, if I have not initialed the line next to the previous statement, I hereby appoint my agent to make the arrangements for my funeral and authorize the distribution of my remains.  My specific instructions, if any, regarding my funeral are as follows:

_____
_____
_____

6

DURHAM
JONES &
PINEGAR

██████  I desire that my body be cremated.

██████  I desire that my body be buried.

### 9. APPOINTMENT OF SUCCESSOR HEALTH-CARE AGENT.

If the person appointed in Section 1 as my health-care agent should, at any time or for any reason, be unable or unwilling to make health care decisions for me, then I designate the following persons to serve as my health-care agents to make health care decisions for me as authorized in this document, such persons to serve in the order listed below:

A.   First Alternative Health-care Agent:

Name:   ████████████████
Address:

Telephone:  _____

If no named health-care agent (including an alternate) is available, able, and willing to serve, the desires expressed herein shall nevertheless remain in effect.

### 10. WAIVER OF CONFLICT OF INTEREST.

If my designated agent is my spouse or is one of my children, then I waive any conflict of interest in carrying out the provisions of this Durable Power of Attorney for Health Care that my spouse or child may have by reason of the fact that he or she may be a beneficiary of my estate.

### 11. CHALLENGES.

If the legality of any provision of this Durable Power of Attorney for Health Care is questioned by my physician, my agent or a third party, then my agent is authorized to commence an action for declaratory judgment as to the legality of the provision in question. The cost of any such action is to be paid from my estate. This Durable Power of Attorney for Health Care must be construed and interpreted in accordance with the laws of the State of Nevada.

### 12. NOMINATION OF GUARDIAN.

If, after execution of this Durable Power of Attorney for Health Care, incompetency proceedings are initiated for my person, I hereby nominate as guardian of my person for consideration by the court my agent(s) herein named, in the order named.

7

DURHAM
JONES &
PINEGAR

### 13. RELEASE OF INFORMATION.

I agree to, authorize and allow full release of information by any government agency, medical provider, business, creditor or third party who may have information pertaining to my health care, to my agent named herein, pursuant to the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191, as amended, and applicable regulations.

### 14. PRIOR DESIGNATIONS REVOKED.

I revoke any prior durable power of attorney for health care.

DATED this 7th day of October_____, 2010, at Las Vegas, Nevada.

_Leslie Bonlie-Bruno_
LESLIE BONLIE-BRUNO

STATE OF NEVADA        )
                       ) ss.
COUNTY OF CLARK        )

On this 7th day of ____October____, 2010, before me, a notary public, personally appeared LESLIE BONLIE-BRUNO personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, and acknowledged that she executed it. I declare under penalty of perjury that the person whose name is ascribed to this instrument appears to be of sound mind and under no duress, fraud, or undue influence.

_Sandy M. Yamashiro_
NOTARY PUBLIC

SANDY YAMASHIRO
Notary Public State of Nevada
No. 98-49251-1
My appt. exp. Aug. 8, 2014

8

DURHAM
JONES &
PINEGAR

# EXHIBIT 20

**Statutory Form Power of Attorney for Assets**

# EXHIBIT 20

# STATUTORY FORM POWER OF ATTORNEY

THIS IS AN IMPORTANT LEGAL DOCUMENT. IT CREATES A DURABLE POWER OF ATTORNEY FOR FINANCIAL MATTERS. BEFORE EXECUTING THIS DOCUMENT, YOU SHOULD KNOW THESE IMPORTANT FACTS:

1.  THIS DOCUMENT GIVES THE PERSON YOU DESIGNATE AS YOUR AGENT THE POWER TO MAKE DECISIONS CONCERNING YOUR PROPERTY FOR YOU. YOUR AGENT WILL BE ABLE TO MAKE DECISIONS AND ACT WITH RESPECT TO YOUR PROPERTY (INCLUDING YOUR MONEY) WHETHER OR NOT YOU ARE ABLE TO ACT FOR YOURSELF.

