# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| TRADE SHOW SERVICES, LTD, | ) |
| Plaintiff(s), | ) Case No. 2:17-cv-01685-JAD-NJK |
| vs. | ) ORDER |
| INTEGRATED SYSTEMS IMPROVEMENT SERVICES, INC., et al., | ) (Docket Nos. 28, 40) |
| Defendant(s). | ) |

Pending before the Court is Plaintiff's motion to disqualify Defendant Integrated Systems Improvement Services, Inc.'s attorneys. Docket No. 28. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and Plaintiff's supplemental motion. Docket Nos. 28, 32, 39, 40. The Court finds this motion properly resolved without a hearing. *See* Local Rule 78-1. For the following reasons, the Court **DENIES** Plaintiff's motion to disqualify, and supplemental motion. Docket Nos. 29, 40.

## I. BACKGROUND

The instant case alleges breach of contract for failure to pay for security services provided by Plaintiff to Defendant. *See generally* Docket No. 1. The instant motion to disqualify Defendant's attorneys is based on an alleged conflict of interest between Defendant's attorneys' law firm, Durham Jones & Pinegar, P.C. ("DJP"), and Plaintiff's sole owner, Leslie Bruno. *See generally* Docket Nos. 28, 40. Ms. Bruno is a current client of DJP. *Id.* at 2; *see also* Docket No. 48 at 11. She retained DJP in

August 2010 to perform various estate planning services. Docket No. 47 at 44-63. From August 2010 to the present, DJP has performed the following services for Ms. Bruno: (1) created an asset protection trust in October 2010 (*Id.* at 150-162); (2) created a trust in October 2010 (*Id.*); (3) formed a limited partnership in September 2010 (*Id.* at 163-165); (4) formed a limited liability company in August 2010 (*Id.* at 166-186); (5) created a last will and testament and a living will in October 2010 (*Id.* at 214-220, 224-225); (6) created a codicil to said will in November 2010 (*Id.* at 221-223); (7) created a power of attorney for health care decisions and assets (*Id.* at 226-243); (8) created a prenuptial agreement in October 2010 (Docket No. 48 at 2-6; *see also* Docket No. 28 at 8-9); (9) drafted but did not complete various documents for another limited liability company owned by Ms. Bruno (Docket No. 32 at 6; *see also* Docket No. 47 at 187-202); (10) served as the registered agent for service of process for the aforementioned limited liability company until June 2016 (Docket No. 47 at 10); (11) served as the registered agent for service of process for Plaintiff until around January 2013 (*Id.* at 135-136); and (12) currently serves as the registered agent for service of process for the aforementioned limited partnership (Docket Nos. 28 at 10, 40-1).[1] In addition, Ms. Bruno has sought legal advice from DJP regarding various issues such as obtaining and sending copies of her trust to a third party and placement of real property into an asset held by her asset protection trust. Docket No. 48 at 27-41.

## II. STANDARDS

Whether an attorney should be disqualified is an issue of state law. *See Tate v. Univ. Medical Center*, 2016 WL 520951, at *1 (D. Nev. Feb. 5, 2016) (internal citation omitted). Attorneys practicing in this Court must comply with the Model Rules of Professional Conduct as adopted by the Supreme Court of Nevada, unless modified by this Court. *See* Local Rule IA 11-7. The applicable Nevada Rules of Professional Conduct are Rules 1.7 and 1.8. In relevant part, Rule 1.7 states: "...a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict

---

[1] Plaintiff's supplement includes an exhibit of a "reminder statement" for an invoice billed to Ms. Bruno by DJP for fees related to registered agent services. Docket No. 40-1 at 2-3. However, the statement does not indicate for which of Ms. Bruno's entities the fee is being charged. Therefore, the Court assumes the statement relates to Ms. Bruno's limited partnership; as both parties submit DJP no longer serves as the registered agent for the only two other entities for which it had previously served as the registered agent.

2

1 of interest exists if: (1) [t]he representation of one client will be directly adverse to another client; or (2) [t]here is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." In relevant part, Rule 1.8 states: "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules."

Motions to disqualify counsel are disfavored and are only granted when "absolutely necessary." *Switch Comm's Grp. v. Ballard*, 2011 U.S. Dist. LEXIS 98308, *5 (D. Nev. Aug. 31, 2011) (citing *United States v. Titan Pacific Constr. Corp.*, 637 F. Supp. 1556, 1562 (W.D. Wash. 1986)); *see also United States v. River Irr. Dist.*, 2006 U.S. Dist. LEXIS 95342, *17 (D. Nev. Mar. 10, 2006) (disqualifying an attorney is a "drastic measure"). "Courts are especially vigilant that such motions not be misused for the purpose of harassment, delay, or other tactical advantage." *Russell Road Food & Beverage, LLC v. Galam*, 2014 U.S. Dist. LEXIS 104905, *4 (D.Nev. July 31, 2014). "Because of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quotations and citations omitted). The party seeking disqualification bears the burden of proof. *See, e.g., Colyer v. Smith*, 50 F. Supp. 2d 966, 974 (C D. Cal. 1999).

