UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Trade Show Services, Ltd., dba Pro-Tect Security Services, <br><br> Plaintiff <br><br> v. <br><br> Integrated Systems Improvement Services, Inc., dba Special Intelligence Service, <br><br> Defendant | Case No.: 2:17-cv-01685-JAD-NJK <br><br> **Order Overruling Objection to Magistrate Judge's Order Denying Motion to Disqualify** <br><br> [ECF No. 52] |

Trade Show Services, Ltd. contends that it provided security and executive-protection services under a subcontract with Integrated Systems Improvement Services, Inc. during the 2015 development of the All Net Arena and Resort in Las Vegas, Nevada. Trade Show alleges that Integrated Systems failed to pay for the protection services that it provided, so it sues Integrated Systems for breach of contract, breach of the implied covenant of good faith and fair dealing and, alternatively, unjust enrichment.[1]

Integrated Systems hired the law firm of Durham, Jones & Pinegar, P.C. (the Firm) to defend it in this case. Trade Show moved to disqualify the Firm, arguing that a concurrent conflict of interest exists because Trade Show is the Firm's client, too.[2] Trade Show theorized that it has an attorney-client relationship with the Firm because Trade Show's sole shareholder, Leslie Bruno, is a client of the Firm and Trade Show is an asset of a Nevada asset-protection trust that the Firm created for Bruno, which Trade Show contends is also the Firm's client.

---

[1] ECF No. 18 (first-amended complaint).

[2] ECF Nos. 28 (motion), 40 (supplement).

Integrated Systems responded that Trade Show is not the Firm's client, and even it if were, Trade Show has not met its burden to show that a concurrent conflict of interest exists under Nevada law.[3]

Magistrate Judge Nancy Koppe denied the motion.[4] She found that whether Trade Show is the Firm's client did not affect her analysis of whether a conflict of interest warrants disqualifying the Firm, so she assumed without deciding that Trade Show "was, at one time," the Firm's client.[5] But because she concluded that Trade Show had failed to meet its burden to show that a concurrent conflict of interest exists under Nevada law, she denied the disqualification motion.[6]

Trade Show timely objects, arguing that Judge Koppe's decision is clearly erroneous because she misapplied the facts to Nevada's law governing concurrent conflicts of interest.[7] Integrated Systems maintains that Judge Koppe committed no error and that Trade Show's objection is moot because the Firm no longer represents Integrated Systems in this case.[8] I find that Trade Show's objection is not moot, review Judge Koppe's order for clear error, and affirm.

## Discussion

**A.     Standard for reviewing a magistrate judge's final determination.**

"A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1-3, when it has been shown the magistrate judge's order is

---

[3] ECF No. 32.
[4] ECF No. 51.
[5] *Id.* at 5.
[6] *Id.* at 3, 5–7.
[7] ECF No. 52 (objection).
[8] ECF No. 56.

2

clearly erroneous or contrary to law."[9]  "The district judge may affirm, reverse, or modify, in whole or in part, the magistrate judge's order.  The district judge may also remand the matter to the magistrate with instructions."[10]  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure."[11]  The magistrate judge's ruling must be overturned if, "after reviewing the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed."[12]

**B.     Trade Show's objection is not moot.**

Integrated Systems argues that I need not consider Trade Show's objection because its "disqualification motion is moot."[13]  Integrated Systems explains that after Judge Koppe denied that motion, attorney Michael Rawlins left the Firm, joined another, and took Integrated Systems with him as a client.  The Firm's last task in this case was to help Rawlins on Integrated Systems' response to Trade Show's objection.  Integrated Systems argues that because of this subsequent event, Rawlins's representation of Integrated Systems against Trade Show is now governed by Rule 1.9(c) of the Nevada Rules of Professional Conduct—not Rules 1.7 and 1.8.  However, Integrated Systems provides no authority for its assertion that Rawlins's departure from the Firm renders Trade Show's objection moot, and I find none.