2.  THIS POWER OF ATTORNEY BECOMES EFFECTIVE IMMEDIATELY UNLESS YOU STATE OTHERWISE IN THE SPECIAL INSTRUCTIONS.

3.  THIS POWER OF ATTORNEY DOES NOT AUTHORIZE THE AGENT TO MAKE HEALTH CARE DECISIONS FOR YOU.

4.  THE PERSON YOU DESIGNATE IN THIS DOCUMENT HAS A DUTY TO ACT CONSISTENT WITH YOUR DESIRES AS STATED IN THIS DOCUMENT OR OTHERWISE MADE KNOWN OR, IF YOUR DESIRES ARE UNKNOWN, TO ACT IN YOUR BEST INTERESTS.

5.  YOU SHOULD SELECT SOMEONE YOU TRUST TO SERVE AS YOUR AGENT. UNLESS YOU SPECIFY OTHERWISE, GENERALLY THE AGENT'S AUTHORITY WILL CONTINUE UNTIL YOU DIE OR REVOKE THE POWER OF ATTORNEY OR THE AGENT RESIGNS OR IS UNABLE TO ACT FOR YOU.

6.  YOUR AGENT IS ENTITLED TO REASONABLE COMPENSATION UNLESS YOU STATE OTHERWISE IN THE SPECIAL INSTRUCTIONS.

7.  THIS FORM PROVIDES FOR DESIGNATION OF ONE AGENT. IF YOU WISH TO NAME MORE THAN ONE AGENT YOU MAY NAME A CO-AGENT IN THE SPECIAL INSTRUCTIONS. CO-AGENTS ARE NOT REQUIRED TO ACT TOGETHER UNLESS YOU INCLUDE THAT REQUIREMENT IN THE SPECIAL INSTRUCTIONS.

8.  IF YOUR AGENT IS UNABLE OR UNWILLING TO ACT FOR YOU, YOUR POWER OF ATTORNEY WILL END UNLESS YOU HAVE NAMED A SUCCESSOR AGENT. YOU MAY ALSO NAME A SECOND SUCCESSOR AGENT.

1

DURHAM
JONES &
PINEGAR

9.  YOU HAVE THE RIGHT TO REVOKE THE AUTHORITY GRANTED TO THE PERSON DESIGNATED IN THIS DOCUMENT.

10. THIS DOCUMENT REVOKES ANY PRIOR DURABLE POWER OF ATTORNEY.

11. IF THERE IS ANYTHING IN THIS DOCUMENT THAT YOU DO NOT UNDERSTAND, YOU SHOULD ASK A LAWYER TO EXPLAIN IT TO YOU.

## 1. DESIGNATION OF AGENT.

I, LESLIE BONLIE-BRUNO do hereby designate and appoint:

Name: ▮▮▮▮▮▮▮▮▮
Address: _____
_____

Telephone: _____

**and**

Name: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Telephone: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**and**

Name: ▮▮▮▮▮▮▮▮▮▮
Address: _____
_____

Telephone: _____

as my agent to make decisions for me and in my name, place and stead and for my use and benefit and to exercise the powers as authorized in this document.  If more than two agents are serving at any one time, all actions of Trustees must be by majority vote.

## 2. DESIGNATION OF ALTERNATE AGENT.

(You are not required to designate any alternative agent but you may do so.  Any alternative agent you designate will be able to make the same decisions as the agent designated above in the event that he or she is unable or unwilling to act as your agent.  Also, if the agent designated in Section 1 is your spouse, his or her designation as your agent is automatically revoked by law if your marriage is dissolved.)

2

DURHAM
JONES &
PINEGAR

If my agent is unable or unwilling to act for me, then I designate the following person(s) to serve as my agent as authorized in this document, such person(s) to serve in the order listed below:

A.   First Alternative Agent:

Name:
Address:

Telephone: _____

### 3. OTHER POWERS OF ATTORNEY.

This Power of Attorney is intended to, and does, revoke any and all prior Powers of Attorney for financial matters I have previously executed.