Pursuant to Nevada law, the moving party bears the burden to prove that: (1) there is a reasonable possibility that some specifically identifiable impropriety occurred and (2) "the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." *Brown v. Eighth Judicial Dist. Court*, 14 P.3d 1266, 1269-70 (Nev. 2000).

In determining the first factor, the Court analyzes whether or not the relevant rules of professional conduct were violated. *See United States ex rel. Luke*, 2017 U.S. Dist. LEXIS 186894, at *9-13; *see also United States v. Fuechtener*, 2016 U.S. Dist. LEXIS 153338, at *5-12. In determining the second factor, the Court looks for a reasonable probability that the attorney against whom the motion to disqualify is made acquired any privileged or confidential information relevant to the litigation. *See Brown*, 14 P.3d 1266 at 1260.

Even in instances where confidential or privileged information has been obtained by the challenged attorney, the Court may consider "a host of other considerations, including the flagrancy of the attorney's conduct; [and] the sensitivity of the information and its relevance to the particular proceedings..." *Rebel Communs., LLC v. Virgin Valley Water Dist.*, 2011 U.S. Dist. LEXIS 21489, at *35-36 (D. Nev. Feb. 15, 2011).

### III. ANALYSIS

In the instant motion, Plaintiff submits that, as a result of DJP's representation of Ms. Bruno regarding her estate planning, prenuptial agreement, and other services, DJP obtained privileged and confidential information such as Ms. Bruno's net worth, her assets and their financial standing, the corporate structures of her various entities, and the distribution of her assets. Docket No. 28 at 2-3, 6, 8; *see also* Docket No. 47 at 3, 8-9. Plaintiff submits that such information "creates a conflict [under Rules 1.7, 1.8, and 1.10] and an unfair advantage for Defendant" because Defendant can use the information "to its advantage tactically during the litigation to form a strategy or defense in this matter." *Id.* at 2-3. A possible advantage, Plaintiff submits, would arise if Defendant asserts a counterclaim against Plaintiff, prevails, and Plaintiff has insufficient assets to pay Defendant, subsequently creating the opportunity for Defendant to assert claims for alter ego against Plaintiff and, thereby, exposing Ms. Bruno and her other assets to liability. *Id.* at 16, n.12. Plaintiff further submits that it is DJP's client because it is an asset of a trust created by DJP and because Ms. Bruno sought legal advice regarding Plaintiff. *Id.* at 11-15.

Defendant submits that DJP did not obtain confidential information regarding Plaintiff during the course of its representation of Ms. Bruno that is relevant to the instant case. Docket No. 32 at 2. Defendant submits that the potential for a conflict is a "multi-step speculation," as it has not asserted and is not aware of any counterclaims that could lead to exposing Ms. Bruno or her assets to liability. *Id.* at 3, 13-14. Defendant further submits that Plaintiff is not now and never was DJP's client by virtue of being an asset held in a trust created by DJP, and that DJP did not provide legal advice directly to or regarding Plaintiff. *Id.* at 9-13.

//
//

As a preliminary matter, the Court does not analyze whether or not Plaintiff is or was DJP's client. The Court acknowledges Plaintiff's submissions that Plaintiff is or was a client: (1) by virtue of its status as an asset held in a trust created by DJP, for which Ms. Bruno sought advice; (2) because DJP served as a registered agent for Plaintiff at some point; or (3) by virtue of Ms. Bruno's subjective belief that DJP represented "her, her companies, her Trusts, and her assets." Docket No. 28 at 11-15. The Court also acknowledges Defendant's submissions that Plaintiff is not, and never was, DJP's client because it never sought legal advice from DJP and, even if Plaintiff was considered a client based on DJP's service as its registered agent, "that service ended years ago." Docket No. 32 at 9-13. The resolution of this issue, however, does not affect the Court's analysis of whether a conflict of interest warrants DJP's disqualification. Therefore, the Court proceeds under the assumption that Plaintiff was, at one time, DJP's client.