Federal courts must not "give opinions upon moot questions or abstract propositions, or . . . declare principles or rules of law [that] cannot affect the matter in issue in the case before

---

[9] Nev. L.R. IB 3-1(a).
[10] *Id.* at 3-1(b).
[11] *United States v. Desage*, 229 F. Supp. 3d 1209, 1213 (D. Nev. 2017) (quotation omitted).
[12] *United States v. Silverman*, 861 F.2d 571, 576–77 (9th Cir. 1988).
[13] ECF No. 56 at 2–4.

3

it."[14]  But Trade Show's objection to Judge Koppe's order is not moot.[15]  Rule 1.7 governs a lawyer's responsibilities to current *and former clients*.[16]  The issues of whether the Firm's conflicts of interest are imputed to Rawlins, and whether those imputed conflicts warrant his disqualification, are thus still live, so I address the merits of Trade Show's objection.

**C.	The order denying the disqualification motion was not clearly erroneous or contrary to law.**

Federal courts apply state law when deciding disqualification issues.[17]  Courts in this district look to the Nevada Rules of Professional Conduct as adopted and interpreted by the Nevada Supreme Court to determine whether to disqualify an attorney.[18]  As the Nevada Supreme Court explained in *Brown v. Eighth Judicial District Court*, courts deciding disqualification motions face the "delicate and sometimes difficult task of balancing competing interests: the individual right to be represented by counsel of one's choice, each party's right to be free from the risk of even inadvertent disclosure of confidential information, and the public's interest in the scrupulous administration of justice."[19]  "While doubts should generally be resolved in favor of disqualification, parties should not be allowed to misuse motions for

---

[14] *Mills v. Green*, 159 U.S. 651, 653 (1895).

[15] Even if I sustain Trade Show's objection, reverse Judge Koppe's decision, and find that there was a concurrent conflict of interest under Rule 1.7(a)(1) or (2), that conflict would have been imputed to all the attorneys associated with the Firm, including Rawlins.  Integrated Systems doesn't point to any rule that would have allowed Rawlins to avoid or cure the imputation of that conflict of interest by leaving the Firm and taking Integrated Systems with him to another firm.

[16] Nev. Rule of Prof'l Conduct 1.7(a)(2).

[17] *Reading Int'l, Inc. v. Malulani Grp., Ltd*, 814 F.3d 1046, 1049 (9th Cir. 2016).

[18] *C.f.* Nev. L.R. IA 11-7(a).

[19] *Brown v. Eighth Judicial Dist. Court*, 14 P.3d 1266, 1269–70 (Nev. 2000).

4

disqualification as instruments of harassment or delay."[20] Thus, to prevail on a motion to disqualify opposing counsel based on a concurrent conflict of interest—i.e., a dispute between current clients—the moving party must establish that (1) "'at least a reasonable possibility that some specifically identifiable impropriety did in fact occur'" and (2) "'the likelihood of public suspicion or obloquy outweighs the social interests [that] will be served by a lawyer's continued participation in a particular case.'"[21] If Trade Show can make this showing, I must then weigh the likelihood of public suspicion or obloquy against the social interests served by Rawlins's continued participation in this case.[22]

### 1. Trade Show has demonstrated a reasonable possibility that Nevada's ethical rules were violated.

For the first *Brown* factor, I must consider whether it is reasonably possible that the relevant rules of professional conduct were violated.[23] Trade Show relies on Rules 1.7(a)(1), (2), and 1.8(b) as the provisions it contends were violated.[24] Rule 1.7 prohibits a lawyer from representing a client "if the representation involves a concurrent conflict of interest."[25] A concurrent conflict of interest exists if: "(1) [t]he representation of one client will be directly adverse to another client; or (2) [t]here is a significant risk that the representation of one or more

---

[20] *Id.* at 1270 (internal citations omitted).

[21] *Id.* (quoting *Cronin v. Eighth Judicial Dist. Court*, 781 P.2d 1150, 1153 (Nev. 1989), *disapproved on other grounds by Nev. Yellow Cab Corp. v. Eighth Judicial Dist. Court*, 152 P.3d 737 (Nev. 2007)).