### 4. NOMINATION OF GUARDIAN.

If, after execution of this Power of Attorney, incompetency proceedings are initiated either for my estate or my person, I hereby nominate as my guardian or conservator for consideration by the court my agent herein named, in the order named.

### 5. GRANT OF GENERAL AUTHORITY.

I grant my agent and any successor agent(s) general authority to act for me with respect to the following subjects:

INITIAL each subject you want to include in the agent's general authority.  **If you wish to grant general authority over all of the subjects you may initial "All Preceding Subjects" instead of initialing each subject.**

Real Property
Tangible Personal Property
Stocks and Bonds
Commodities and Options
Banks and Other Financial Institutions
Safe Deposit Boxes
Operation of Entity or Business
Insurance and Annuities
Estate, Trusts and Other Beneficial Interests
Legal Affairs, Claims and Litigation
Personal Maintenance
Benefits from Governmental Programs or Civil or Military Service
Retirement Plans
Taxes

3

DURHAM
JONES &
PINEGAR

_____ **All Preceding Subjects**

## 6. GRANT OF SPECIFIC AUTHORITY.

My agent **MAY NOT** do any of the following specific acts for me **UNLESS** I have **INITIALED** the specific authority listed below:

**CAUTION:** Granting any of the following will give your agent the authority to take actions that could significantly reduce your property or change how your property is distributed at your death.

**INITIAL ONLY the specific authority you <u>WANT</u> to give your agent.**

Create, amend, revoke or terminate a family, living, irrevocable or revocable trust.

Exercise a power of appointment granted to me under a will or trust.

Make a gift, subject to the limitations of NRS and any special instructions in this Power of Attorney.

Create or change rights of survivorship.

Create or change a beneficiary designation.

Waive the principal's right to be a beneficiary of a joint and survivor annuity, including a survivor benefit under a retirement plan.

Exercise fiduciary powers that the principal has authority to delegate.

Disclaim or refuse an interest in property, including a power of appointment.

## 7. LIMITATION ON AGENT'S AUTHORITY.

An agent that is not my spouse **MAY NOT** use my property to benefit the agent or a person to whom the agent owes an obligation of support unless I have included that authority in the Special Instructions section below.

## 8. SPECIAL INSTRUCTIONS OR OTHER OR ADDITIONAL AUTHORITY GRANTED TO AGENT.

_____

_____

_____

4

DURHAM
JONES &
PINEGAR

### 9.  DURABILITY AND EFFECTIVE DATE.
(INITIAL the clause(s) that applies.)

**DURABLE.**  This Power of Attorney shall not be affected by my subsequent disability or incapacity.

**SPRINGING POWER.**  It is my intention and direction that my designated agent, and any person or entity that my designated agent may transact business with on my behalf, may rely on a written medical opinion issued by my primary care physician, or if I do not have a primary care physician, another licensed medical doctor stating that I am disabled or incapacitated, and incapable of managing my affairs, and that said written medical opinion shall establish whether or not I am under a disability for the purpose of establishing the authority of my designated agent to act in accordance with this Power of Attorney.

I wish to have this Power of Attorney become effective on the following date:
October 7, 2010

I wish to have this Power of Attorney end on the following date:

### 10.  THIRD PARTY PROTECTION.

Third parties may rely upon the validity of this Power of Attorney or a copy of it and the representations of my agent as to all matters relating to any power granted to my agent, and no person or agency who relies upon the representation of my agent, or the authority granted by my agent, shall incur any liability to me or my estate as a result of permitting my agent to exercise any power unless a third party knows or has reason to know this Power of Attorney has terminated or is invalid.

### 11.  RELEASE OF INFORMATION.

I agree to, authorize and allow full release of information, by any government agency, business, creditor or third party who may have information pertaining to my assets or income, to my agent named herein.