In determining the first factor, the Court finds Plaintiff has not met its burden under Rules 1.7(a)(1), 1.7(a)(2), or 1.8(b). Under Rule 1.7(a)(1), the representation of one client is directly adverse to another client when the interests of both clients are incompatible such that the success of one implies an injury to the other. Plaintiff submits that DJP knows privileged and confidential financial information about Plaintiff, Ms. Bruno, and Ms. Bruno's other assets and business entities. Docket No. 28 at 2, 6-9. However, the only issue in the instant case is whether or not Defendant paid Plaintiff money allegedly owed for security services pursuant to a contract between the two parties. Docket Nos. 1, 28 at 3-4. Although Ms. Bruno is the President and sole owner and shareholder of Plaintiff (Docket No. 28 at 2), she is separate and distinct from Plaintiff. *Bermuda Rd. Props., LLC v. EcoLogical Steel Sys.*, 2017 U.S. LEXIS 29768, at *7-8 (D. Nev. Mar. 1, 2017) (noting that Nevada recognizes that corporations are generally treated as separate legal entities from their shareholders). Interest in Ms. Bruno or her assets' financial holdings is not a polar opposite of Plaintiff's interests such that Plaintiff's interests in the instant case are directly adverse to Ms. Bruno's interests as represented by DJP. For example, if Defendant was to prevail in the instant case, any adverse effects would be imputed onto Plaintiff, not onto Ms. Bruno or her assets held by her trusts. The mere fact that Ms. Bruno likely benefits from or is injured by the financial status of Plaintiff because she is the sole owner is immaterial given that Plaintiff is a corporation. *See Russo v. Lopez*, 2012 U.S. Dist. LEXIS 32414, at *7-8 (D. Nev. Mar. 12,

2012) (acknowledging that "a corporation is a separate legal entity from its shareholders and, thus, 'injury to the corporation is not cognizable as injury to the shareholders...'") (internal citation omitted).

Moreover, the potential of a conflict pursuant to Rule 1.7(a)(2) as submitted by Plaintiff is far too attenuated to rise to the level of a "significant risk" that would materially limit DJP's representation of Ms. Bruno. While all potential conflicts are inherently hypothetical, to constitute a "significant risk," they must nonetheless reside in the realm of realistic possibilities. The potential conflict Plaintiff submits would require: (1) Defendant to assert a counterclaim; (2) Defendant to prevail on that counterclaim; (3) Plaintiff to be unable to pay the judgment; (4) Defendant to pursue a claim to pierce Plaintiff's corporate veil; (5) Defendant to prevail on piercing the corporate veil; and (6) attaching judgment to Ms. Bruno and her assets. The Court finds this scenario insufficient to constitute a significant risk. Moreover, DJP has represented to the Court that, if Defendant asserts any claims to pierce Plaintiff's corporate veil, it will withdraw its representation of Defendant. Docket No. 32 at 3, 14.

Rule 1.8 is a prohibitive rule and, therefore, is relevant once an attorney actually uses information related to the representation of a client to that client's disadvantage without having obtained the client's consent. Plaintiff presents no evidence that DJP has used information obtained from its representation of Ms. Bruno to her disadvantage in the instant case. Therefore, the Court finds that Rule 1.8 does not apply to the instant motion.

In determining the second factor, the Court finds that Plaintiff has not met its burden. The Court recognizes the probability that financial information regarding Plaintiff is likely to have been provided by Ms. Bruno to DJP to assist in creating the various estate planning vehicles and her prenuptial agreement. However, as previously discussed, information related to Ms. Bruno's personal and business assets, including Plaintiff, is not relevant as to whether Plaintiff and Defendant entered into a contract or whether Defendant breached that contract. Additionally, the Court is mindful of Defendant's right to retain the counsel of its choice. *United States v. Fuechtener*, 2016 U.S. Dist. LEXIS 153338, at *11.

In balancing the equities, the Court finds Plaintiff has failed to provide sufficient facts warranting the "drastic measure" of disqualification. *See id.* at *4; *see also Brown*, 14 P.3d 1266 at 1272 (finding that no conflict of interest was imputed to an attorney both because the moving party "cannot prove by

a reasonable probability that [the challenged attorney] actually acquired confidential information...and because the 'equities' do not favor disqualification."); *see also Rebel Communs.*, 2011 U.S. Dist. LEXIS 21489, at *35-36.

## IV. CONCLUSION

For the aforementioned reasons, the Court finds that Plaintiff has failed to meet its burden to prevail on its motion to disqualify Defendant's attorneys. Docket Nos. 28, 40. Accordingly, the Court **DENIES** Plaintiff's motions. *Id.*

IT IS SO ORDERED.

DATED: March 14, 2018

_____
NANCY J. KOPPE
United States Magistrate Judge