[22] *Id.* ("We conclude that requiring proof of a reasonable probability that counsel actually acquired privileged, confidential information strikes the appropriate balance in disqualification cases such as this.").

[23] *United States ex rel. Luke v. Healthsouth Corp.*, 2017 WL 5346385, at *3 (D. Nev. Nov. 10, 2017).

[24] ECF No. 52 at 6–7.

[25] Nev. Rule of Prof'l Conduct 1.7(a).

5

clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person . . . ."²⁶ Rule 1.8(b), on the other hand, prohibits lawyers from "us[ing] information relating to the representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules [of Professional Conduct]."²⁷

Trade Show argues that it is reasonably possible that Rule 1.7 was violated because Trade Show previously disclosed confidential, privileged information to the Firm, which now has "unfettered access" to "every detail of [Trade Show's] financial status. . . ."²⁸ Trade Show contends that access to this confidential information provides the Firm with an unfair tactical advantage in its litigation strategy.²⁹

Assuming that Trade Show is currently the Firm's client,³⁰ it is reasonably possible that Rule 1.7(a)(1) was violated when the Firm agreed to represent Integrated Services in this case. Once the Firm established an attorney-client relationship with Integrated Services, it became directly adverse to another client to whom it owed a duty of loyalty: Trade Show. The Firm may not simultaneously represent Trade Show and Integrated Systems when the two clients are directly adverse in the same action.

---

²⁶ *Id.* at 1.7(a)(1), (2).
²⁷ *Id.* at 1.8(b).
²⁸ ECF No. 52 at 7–8.
²⁹ *Id.*
³⁰ Judge Koppe assumed without deciding that Trade Show "was, at one time" the Firm's client. ECF No. 51 at 5. I likewise assume, without deciding, that Trade Show is or was the Firm's client.

There is also a reasonable possibility that Rule 1.7(a)(2) was violated because there is a significant risk that the Firm's representation of Integrated Services would be materially limited by its responsibilities to Trade Show or Bruno. Because Bruno hired the Firm to create *and maintain* the asset-protection trust that owns Trade Show, the scope of the Firm's ongoing duty of confidentiality encompasses the financial status of the assets within that trust, including Trade Show.[31] Whether Trade Show is a current or former client, dual representation like this is precisely what Rule 1.7 prohibits.

Integrated Services and the Firm also fail to demonstrate that Rawlins took measures to avoid this imputation of the Firm's conflicts of interest. For example, the Firm could have implemented screening measures to prevent Rawlins from accessing Trade Show's confidential information.[32] Nevada courts are guided by the following non-exclusive list of factors when determining whether screening measures are adequate to prevent the imputation of conflicts of interest: (1) instructions given to ban the exchange of information between the attorney and other members of the firm; (2) restricted access to files and other information; (3) the size of the law firm and its structural divisions; (4) the likelihood of contact between the quarantined lawyer and other members of the firm; and (5) the timing of the screening.[33]

The Firm implemented no screen. It instead relies on Rawlins's declaration that he "never received any confidential information" about Trade Show and "never did any work on any of those matters."[34] Rawlins explains that he "never reviewed or looked at" Trade Show's

---

[31] ECF Nos. 28 at 9–11, 48 at 27–41 (showing annual correspondence between Bruno and the Firm regarding assets within the trust).

[32] *Ryan's Express Transp. Serv. v. Amador Stage Lines, Inc.* 279 P.3d 166, 170 (Nev. 2012) (screening may be used to cure imputed disqualifications).

[33] *Id.* at 171.

[34] ECF No. 57 at 2.