### 12.  SIGNATURE AND ACKNOWLEDGMENT.

YOU MUST DATE AND SIGN THIS POWER OF ATTORNEY.  THIS POWER OF ATTORNEY WILL NOT BE VALID UNLESS IT IS ACKNOWLEDGED BEFORE A NOTARY PUBLIC.

5

DURHAM
JONES &
PINEGAR

I sign my name to this Power of Attorney on this 7th day of
October _____, 2010, at Las Vegas, Nevada.

_Leslie Bonlie-Bruno_
LESLIE BONLIE-BRUNO

## CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

STATE OF NEVADA       )
                      )
COUNTY OF CLARK       )

On this 7th day of _October_, 2010, before me,
personally appeared LESLIE BONLIE-BRUNO, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person whose name is subscribed to
this instrument, and acknowledged that she executed it.  I declare under penalty of
perjury that the person whose name is ascribed to this instrument appears to be of
sound mind and under no duress, fraud or undue influence.

_Sandy M. Yamashiro_
NOTARY PUBLIC

```
SANDY YAMASHIRO
Notary Public State of Nevada
No. 98-49251-1
My appt. exp. Aug. 8, 2014
```

6

```
DURHAM
JONES &
PINEGAR
```

## IMPORTANT INFORMATION FOR AGENT

1.   YOUR DUTIES. When you accept the authority granted under this Power of Attorney, a special legal relationship is created between you and the principal (the person who has designated you as his or her agent). This relationship imposes upon you legal duties that continue until you resign or the Power of Attorney is terminated or revoked. You must:

(a)   Do what you know the principal reasonably expects you to do with the principal's property or, if you do not know the principal's expectations, act in the principal's best interest;

(b)   Act in good faith;

(c)   Disclose your identity as an agent whenever you act for the principal by writing or printing the name of the principal and signing your own name as "agent" in the following manner:

LESLIE BONLIE-BRUNO by ███████████████ and ███████████████ as Agent. If more than two agents are serving at any one time, all actions of Trustees must be by majority vote.

2.   ADDITIONAL DUTIES. Unless the Special Instructions in this Power of Attorney state otherwise, you must also:

(a)   Act loyally for the principal's benefit;

(b)   Avoid conflicts that would impair your ability to act in the principal's best interest;

(c)   Act with care, competence, and diligence;

(d)   Keep a record of all receipts, disbursements and transactions made on behalf of the principal;

(e)   Cooperate with any person that has authority to make health care decisions for the principal to do what you know the principal reasonably expects or, if you do not know the principal's expectations, to act in the principal's best interest; and

(f)   Attempt to preserve the principal's estate plan if you know the plan and preserving the plan is consistent with the principal's best interest.

7

DURHAM
JONES &
PINEGAR

3.    <u>TERMINATION OF YOUR AUTHORITY</u>.  You must stop acting on behalf of the principal if you learn of any event that terminates this Power of Attorney or your authority under this Power of Attorney.  Events that terminate a Power of Attorney or your authority to act under a Power of Attorney include:

(a)    Death of the principal;

(b)    The principal's revocation of the Power of Attorney or your authority;

(c)    The occurrence of a termination event stated in the Power of Attorney;

(d)    The purpose of the Power of Attorney is fully accomplished; or

(e)    If you are married to the principal, your marriage is dissolved.

4.    <u>LIABILITY OF AGENT</u>.  The meaning of the authority granted to you is defined in Nevada Revised Statutes.  If you violate this chapter or act outside the authority granted in this Power of Attorney, you may be liable for any damages caused by your violation.

**IF THERE IS ANYTHING ABOUT THIS DOCUMENT OR YOUR DUTIES THAT YOU DO NOT UNDERSTAND, YOU SHOULD SEEK LEGAL ADVICE.**

8

DURHAM
JONES &
PINEGAR