7

files, and once Trade Show asserted that a conflict existed, he "took steps" to ensure that he would not be privy to Trade Show's confidential financial information.[35] Rawlins believes that, "as an added measure of security," the hard copy files of Trade Show's confidential information were sent to the Firm's office in Salt Lake City where he could not access them.[36]

But these steps were inadequate to prevent this conflict of interest. The Firm provides no evidence that other attorneys were instructed not to exchange Trade Show's confidential information with Rawlins. More importantly, it only restricted Rawlins's access to Trade Show's files *after* it was notified of a potential conflict.[37] The Firm also provides no evidence that its size and structural divisions would inherently prevent Rawlins's access to Trade Show's confidential information, and the likelihood of contact between Rawlins and other members of the Firm seems substantial, as evidenced by the fact that the Firm assisted Rawlins in drafting the response to Trade Show's objection.[38]

Trade Show has thus demonstrated a reasonable possibility that Rule 1.7 was violated. So I find that the first *Brown* factor is satisfied, and I need not—and do not—address Trade Show's additional argument that Rule 1.8 was violated.

### 2. *Trade Show provides no proof that Rawlins acquired privileged or confidential information relevant to this case.*

For the second *Brown* factor, Trade Show must show a reasonable probability that Rawlins acquired privileged or confidential information relevant to this case.[39] Instead, Trade

---

[35] *Id.*

[36] *Id.*

[37] ECF No. 57 at 2.

[38] ECF No. 56 at 2.

[39] *Brown*, 14 P.3d at 1270.

8

Show argues that the likelihood of public suspicion or obloquy outweighs the social interest that would be served by allowing Rawlins's continued participate in this case because (1) an attorney-client relationship exists between Trade Show and the Firm[40] and (2) any confidential information learned by Rawlins "cannot be unlearned."[41] Thus, Trade Show contends, any confidential information that Rawlins learned while at the Firm "could be used to [Trade Show's] disadvantage."[42] Trade Show explains that, "**[i]f**" Rawlins learned confidential information, he can use that information to the disadvantage of Trade Show.[43] Because "Rawlins *likely* has confidential information," Trade Show demands that I grant its motion to protect the sacrosanct attorney-client privilege.[44]

But Trade Show must point to evidence showing not just the possibility, but a reasonable probability that Rawlins received privileged or confidential information to satisfy this second *Brown* factor.[45] Trade Show's arguments all hinge on the likelihood that Rawlins acquired confidential information, not that Rawlins actually acquired such information. Trade Show provides no proof showing that Rawlins viewed or accessed Trade Show's files. And, in light of Rawlins's sworn declaration to the contrary, I find no basis to impute that it is reasonably possible that he did. Trade Show thus fails to satisfy its burden under the second *Brown* factor.

---

[40] ECF No. 52 at 15–16 (Trade Show's objection focuses on the attorney-client relationship between Bruno and the Firm; however, because I am assuming that Trade Show is or was the Firm's client, I have substituted Trade Show for Bruno for purposes of this argument.).

[41] ECF No. 60 at 7–8.

[42] *Id.* at 8.

[43] *Id.* at 7 (emphasis added).

[44] *Id.* at 8 (emphasis added).

[45] *Brown*, 14 P.3d at 1270.

By disqualifying Rawlins, Integrated Systems would be prejudiced by losing the counsel of its choice—counsel who has represented it throughout the first two years of this litigation. On the other hand, by not disqualifying Rawlins, Trade Show faces the possibility of being prejudiced by having confidential information used against it in this case—the very risk the ethical rules seek to prevent. But, without proof that this prejudice will arise, Trade Show's injury remains purely speculative. As the Nevada Supreme Court explained in *Brown*, "requiring proof of a reasonable probability that counsel actually acquired privileged, confidential information strikes the appropriate balance in disqualification cases such as this."[46] So, having reviewed Judge Koppe's decision and evaluated Trade Show's objection on its merits, I find that the magistrate judge reached the correct result and that her ruling was neither clearly erroneous nor contrary to law.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Trade Show's objection **[ECF No. 52]** to Magistrate Judge Koppe's order denying the Firm's disqualification motion **[ECF No. 51] is OVERRULED**, and Judge Koppe's order **[ECF No. 51] is AFFIRMED**.

Dated: March 26, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[46] *Id.*